MR

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

STEPHEN JACKSON )
)
    Plaintiff, )
)
v. )  16CV10499
)  JUDGE SHAH
KLEIN, THORPE AND JENKINS, LTD.; )  MAG. JUDGE GILBERT
MICHAEL T. JURUSIK; PATRICK R. )
HIGGINS; JEANINE M. JASICA; )
WILLIAM T. RODEGHIER; MARTIN SCOTT;)
SUZANNE GLOWIAK; EDWARD TYMICK; )
ALICE GALLAGHER; JAMES HORVATH; )
SHEILA HANSEN; PATRICK WORD; )  **TRIAL BY JURY DEMANDED**
BERRY ALLEN; GURRIE C. RHOADS; )
WSMC PARTNERS, LLC; AL. NEYER, LLC; )
VILLAGE OF WESTERN SPRINGS; AND )
DEFENDANTS 1- 10 )

    **Defendants.**

# FILED

NOV 10 2016
11-10-16
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## COMPLAINT AT LAW

NOW COMES Plaintiff Stephen Jackson ("Jackson") for his Complaint against

Defendants Klein, Thorpe and Jenkins, Ltd., Michael T. Jurusik, Patrick R. Higgins, Jeanine M.

Jasica, William T. Rodeghier, Martin Scott, Suzanne Glowiak, Edward Tymick, Alice Gallagher,

James Horvath, Sheila Hansen, Patrick Word, Berry Allen, Gurrie C. Rhoads, WSMC Partners,

LLC, AL. Neyer, LLC, the Village of Western Springs, and other Defendants yet to be named

(collectively, "Defendants"), and in support thereof states as follows:

### NATURE OF THE ACTION

1.    Plaintiff brings his Complaint for violations of the Racketeering Influenced

Corrupt Organizations ("RICO") Act and civil rights violations arising out of an ongoing

enterprise and scheme initiated by Village of Western Springs officials and employees acting

under color of law and private real estate developers from about 2000 to present day.

2.     In furtherance of the enterprise, Defendants used, and/or received, public monies, the advancement of municipal credit, and/or other public resources for, or on behalf of, private developers in contravention of the Illinois Constitution, Illinois Criminal Code, and/or the Public Officer Prohibited Activities Act (also known as the "Corrupt Practices Act") *in addition to* the numerous RICO predicate acts pled with requisite specificity herein.

3.     Village officials and employees exceeded their statutory authority while acting under the color of official right and repeatedly abused their positions of public trust in the reckless disregard to the constitutional rights, health, safety, and welfare of Plaintiff, his property and his business so as to, *inter alia*, unjustly enrich Defendants.

4.     Defendants' filing of the Village's Proof of Claims 7-1 **(Group Ex. A1)** filed with the U.S. Bankruptcy Court on February 19, 2015, for monies purportedly expended and/or municipal credit advanced for non-public purposes in contravention of the Illinois Constitution and Illinois Criminal Code is pled as a judicial admission by the Village Defendants, Klein Thorpe and Jenkins, Ltd. ("KTJ"), and their attorneys of the racketeering enterprise dating back to 2000 setting forth with requisite specificity the dates and dollar amounts for each act.

5.     KTJ's publication, prepared and presented by Jurusik, Thomas P. Bayer, Thomas M. Melody, Scott F. Uhler, Everette M. ("Buzz") Hill, Jr., Kathleen T. Henn, Howard C. Jablecki, and Jason A. Guisinger, entitled *"Identifying and Avoiding Conflicts of Interest, Answers to Fact Pattern Questions"* is supportive of Plaintiff's allegations evidencing KTJ's attorneys' knowledge (scienter) of the bad acts and omissions enumerated herein. **(Ex. C)**.

6.     KTJ's other publication, *"Conflict of Interest Municipal Law,"* is also supportive of the Plaintiff's allegations evidencing the KTJ attorneys' knowledge of their bad acts. **(Ex. C)**.

2

7. It is alleged a "*no brainer*" that KTJ attorneys, Village Defendants, and Defendant Developers were well aware of their repeated wrongdoings *before* engaging in such bad acts.

8. Village Trustees aided and abetted the violations herein and oversaw the improper use of municipal monies, credit, and resources. But for Trustees approval and complicity the frauds and civil rights violations alleged herein could not have been executed.

9. In further support thereof, KTJ and Jurusik are alleged to have engaged in a similar enterprise or scheme for the benefit of a private developer using municipal monies and/or credit in the defense of said developer in a separate municipality and Jurusik even over-billed the village of Clarendon Hills for legal fees pertaining to litigation in Western Springs. **(Ex. D)**.

10. Village Defendants', KTJ's, and Jurusik's alleged actions, in concert of actions with Defendant Developers, *infra*, evidence a failure to act in the best interests of the community, residents, tax-payers, and Plaintiff in their repeated, systemic violations of the RICO predicate acts, the U.S. Constitution, the Illinois Constitution, the Illinois Criminal Code, the Corrupt Practices Act, and the Village Code.

11. As a direct result of the Defendants' bad acts and failures to act, Plaintiff has been injured in his property, his business, and his person. Further, the damages to Plaintiff's property combined with the impairment of the marketability thereof for nearly five years, has resulted in the pending foreclosure action against Plaintiff, thus this action is pled as an emergency.

## PARTIES

12. Plaintiff, Stephen Jackson ("Plaintiff" or "Jackson") is a 26-year resident of the Village of Western Springs. Plaintiff has more than 30 years of experience in commercial real estate, is a licensed Illinois Real Estate Managing Broker, a Certified General Real Estate Appraiser, an MAI member of the Appraisal Institute, and has served as an adjunct professor.

**Klein, Thorpe and Jenkins, Ltd.**

13.     Defendant Klein, Thorpe and Jenkins, Ltd. ("KTJ"), on information and belief, is a Chicago law firm organized under the laws of the state of Illinois as a corporation and appointed by the Village Manager, Patrick R. Higgins on or about January 26, 1998.

14.     Defendant Michael T. Jurusik ("Jurusik") purports to have been the "village attorney" at all relevant times. On information and belief, Jurusik is a partner at Defendant KTJ and is a non-resident of the Village.

15.     Defendant Jurusik and/or KTJ represent, or represented, the personal financial and/or real property interests of Village officials and/or Village employees having influence over KTJ's employment by the Village (*e.g.*, Patrick Higgins, Frank Benak).

16.     Defendant Jurusik and/or KTJ simultaneously represent, or represented, directly or indirectly, the personal financial and/or development zoning interests of private real estate developers with commercial properties at issue herein.

**Village Defendants**

17.     Defendant Patrick R. Higgins ("Higgins") was Village Manager at all relevant times and a non-resident of the Village.

18.     Defendant Jeanine M. Jasica ("Jasica") was the Village Clerk at all relevant times.

19.     Defendant William T. Rodeghier ("Rodeghier") is the Village President since about 2009 and previously held the other Village positions including, *inter alia*, Trustee from about 2005 to 2009 and was a member of the Planning & Zoning Committee 2005 to 2007.

20.     Defendant Martin Scott ("Scott") is the Director of Community Development since about 2005 and is a non-resident of the Village.

4

21. Defendants Suzanne Glowiak, Edward Tymick, Alice Gallagher, James Horvath, Sheila Hansen, Patrick Word, and Berry Allen are or were the Village Trustees ("Trustees") at relevant times in this matter.

22. Each Village Defendant named individually is sued in his or her individual capacity for acts taken and/or failures to act *under the color of official right*.

23. As elected and appointed public officials, and employees, each Defendants named individually, KTJ, and Jurusik each hold a position of the highest public trust and owe their principals, including the Plaintiff, the duties of absolute loyalty and good faith.

### The "Village"

24. The Village of Western Springs (the "Village"), Cook County, Illinois, is a *non-home rule* Illinois municipal corporation organized under the Illinois Municipal Code as a managerial form of government.

25. The Supreme Court has held that municipalities may be held liable as "persons" under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694, 98 S. Ct. 2018.

26. A party [Plaintiff] may also establish municipal liability by demonstrating that (1) the constitutional tort was the result of a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity;" (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) an official with final policy-making authority "delegated that authority to, or ratified the decision of, a subordinate." *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984-85 (9th Cir.2002).

5

27.     Higgins, Jasica, Rodeghier, Scott, the Trustees, and the Village are hereinafter sometimes collectively referred to as the "Village Defendants."

**Defendant Developers**

28.     Gurrie C. Rhoads ("Rhoads") was a developer of the Incompatible Property with his principal place of business and residence in the Village.

29.     WSMC Partners, LLC ("WSMC"), on information and belief, is a limited liability company registered in Illinois with its principal place of business located in Chicago.

30.     AL. Neyer, LLC ("Neyer"), on information and belief, is a limited liability company registered in Ohio with its principal place of business located in Cincinnati.

## JURISDICTION AND VENUE

31.     This Court has federal question jurisdiction over this action pursuant to the Racketeer Influenced and Corrupt Organizations ("RICO") Act (18 U.S.C. § 1961 *et seq.*).

32.     This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the United States Constitution, 42 U.S.C. §§ 1983, 1985, 1986, 1988.

33.     This Court has subject matter jurisdiction over this action per 28 U.S.C. § 1332(a)(1).

34.     This Court has jurisdiction under 28 U.S.C. §§ 1343 and 1367.

35.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) as most Defendants reside in Illinois, the events and omissions giving rise to Plaintiff's claims occurred in Illinois, and the injuries and damages to Plaintiff's property, business, and his person in the action are located in Illinois.

## GENERAL ALLEGATIONS

36.     Plaintiff alleges Defendants engaged in a long-standing RICO *"pay-to-play"* enterprise in which various Village officials, trustees, employees, and private developers conspired to deprive, and did repeatedly deprive, Plaintiff of his constitutional rights and liberties thus injuring him in his property, his business, and his person for the benefit of Defendants.

37.     Village Defendants used, or caused to be used, or acted with the reckless indifference to allow the use of municipal monies for non-public purposes in the enterprise.

38.     Village Defendants used, or caused to be used, or acted with the reckless indifference to allow the extension of municipal credit for non-public purposes in the enterprise.

39.     Village Defendants used, or caused to be used, or acted with the reckless indifference to allow public resources and employees for non-public purposes in the enterprise.

40.     KTJ, Jurusik, and other KTJ attorneys were among the recipients of the municipal monies and/or advancement of municipal credit in furtherance of their enterprise.

41.     Village Defendants sanctioned, approved, and ratified KTJ's enterprise and *pay-to-play* scheme when granting KTJ a franchise allowing the improper "sale" of re-zoning relief, and Plaintiff's constitutional rights and statutory protections, by allowing the Village to serve as KTJ's "bagman" to assist in the enforcement and collection KTJ's monies and to provide a veil of legitimacy for the enterprise.

42.     Defendant Developers Rhoads, WSMC, and Neyer were improper recipients of the aforesaid public monies, municipal credit, municipal resources, and/or other relief for which they were not legitimately entitled.

43.     Village Defendants, KTJ, and Jurusik provided no assistance or resources to Plaintiff when he requested Village help. Instead Defendants ignored Plaintiff's requests for

7

relief and assistance from the wrongdoers and otherwise retaliated against Plaintiff for interfering with Defendants long-standing, clandestine *pay-to-play* enterprise.

44. Village Defendants, KTJ, and Jurusik failed or deliberately refused to ensure the rightful return of said public monies and credit from Rhoads in furtherance of their enterprise.

45. On information and belief, Village Defendants allowed Rhoads' letters of credit to be canceled prior to Rhoads completing required developments and repaying the Village monies.

46. In 2016, KTJ and its attorneys, on information and belief, simultaneously represented the Village and Neyer in completing Neyer's re-zoning application, providing the contrived expert opinions and biased legal conclusion therein and in so doing prevented competent professional analyses and testimony being provided to Plaintiff and resident stakeholders to ensure passage of Neyer's re-zoning.

47. The 2016 re-zoning application, alleged to have been drafted by Jurusik or other KTJ attorneys contains material misstatements of fact disclosed by another Village resident and who in employed by the animal hospital whose sworn affidavit was disregarded by Village Defendants when passing the fatally flawed re-zoning ordinance. **(Ex. E, F, and G)**.

48. Plan Commission Members also chose not to act with the diligence necessary in ensuring the compliance with Illinois statute and Village Code and instead *rubber-stamped* KTJ's unsupported expert opinions (presumably fabricated by KTJ attorneys) and biased legal conclusions absent complete application materials as required by Village Code.

49. In the 2011 and 2014 re-zonings, on information and belief, KTJ provided similar services advocating private developers regarding the ineligible property and parties while posing as the "village attorney" evidencing statutory conflicts of interests.

8

50.     Village Defendants, on information and belief, impermissibly advanced $414,927.40 of municipal money and/or municipal credit to, or on behalf of, Rhoads. **(Ex. A)**.

51.     Village Defendants and KTJ attorneys continued to represent Rhoads' personal financial and/or property interests including advocacy and/or representation in his bankruptcy case filed on or about May 12, 2014 case number 14-17886; Dkt 111. **(Ex. B)**

52.     Defendants acted in concert and retaliated against Plaintiff using, for example, a sitting Village Plan Commissioner (Mark G. Henning, Esq. of Winston & Strawn) paid for, and/or bribed, directly or indirectly, by developers with knowledge of the Village. **(Ex. H)**.

53.     The Village is a non-home rule municipality and cannot act in an arbitrary and capricious manner when enacting re-zonings, nor can the Village arbitrarily and capriciously refuse to enforce the very same preferential rezoning ordinances so granted.

54.     Since Defendants *manufactured facts* and advanced the *logical fallacies* to enact the preferential re-zoning legislations, prior to bringing the matters before the public as required by law, the Village Defendants barred, or effectively barred, Plaintiff his rights as a U.S. citizen in favor of private developers where Jurusik, KTJ, and its attorneys and others benefitted for 16 years at the direct cost to and peril to Plaintiff and his family.

55.     Plaintiff's rights to petition the government for the redress of grievances under the U.S. Constitution and the Illinois Constitution were barred, or effectively barred, by Defendants' clandestine *pay-to-play enterprise* in the *enactment* of the preferential re-zonings.

56.     Village Defendants next *neglected to enforce* the preferential re-zonings and Village Code in favor of Defendant Developers, thus Village Defendants *neglected to prevent harm* to Plaintiff, his business, his property, and his person.

9

57.     Plaintiff's due process rights under the U.S. Constitution and the Illinois Constitution were also barred, or effectively barred, by Defendants' clandestine enterprise.

58.     Defendants singled-out Plaintiff for retaliation based upon his objections to the improper re-zoning, disclosure of the nefarious acts, filing his Freedom of Information Act ("FOIA") requests, and for seeking the redress of grievances.

59.     No other Village resident has been singled out by Village Defendants and injured so greatly and so repeatedly in his property, his business, and his person as a direct result of Defendants' long-standing *pay-to-play* enterprise for which Jurusik, KTJ, Defendant Developers and others have been unjustly enriched.

### The "Incompatible Property" and the Six "Preferential Re-Zonings" Thereof

60.     The "Incompatible Property," 4700 Commonwealth Ave., is a ±4.33-acre tract of land directly opposite Plaintiff's property originally *codified* as "Mixed-Residential" situated along a *codified* residential street constructed to residential (not commercial) standards and dimensions.

61.     The Village Defendant's, Jurusik, KTJ, and Rhoads created a 16-year "*turf war*" among Defendants, with Plaintiff trapped in the middle, by improperly overturning the then existing *codified* Official Land Use Plan and repeatedly eviscerating Village Code for the benefit of Defendant Developers, Village Defendants, KTJ, and Jurusik from 2000 to 2016.

62.     WSMC joined and continued the battle in 2011 when hiring Rhoads to "fix" the re-zoning of the Incompatible Property to meet WSMC's intended use as a medical office building.

63.     WSMC's medical office use flopped requiring several more re-zonings.

64.     In 2014, WSMC again re-zoned the property as a massive daycare center.

10

65.    In 2016, Neyer joined WSMC in the *turf battle* when seeking a sixth re-zoning of the Incompatible Property for an animal hospital.

66.    In addition to the injuries and damages suffered by Plaintiff, two FDIC-insured banks failed (*i.e.*, Founders Bank, Community Bank of Lisle) losing millions of dollars of tax-payer monies following the two (2) foreclosures of Rhoads' loans and the properties were left *vacant and abandoned* for about five (5) years across the street from Plaintiff's property.

67.    By any objective standard property damages (even when excluding the losses to the banks and federal agencies) caused by Defendants' improper re-zonings and/or defective land planning exceed the market value of the Incompatible Property, unequivocally demonstrating commercial uses of the Incompatible Property (within the clearly residential neighborhood) was and is not the *Highest & Best Use* of the previously *codified* "Mixed Residential" tract.

68.    The Incompatible Property is surrounded on all four sides by residentially-zoned land thus the repeated preferential re-zonings from 2000 - 2016 each constitute "*spot zoning*."

69.    Plaintiff demonstrated in advance (in 2000) the commercial uses would fail as the improper uses did repeatedly fail rendering the Incompatible Property completely vacant from about 2009 to 2014.

70.    While vacant and abandoned, criminal elements entered the neighborhood evidenced by the drug arrests, graffiti, and break-ins occurring on the Incompatible Property.

71.    Plaintiff demonstrated in advance that he and his property would be injured as a direct result of the incompatible commercial land uses within the residential neighborhood in terms of: (1) actual damages via loss in market value to his property; (2) additional years added to the marketing period; and (3) additional years of carrying costs directly resulting therefrom.

72.     The Incompatible Property has stigmatized and blighted the immediate neighborhood of homes constructed upon former Village-owned land.

73.     Village Defendants, KTJ, and Jurusik have also stigmatized the neighborhood by repeatedly demonstrating a lack of respect for residents and their conscious disregard for the rule of law.

74.     Village Defendants, KTJ, and Jurusik have repeatedly violated the public trust as the commercial uses failed and requiring additional years of re-zoning processes for which Jurusik, KTJ, Zeigler, and Benes were/are unjustly enriched by billing time over and over again for six re-zonings of the same property evidencing the *perverse incentive* derived therefrom.

75.     The Incompatible Property was not eligible for and re-zoning as a matter of law.

76.     None of the damages and injury to Plaintiff, the Village, and federally-insured banking institutions enumerated herein could have occurred *but for* KTJ's and Jurusik's nefarious acts in concert with Village Defendants and Defendant Developers.

### Plaintiff's Property, Market Value, and Resulting *External Obsolescence* Damages

77.     Plaintiff's property is a modern, semi-custom home situated upon a parcel of land *sold by the Village* via general warranty deed attested Defendant Jasica for the construction of upscale homes. **(Ex. I)**.

78.     Plaintiff's property is "*the*" most adversely affected home based upon the configuration of the Incompatible Property directly opposing Plaintiff's property. **(Ex. J)**.

79.     The neighborhood stigma and *external obsolescence* caused by the Defendants' repeated re-zonings and the negative impacts resulting therefrom includes, *inter alia*: (1) elevated high-intensity parking field lighting shining into Plaintiff's home and bedrooms day and night; (2) vehicle headlights shining directly into Plaintiff's home; (3) high volume commercial

12

auto, truck, and daycare bus traffic generation along the *codified* residential street; (4) elevated noise levels; (5) frequent auto alarms and car horns; (6) illuminated commercial signage directed at Plaintiff's home; (7) loss of privacy and invasion of Plaintiff's privacy; (8) numerous periods of construction, demolition, reconstruction, flood plain earthwork, and deforestation totaling about (5) years; (9) overall commercial blight; and (10) public nuisance. **(Ex. J)**.

80.    The market value of Plaintiff's property was estimated by "Trulia" at $1,000,523.00 on July 3, 2015 and $868,000.00 per REALTOR.com in December 2012 as if unaffected by *external obsolescence* proximately caused by the Incompatible Property **(Ex. K)**.

81.    The Cost Approach was used to estimate the market value of the Plaintiff's (real) property in July 2016 at about $1,090,000.00 as if unaffected by the Incompatible Property *external obsolescence*. **(Ex. K)**.

82.    The Sales Comparison Approach indicated a market value for Plaintiff's property between $997,000.00 and $1,090,000.00 based upon the adjusted sale prices for neighboring properties immediately east of Plaintiff's property *on the same block*.

83.    The *external obsolescence* (alone) is estimated with specificity at $400,000.00 based upon the "matched pairs" technique using the adjacent properties. **(Ex. K)**.

84.    Comparatively, a similar-sized, four-bedroom home on a smaller lot is listed for $1,649,000.00. The home is located at 4525 Central Avenue, about 1.5 blocks northeast and is four (4) lots away from the freight and commuter railroad tracks. Another inferior four-bedroom home situated on a smaller, inferior site is available for $957,000.00 at 4704 Johnson Avenue.

85.    The negative impacts were readily foreseeable and disclosed to the Defendants *prior to* each re-zoning as objections were presented in writing and in oral testimony by Plaintiff.

86.     Village Defendants and Plan Commission members all had access to the Village's records on the matter and Plaintiff's correspondence, exhibits, calculations, and objections.

87.     Village Defendants' granted KTJ a franchise allowing attorneys to extort monies and/or receive bribes from developers by creating, or acquiescing to the creation of, statutory conflicts *and* for overseeing the resolutions thereof with Plaintiff and his property in the middle.

88.     The serial, preferential re-zonings have resulted in real estate brokers avoiding showing Plaintiff's property and prospective buyers purchasing Plaintiff's property (just like the neighboring 4701 Commonwealth Ave. property), thus interfering with Plaintiff's relocation and interstate commerce.

89.     The inability for Plaintiff to sell his real property in 2015, for example, interfered with Plaintiff's business expansion out-of-state and caused his withdrawal from Harvard University where he was to expand his business platform, procure investors / partners, and hire contractors, thus interfering with interstate commerce.

90.     Plaintiff has also been injured by Defendants in his other property interests including, *inter alia*, in his role as a *qui tam* relator prosecuting recovery of monies on behalf of government and government pension plan agencies which also effects interstate commerce.

**Carrying Costs**

91.     It took more than six (6) years to sell the contiguous home at 4701 Commonwealth Avenue due to the aforesaid *external obsolescence*. Comparatively, Plaintiff commenced marketing for sale his home about February 2012.

92.     Neighboring homes immediately east sold between about 64 and 84 days for the 4700 and 4712 Fair Elms Avenue properties, respectively, as the properties are not affected by the *external obsolescence* resulting from the Incompatible Property.

14

93.     The additional carry, or holding, cost damages to Plaintiff can be calculated with specificity upon entry of judgement in favor of Plaintiff as the sum of the loan interest, penalties, real estate taxes, property insurance, utilities, and maintenance costs. For illustration purposes, the carry costs are estimated at $182,850.00 for five years of unnecessary "carry" resulting from the unsalability proximately caused by Defendants' repeated bad acts (excluding "lost profits").

### Defendants' Customs and Practices

94.     Village Defendants' serial, preferential re-zonings represent the customs and/or practices of waiving statutory and Village Code requirements that is not written, or formally adopted, but a pervasive, longstanding practice that has the *force of law.*

95.     Village Defendants repeatedly acted in a *willful and wanton* manner toward Plaintiff in the course of actions which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to, or conscious disregard for, the safety of Plaintiff, his property, and his business.

96.     Plaintiff demanded on several occasions the Village treat him equally and Village Defendants refused to do so.

97.     Plaintiff demanded the Village provide him with equal representation and/or resources to correct the serial re-zoning abuses and Village Defendants ignored or otherwise refused his requests while simultaneously advocating the interests of Defendant Developers over the interest of resident citizens.

98.     Defendants' nefarious acts have caused the foreclosures and losses below.

| Property | Creditor/Lender | Est. Losses |
|---|---|---|
| Various Rhoads' Matters (Ex. A1) | Village of Western Springs | $414,927 |
| 4700 Commonwealth | The Private Bank (FDIC/TARP) | $1,794,276 |

15

| Commonwealth Court [1] | U.S. Bank (FDIC/TARP) | $926,507 |
| 48XX Creek Drive [2] | Various Creditors | TBD |

Dartmoor (Failed Defendants' Re-Zoning/Annexation)

| Timber Trails Subdivision | MAF Bancorp/National City (FDIC / TARP) | $113 Million |

Footnote 1. The Property sold for only about $45,000.00 May 18, 2016, not reflected above.
Footnote 2. Rhoads' home foreclosure; subject of fraudulent transfer allegations, in 14-17886.

99.    Defendants have further injured Plaintiff's immediate neighborhood by causing four (4) foreclosures within one block of Plaintiff's property, *including* Plaintiff's property.

100.    Plaintiff sought to mitigate his damages first by "*putting*" his property back to the Village (which originally sold the property) which is bound by its *implied its covenant of quiet enjoyment* on two (2) separate occasions and was denied by the Village both times.

101.    Plaintiff then sought to mitigate damages to his property and submitted a full price, non-contingent, contract to purchase the Incompatible Property in November 2014. Seller WSMC refused to honor its own offering, and Plaintiff's contract, and WSMC also unlawfully retained Plaintiff's earnest money in contravention to the Illinois Real Estate License Act 225 ILCS 454/1 *et seq.* as amended.

## Incompatible Property was Ineligible for Re-Zoning Consideration

102.    The repeated preferential re-zonings are each built upon the prior defective preferential re-zonings creating a *house of cards* without a legal foundation since the Incompatible Property was each time ineligible for re-zoning consideration as a matter of law.

103.    The various developers of the Incompatible Property did not file true, correct, and complete applications and all required submittal documents, or in the alternative KTJ drafted the applications, ordinances, and even provided wholly unsupported expert opinions and biased legal conclusion to circumvent due process and ensure passage of the improper ordinances for developers.

16

104.    In 2011, for example, Rhoads was delinquent in the real estate taxes thus the Incompatible Property was ineligible for re-zoning consideration. In the end, U.S. taxpayers effectively paid Rhoads' delinquent real estate taxes (under the depletion of assets theory).

105.    In 2016, for example, KTJ attorneys drafted the Neyer re-zoning application and inserted KTJ's unsupported expert opinions and biased legal conclusions.

106.    The other improper activities regarding the serial preferential re-zonings since 2000 are too numerous to mention and are contained in Defendant Village's and KTJ's files.

107.    Defendants' long-standing pattern of *manufacturing facts*, suppressing expert opinion and studies, and thereby creating the *logical fallacies* upon which triers of fact are to rely is a *custom or practice* of the Village Defendants, Jurusik, KTJ and its attorneys.

108.    So egregious were Jurusik's and KTJ's actions *against residents* that even attorney John Lynch's successful Village President platform identified the problem citing Jurusik's and KTJ's objection to residents' questions and concerns regarding the annexation and re-zoning of the Timber Trails Golf Course tract. (**Ex. L**).

109.    The meritless annexation and re-zoning ultimately resulted in an estimated $113 million (combined) foreclosure action with the negative impacts on the Village's housing stock and downward pressure on home pricing levels continuing to present day.

110.    Defendants' continuity in its intentional breach of the Village's *implied covenant of quiet enjoyment* owed Plaintiff, for about 16 years, amounts to the functional equivalent of the Village's constructive eviction of Plaintiff and has continuously interfered with Plaintiff's quiet enjoyment of his property. . . which the Village sold for residential development. . . which is now subject to a pending foreclosure action.

111. Village Defendants, KTJ, and Jurusik have abused their *special privileges of superiority over Plaintiff* afforded them as Village officials and employees on so many occasions, regarding the same Incompatible Property issues, with substantially the same bad state actors, and *with the force of law*, as to constitute a *continuous act or scheme* which is likely to continue.

112. Village Defendants nefarious acts have had a cumulative effect further injuring Plaintiff with each passing day.

113. Plaintiff has been treated differently from others similarly situated for no rational basis or legitimate state purpose.

114. The ongoing enterprise and scheme alleged with specificity is pled as further support of Defendants' intent to violate laws, to engage in official misconduct, and to profit from their unlawful acts so as to further the objectives of the RICO enterprise.

115. The repeated failures of commercial uses on the Incompatible Property is *prima facie* evidence of the pattern of Defendants' RICO enterprise *supported by market evidence*.

116. The damages to Plaintiff's business and income lost may be estimated by multiplying his hourly rate by the time expended from 2000 to the conclusion of the litigation.

**COUNT I**
**Racketeering Influenced and Corrupt Organizations Act (or "RICO")**
**Under 18 U.S.C. §§1962(c) and (d)**
**(Against Village Defendants, KTJ, Jurusik, and Defendant Developers)**

117. Plaintiff incorporates by reference each allegation contained in Paragraphs 1 through 116 as if fully set forth herein.

118. The Defendants designated above are persons and participants as defined under 18 U.S.C. § 1961(3).

119.    The Defendants actions or failures to act are a proximate cause to the injuries and damages sustained by Plaintiff, his property (both real and personal), and his business interests.

120.    Defendants have committed more than two acts of racketeering activity within the last ten years and therefore have engaged in a pattern of racketeering activity as defined in 18 U.S.C. § 1961(5). Specifically, Defendants have engaged in the following predicate acts:

**a.  18 U.S.C. 201 Bribery of Public Officials**

Each payment or advantage to a Village official and/or employee (*e.g.*, KTJ, Jurusik, Benes, Ziegler, Higgins, Benak) related to Defendants acts enumerated herein is alleged as a separate bribe or personal advantage as the activities: (1) did not occur (per Rhoads' Bankruptcy Dkt. 254 objections to the Village's Proof of Claim 7-1) *and* Defendants invoiced and/or paid said invoices or extended municipal credit; (2) or, if the invoiced activities did occur, Defendants were otherwise ineligible to receive payment in contravention of the Village Code and Illinois Statutes; (3) the Incompatible Property was ineligible for any re-zoning relief as a matter of law; and/or (4) said payments of municipal monies or the advancement of credit was in contravention to the Illinois Constitution Art. VIII, the Illinois Criminal Code, and/or the Public Office Prohibited Activities Act. The dates of the payments are set forth with specificity in **Ex. A** and in Defendants' records to be produced.

KTJ and Jurusik also represented the private interests of Village employees (*e.g.*, Higgins, Frank Benak) according to property deeds which are alleged as a bribe and/or *personal advantage* by KTJ and Jurusik evidencing statutory conflicts of interests since Higgins [and Benak] had influence over KTJ's Village employment.

Rhoads, Higgins, Benak, Jurusik, and KTJ are alleged to have conspired with Mark G. Henning, Esq. who, while sitting on the Village Plan Commission, was bribed to harass, threaten, and intimidate Plaintiff under the color of official right and succeeded in so doing in 2001. **(Ex. H)**.

**b. Violations of 18 U.S.C. §§ 1341 and 1343.**

U.S. Mail, common carrier, and wires were used by Defendants to provide, *inter alia*, FOIA responses, FOIA denials, Rodeghier's and Jurusik's emails, emails to and from the Illinois Attorney General's Office Public Access Counselor, invoices and payments to KTJ, Jurusik, Benes, Ziegler, developer application materials, developers' notice letters to Plaintiff (2011 to 2016), and other communications. The dates of the mail and wire frauds are set forth in the respective documents and filings.

Scott's 2016 re-zoning notice letter, mailed by or Neyer or at Neyer's direction, was mailed to Plaintiff on or about July 6, 2016. Neyer's re-zoning application acting in concert with KTJ, alleged as a separate count of mail and/or fraud was, on information and belief, transmitted on or about July 6 and/or July 8, 2016. KTJ and/or Jurusik drafted Scott's notice letter and Neyer's application *supra,* while representing the developer; not the Village it further supports the fraudulent nature of the actions and conflicts of interests using the mails. **(Ex. E)**.

Mail and wire frauds perpetrated by Defendants Higgins, Frank Benak, Jurusik, KTJ, Rhoads, and Scott and Deborah Grosse against Plaintiff also occurred when they hired

Village Plan Commissioner Henning (a private attorney by trade) and used the U.S. Mail, common courier, and the wires in furtherance of their scheme to defraud Plaintiff and deprive him of his rights under the color of law on or about June 20, 2001. **(Ex. F)**.

Rhoads, from 2014 to 2016, also caused to be mailed to Plaintiff numerous bankruptcy court filings alleged to contain knowingly false information intended to deceive Plaintiff, the U.S. Bankruptcy Court, and creditors.

The mail and wire frauds used were violations of 18 U.S.C. §§ 1341 and 1343.

**c. 18 U.S.C. 1513 (b)(1)(2)Retaliating against a witness, victim, or an informant**

Defendants retaliated against Plaintiff injuring him in his property, his business, and in his person for Plaintiff pursuing the redress of grievances and disclosing to the Illinois Attorney General, governmental agencies, and in a court of law, *inter alia* some of the predicate acts set forth herein.

Village Defendants have subjected Plaintiff to inhumane treatment resulting from the adverse effects by allowing incompatible commercial land uses within an established residential neighborhood which resulted in *inter alia*:

i. Interference with sleep and disruption of circadian rhythm resulting from glare from high-intensity lighting directed into Plaintiff's property morning and night from 2001 to present. **(Ex. J)**.

21

ii. Reducing the height of the retaining wall by about half in 2015 to allow glare from vehicle headlights and daytime running lights to directly enter Plaintiff's windows.

iii. Invasion of privacy and intrusion by increasing commercial auto, truck, and bus traffic by several hundred more vehicles per day on the *codified* and constructed *residential* street and lights entering Plaintiff's property.

iv. Criminal activities brought into the neighborhood because of the improper Incompatible Property including drug arrests, graffiti, and break-ins.

v. Criminal trespass upon Plaintiff's property when uninvited Defendant WSMC construction workers accessed Plaintiff's water supply for the Incompatible Property.

vi.     Operation of heavy industrial equipment, sometimes 24-hours per day, for several days straight, without permit, and producing ground transmitted vibration, noise, and glare and preventing Plaintiff from sleeping for about *four straight days* (see photos).

In addition to the years of chronic sleep deficit resulting from *inter alia* the improper land uses, glare, light pollution, noise, and vibration, *supra*, Defendants have caused Plaintiff to spend thousands of hours over 16 years defending his property, business, and civil rights, forced to study the state and federal law, unaware of the RICO financial transactions among enterprise persons dating back to 2000 which was disclosed by the Rhoads after filing Chapter 11 and the Village filing its Proof of Claims 7-1 against Rhoads on or about February 19, 2015. **(Ex. A)**.

Defendants willfully and maliciously engaged in the deprivation of Plaintiff's sleep over the past 16 years and said deprivation resulted in the denial of *"the minimal civilized measure of life's necessities." Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "[S]leep undoubtedly counts as one of life's basic needs." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999). Thus, conditions designed to prevent sleep violate the Eighth Amendment of the United States Constitution.

To satisfy the subjective component, Village Defendants were deliberately indifferent to the conditions and hence possessed a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 297-303; *Woods*, 51 F.3d at 581. To establish deliberate indifference, Plaintiff has pled that Village Defendants, KTJ, and Jurusik knew of, and disregarded, an excessive risk to a citizen's health or safety as supported by numerous communications to the bad state actors from 2000 to 2016.

The Fifth Circuit further noted that in *Harper v. Showers*, 174 F.3d 716 (5th Cir. 1999) [*PLN*, Dec. 1999, p.23], it had previously held sleep deprivation could constitute cruel and unusual punishment, and a sister circuit had made a similar finding in *Walker v. Schult*, 717 F.3d 119 (2d Cir. 2013) [*PLN*, May 2014, p.21] See also *Garrett v. Thaler* 560 Fed. Appx. 375 (5th Cir. 2014)

Comparatively, the case law cited above illustrates that prison inmates receive better treatment than the Plaintiff has received by the bad state actors.

23

Plaintiff alleges that each violation, for each day, constitutes a separate act of cruel and unusual punishment directed at Plaintiff and his property.

The damages to Plaintiff's property market value, and impairment to the marketability thereof, were reasonably foreseeable based upon documents of record filed with the Village in opposition to the 2000 to 2016 re-zonings. Village Defendants each possessed the direct knowledge, or the implied knowledge, of the falsity of the re-zonings and failed to act in accordance with the requirements of the positions they have sworn to uphold.

Village Defendants and KTJ refused to comply with Plaintiff's proper and timely filed Illinois Freedom of Information Act ("FOIA") requests despite the use of public monies and/or the advancement of municipal credit, *which must be disclosed* pursuant to the Illinois Constitution Article VIII(c) repeatedly requiring Illinois Attorney General Public Access Counselor intervention. KTJ has also interfered with Plaintiff's FOIA requests in Clarendon Hills which are related and are also alleged as violations of Article VIII(a)(c) since KTJ was over-billing Clarendon Hills for Western Springs purported work. **(Ex. D)**.

Plaintiff alleges a separate act of retaliation for each day Village Defendants failure or refusal to enforce the Village Code and/or the preferential re-zonings in an effort to drive Plaintiff out of his property and has proximately caused the pending foreclosure action against Plaintiff.

The retaliation from 2000 to 2016 set forth above proximately caused and/or contributed to physical injury to Plaintiff.

24

**d. 18 U.S.C. 1951 (a) Interference with commerce by threats or violence**

In addition to, or in the alternative of, alleged 28 U.S.C. 201 Bribery of Public Officials *supra*, each payment set forth in **Ex. A,** and in other Defendants' records to be produced, is alleged to constitute a separate act of extortion since, *inter alia*, the services were never rendered, the Defendants were ineligible to receive payments, the actions by Defendants were improper, and/or the payments were violative of the Illinois Constitution and its Criminal Code as being public monies used for non-public purposes.

Village Defendants have attempted to extort monies from Plaintiff by requiring him to file his redress of grievances each time a commercial use fails at the Incompatible Property and/or hire attorneys to oppose Defendants' nefarious acts and FOIA violations thus allowing KTJ and Jurusik to invoice the Village and/or private developers for their *manufactured conflicts* knowing their clandestine enterprise would [always] bar any administrative relief.

On information and belief, per the alleged enterprise, no amount of money, nor army of lawyers, could ever prevail in a dispute within any Village tribunal given the entrenchment of the KTJ and Jurusik and the Village's bad state actors.

Defendants also injured Plaintiff in his property interest including, *inter alia*, his interests in *qui tam* matters acting on behalf of government and government pension agencies affecting interstate commerce.

25

Plaintiff alleges Defendants actions or failure to prevent harm constitute acts of intimidation in violation of 720 ILCS 5/12-6, in furtherance of Defendants' scheme to deprive Plaintiff of his constitutionally protected rights and damage him in his property, business, and his person.

The injuries and damages sustained by Plaintiff was proximately caused by Village Defendants, KTJ, and Jurusik acting under the color of official right in concert of action with Defendant Developers.

e. **18 U.S.C. 1957(a) Engaging in monetary transactions in property derived from specified unlawful activity.**

As set forth both above and below, Defendants are alleged to have engaged in numerous monetary transactions from about 2000 to 2016 derived from specified unlawful activities in contravention to 18 U.S.C. 1957(a).

Rhoads' is alleged to have received about $414,927.40 of the Village's municipal funds, or the advancement of credit and is pled as a judicial admission of the RICO enterprise by Village Defendants, KTJ, and Jurusik. **(Ex. A1).**

Rhoads' unpaid mortgages, on information and belief, yielded Rhoads and others an estimated $2,472,000.00 of ordinary income/profit (about $1,545,885.00 from Founders Bank and about $926,507.00 Community Bank of Lisle or their successors) for failing to repay two (2) loans on the Incompatible Property and adjacent Commonwealth Court, the never-built, six-home residential subdivision alongside the eight-lane Interstate 294.

26

On May 12, 2014, Rhoads filed for bankruptcy protection, on information and belief, to protect his ill-gotten gains. Rhoads has continued to delay providing the bankruptcy court and the bankruptcy trustee records demanded and has continued to abuse the bankruptcy laws and court system for about 2.5 years for reasons of a personal nature. (*see* **Ex. A2 and Ex. A3 for examples).**

Rhoads has gone through numerous attorneys in his bankruptcy matter where said attorneys were billing Rhoads, on information and belief, as much as $500.00 to $700.00 per hour for about 2.5 years thus far.

Rhoads received, or was intended to receive but for being caught by Plaintiff, another $150,000.00 from WSMC Partners, LLC by and through their depleting government assets belonging to the FDIC or TARP under the "depletion of assets theory." Payments dates for the three (3) $50,000.00 payments were specified on or about: (i) March 25, 2011; (ii) March 25, 2014; and, (iii) March 25, 2016 as set forth in their concealed Transition Services Agreement ("TSA"). **(Ex. A5).**

WSMC's Brian Howard stated in his bankruptcy court affidavit that Rhoads' compensation was not contingent upon any acts to receive the second and third payments *supra*. Thus Howard's affidavit is pled as a judicial admission as to the re-zoning frauds as well as the use of federal monies in furtherance of their enterprise. The parties' filings of the Transition Services Agreement in Rhoads' bankruptcy court filing is also pled as a judicial admission as the fraudulent acts

27

On information and belief, Rhoads and his partners received even more federal relief totaling about $187,035.74 for their unpaid real estate taxes, closing costs, legal fees, broker sale commissions, and other costs; monies rightfully belonging to the federal government or agencies, The Private Bank, the FDIC, or the TARP as part of the "short sale" to WSMC about March 25, 2011 under the depletion of assets theory. **(Ex. A6)**.

Rhoads' and WSMC's alleged financial frauds against the United States, its banking system, the FDIC, the TARP, and/or the Village could not have occurred without the coordinated participation among Village Defendants, Trustees, KTJ, and its attorneys.

In 2016, on information and belief, KTJ attorneys prepared Neyer's re-zoning application documents, the Scott's Public Notice letter, unsupported "expert" opinions and biased legal conclusions, and the draft and final ordinances as KTJ represented Neyer's private interests simultaneously purporting to be the village attorney. In other words, Neyer is alleged to have improperly received KTJ's advocacy, unsupported "expert" opinions and biased legal conclusions, the waiver of required submittal documents, in the meaning of theft of (Western Springs) government services notwithstanding the statutory conflict of interests among the parties. **(Ex. E. and Ex. F)**.

KTJ was paid by private developers, through the Village acting as "paymaster" to ensure the passage of the re-zonings ineligible properties. Records for each payment, pled as separate violations, are contained in Defendants' files.

28

In 2016, *the Village* removed several trees from the Incompatible Property required by the previous re-zonings to screen the commercial site from view – and *used Village resources including personnel and equipment to remove the trees*. Plaintiff was never offered free landscaping or tree removal from the Village. **(Ex. J).**

Each payment, and each receipt of a payment, is pled as a separate monetary transaction resulting from a specified unlawful activity.

f. **Violations of the Illinois Constitutions, Art. VIII (a)(c)** *infra* are alleged as additional predicate acts and are incorporated by reference herein.

g. **Violations of the Illinois Criminal Code, 33-1** *infra* are alleged as additional predicate acts and are incorporated by reference herein.

h. **Violations of the Illinois Criminal Code, 33-3 (a)(1)(2)(3)(4)** *infra* are alleged as additional predicate acts and incorporated by reference herein.

i. **Violations of the Illinois Public Officer Prohibited Activities Act**, also known as the "Corrupt Practices Act," 50 ILCS 105/3 *et seq. infra* are alleged as additional predicate acts and incorporated by reference herein.

j. Plaintiff alleges additional **offenses involving fraud connected with a case under Title 11**, as more particularly set forth in **Ex. A**, the Village paid, or extended municipal

29

credit, on behalf of Rhoads and/or entities controlled by same, for Rhoads' personal litigation matters in Rhoads' "Hartz" case and his current bankruptcy case which are wholly unrelated to the Village's interests. The filing of the Village's Proof of Claims is pled as judicial admissions by Village Defendants, KTJ, and Jurusik of RICO predicate act violations.

Rhoads' filing for Chapter 11 is also alleged as a fraudulent abuse of the United States bankruptcy protection laws so as to protect the ill-gotten gains and profits derived while evading the repayment of obligations owed to his creditors.

Rhoads' refusals to comply with bankruptcy trustee's demands and motions for documents and his denial of the Villages Proof of Claims 7-1 is supportive of Plaintiff's allegations herein.

121.    The above multiple, related, and coordinated acts constitute a pattern of racketeering activity aimed at injuring Plaintiff's property and business and depriving Plaintiff of his constitutional rights.

122.    Each of the above predicate acts is related to one another, as they have the shared aim of harming Plaintiff and injuring him in his property and business.

123.    Defendants engaged in the above pattern of racketeering activities in advancement of an enterprise which Defendants used to further their fraudulent scheme against Plaintiff under a veil of legitimacy.

124.    Defendants funded some or all of the enterprise through use of municipal monies, or the advancement of municipal credit, and use of other municipal resources.

125.    Defendants used their association with the Village to further their racketeering scheme to injure Plaintiff in his property and his business.

126.    Defendants constitute an enterprise and said Defendants are conducting the affairs of this enterprise through a pattern of racketeering activity designed and intended to injure Plaintiff in his property, business, and in his person and by depriving him of his constitutional and property rights... *upon property sold by the Village* for residential development.

127.    Defendants' pattern of racketeering amounts to and poses a clear threat of continued criminal activity through the enterprise of the Village, as evidenced by the Village Defendants' repeated re-zonings of the Incompatible Property over the past 16 years *for which the uses failed*, and the mistreatment of Plaintiff while exercising his rights when opposing the *sham procedures constituting the illusion of public process*.

128.    Even the appraiser for [T]he Private Bank stated the improper use of the Incompatible Property in the residential neighborhood, and the estimated market value of the property was well in excess of the price WSMC paid the bank in the alleged highly questionable "short sale." **(Ex. M)**.


129.    In further support thereof, other recent cases alleging KTJ's nefarious participation relating to zoning tampering include the following and evidence a pattern among other municipalities employing KTJ to eviscerate citizen rights and statutory protections in favor of fee-generating developers for which KTJ was/is repeatedly unjustly enriched.

    a.    KTJ's attorney Everett "Buzz" M. Hill's was specified by name in the Mount Prospect case 1:08-CV-03527 Northern District, Eastern Div. civil RICO case resulting in reported $6.5 million settlement against that village where KTJ's

31

Everett M. Hill's alleged acts are enumerated in the Amd. Comp. (Dkt. 88; ¶¶ 3,
49, 85, 97, 124, 130(j)).

b.      KTJ was/is involved in another recent alleged zoning tampering case in
Clarendon Hills (in the Circuit Court of the Eighteenth Judicial Dist., case 13-CH-
3370) while simultaneously acting on behalf of private developer J. Michael Van
Zandt but where KTJ was paid in whole or in part with public monies, or
advancement of credit, totaling $96,391.77 through April 21, 2016 and following
a similar fact pattern in contravention to the Illinois Constitution and/or Illinois
Criminal Code. (**Ex. D**).

c.      KTJ was involved in another recent zoning tampering case in Tinley Park,
case 2016-CH-03974 in the Circuit Court of Cook County which was resolved
when Tinley Park reversed its own improper re-zoning. Tinley Park, on
information and belief, immediately thereafter fired KTJ, fired Thomas Melody,
fired its own AICP village planner; *all in KTJ's Thomas P. Bayer's home town.*


130.    Defendants' pattern of racketeering activities has continued for the last 16 years,
and based on the past conduct, and similar conduct in other municipalities, *supra*, will most
likely continue into the future with no discernable end and continued threat of repetition.

131.    Defendants have orchestrated and conducted the enterprise through a pattern of
racketeering activity. Specifically, Village Defendants, KTJ, and Jurusik under the guise of
their work for the Village, improperly passed ordinances for Defendant Developers. As a
result of the benefits of the favoritism received, Defendants have engaged in a concerted
effort to injure Plaintiff in his property, business, and his person, and have banded and

32

conspired together to turn the Village into their enterprise and repeatedly injured Plaintiff through a pattern of racketeering activity.

132. Each of the Defendants took part in directing the enterprise's activities.

133. Each Defendant agreed to join the conspiracy and to commit predicate acts with the knowledge that such acts were part of a pattern of racketeering activity.

134. Plaintiff's business interests involved interstate commerce, and, thus, Defendants' conduct as alleged interrupted Plaintiffs' business and affected interstate commerce.

135. The injuries sustained by Plaintiff due to the inability to sell his property and relocate involved interstate commerce, and, thus, Defendants scheme interfered with his relocation and injured Plaintiff's property and affects interstate commerce.

136. Plaintiff has been damaged in an amount in excess of $150,000.00, and is entitled to damages, statutory damages, treble damages, attorney's fees, and costs related to Defendants' conduct, as a result of the Defendants' wrongful actions.

WHEREFORE, Plaintiff prays for entry of judgment, jointly and severally, against the Defendants in an amount in excess of the $150,000 in actual damages in an exact amount to be proved at trial, plus treble damages and punitive damages to punish and deter the Defendants and others from engaging in similar conduct in the future, court costs, attorneys' fees, and expert fees pursuant to 42 U.S.C. § 1988, and grant Plaintiff such additional relief this Honorable Court deems equitable and just.

## COUNT II
### Violations of Equal Protection and Due Process
### (Against Village Defendants, KTJ, and Jurusik)

137. Plaintiff incorporates by reference each allegation contained in Paragraphs 1 through 136 as if fully set forth herein.

33

138. Plaintiff is entitled to equal treatment and due process under the law pursuant to

the U.S. Constitution, Amendments V and XIV, Sec. 1, and the Illinois Constitution Art. I, and

Sec. 2 thereof, stating in relevant part.

> Amendment V
> No person shall be …deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation. (Emphasis added)
>
> United States Constitution
>
> Amendment XIV, Sec. 1
> … No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. (Emphasis added)
>
> United States Constitution
>
> Sec. 1. Inherent and Inalienable Rights
> All men are by nature free and independent and have certain inherent and inalienable rights among which are life, liberty and the pursuit of happiness. To secure these rights and the protection of property, governments are instituted among men, deriving their just powers from the consent of the governed. (Emphasis added)
>
> Illinois Constitution
>
> Article I, Sec. 2. Due Process and Equal Protection
> No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws.
>
> Illinois Constitution

139. Defendants clandestine RICO enterprise was designed to deny Plaintiff *equal protection under the law* and grant governmental access to developers seeking relief that are willing to pay [Jurusik and KTJ] for such re-zonings by the "gaming" of the system.

140. Defendants' clandestine RICO enterprise was designed to deny Plaintiff *due process under the law* and grant "*pay-to-play*" access to developers seeking relief that are willing to pay for such re-zonings by the "gaming" of the system.

141. On information and belief, Defendants violated Plaintiff's rights pursuant to the U.S. Constitution, Amendment V.

142. On information and belief, Defendants violated Plaintiff's rights pursuant to the U.S. Constitution, Amendment XIV, Sec. 1

143. On information and belief, Defendants violated Plaintiff's rights pursuant to the Illinois Constitution Sec. 1.

144. On information and belief, Defendants violated Plaintiff's rights pursuant to the Illinois Constitution Art. I, Sec. 2.

145. Village Code requires elected and appointed officers execute the oath of office, *prior to assuming office*, affirming compliance with the U.S. Constitution, the Illinois Constitution, and Village Code. **(Ex. N)**.

146. Several individuals claiming to be village officials including, *inter alia,* Jurusik and Ziegler, refused to execute and return the required oaths of office.

147. Jasica, as Village Clerk, refused to enforce Village Code and her duties to obtain said oaths of office since the appointment the individuals.

148. Defendants' failure to comply with the Village Code requiring oaths of office rendered individuals ineligible to assume office and/or receive compensation. Thus, it follows Jurusik, KTJ, and its attorneys, along with Benes and Zeigler, never actually assumed office.

35

149.    Plaintiff further alleges that because of the violations of the Illinois Criminal Code and the Illinois Constitution alleged with specificity herein, Village Defendants forfeited their office upon commission or omission of acts assuming *arguendo* had they ever assumed office.

150.    Village Code requires written contracts with vendors exceeding $10,000.00 and KTJ and James J. Benes & Assoc. ("Benes"), Inc. refused to enter into written contracts with the Village in contravention to Village Code.

151.    Plaintiff alleges that absent the mandatory executed oaths of office and written contracts, Jurusik, KTJ, and its attorneys, were never eligible to assume office and thus the Village was not properly represented by counsel when enacting re-zoning ordinances for which KTJ was compensated from about 1998 to present.

152.    Plaintiff alleges that absent the mandatory executed oaths of office and written contracts, Benes and Ziegler were never eligible to assume office and thus the Village was never properly represented by a village engineer, nor did Zeigler possess an Illinois Professional Engineer license as required by Village Code and merely served as a *place-holder* to *rubber-stamp* the enterprise's engineering documents in furtherance of their scheme.

153.    Village Defendants deprived Plaintiff of the equal protections of the laws for reasons of a personal nature unrelated to the duties of their positions with the Village as elected officials, appointed officials, trustees, employees, and commissioners.

154.    Village Code requires that Village Defendants, Jurusik, KTJ, Benes, and Ziegler comply with requirements of the Village Code when *enacting* re-zonings.

155.    Village Code requires the aforesaid Defendants comply with Village Code when *enforcing* re-zonings.

36

156.     Village Defendants are required to uniformly enforce the Village Code and zoning ordinances and refused to do so following complaints and studies by Plaintiff.

157.     Instead of uniformly enforcing the regulations of the Village Code, Defendants have instead subjected Plaintiff to intentional discrimination and injury.

158.     Village Defendants even failed to issues citations to discontinue use of the Incompatible Property for failing to receive a final occupancy permit from 2001 to about 2015.

159.     Village Defendants refused to enforce the Village Code and issue citations for overt violations of Village Code and the preferential rezoning despite complaints on record.

160.     Defendants had no rational basis for their preferential enactment of the serial re-zonings for developments.

161.     No legitimate state purpose was served by the serial re-zonings as evidenced by the repeated failures of the improper commercial uses "spot-zoned" within the established residential neighborhood and the millions of dollars of damages caused to the federal banking agencies and Plaintiff.

162.     Defendants' intentional and purposeful discrimination against Plaintiff had a discriminatory effect on Plaintiff, injuring him in his property, his business, his family, and his person for 16 years.

163.     Despite Rhoads financial obligations to the Village, Jurusik and KTJ continued to represent Rhoads' property interests in his bankruptcy case according to Dkt. 111 **(Ex. B; ¶¶ 6, 8, 9, 10, 14)** which is pled as: (1) a further use of public funds and/or resources for non-public purposes in violation of the Ill. Const. Article VIII; (2) further evidence of the continued RICO enterprise; and, (3) further support of Village Defendants', Jurusik, and KTJ's discriminatory treatment of Plaintiff in favor of private developers.

164.    Jurusik and KTJ have continued representation of Rhoads' non-public interests to purportedly increase the value of Rhoads' property interests states in Dkt. 111, ¶14, in part:

> The Village and the Debtor-in-possession [Rhoads] seek an extension. The extension requested in this Motion will not prejudice the legitimate interests of any party-in-interest in this Chapter 11 case. Rather, the extension will further the Debtor's effort to preserve, maximize, and create value for all of the Debtor's creditors and enhance the likelihood of an outcome that will be in the best interests of all parties in interest. Consequently, the Village and the Debtor believe that the requested extension is warranted and appropriate under the circumstances… (Emphasis in original) **(Ex. B)**.

165.    Village Defendants acting in concert with Rhoads to "preserve, maximize, and create value" for Rhoads' estate, *supra*, is supportive of Plaintiff's allegations of discriminatory treatment from 2000 to present as KTJ continued to represent Rhoads yet be compensated by the Village.

166.    In 2016, Jurusik and KTJ attorneys are alleged to have represented Neyer in drafting Neyer's re-zoning application, Scott's letter to residents, the plan commission recommendations, and the draft and final ordinance, as well as providing the unsupported expert opinions and biased legal conclusions therein again evidencing Defendants' continued discrimination against Plaintiff in favor of fee-generating developers for KTJ and Jurusik.

167.    On information and belief, Jurusik and KTJ represented the private developers' interests while masquerading as village officials while refusing to comply with Village Code, execute and oath of office, and sign a contract setting forth the terms of KTJ's employment.

168.    Plaintiff alleges statutory conflicts of interest created and maintained by KTJ and Jurusik, lack of a required contract, and refusal to execute an oath of office rendered the Village unrepresented by counsel since KTJ was appointed about 1998 to present.

169.    Plaintiff has been damaged in an amount in excess of $150,000.00, and is entitled to damages, statutory damages, treble damages, attorney's fees, and costs related to Defendants' conduct, as a result of the Defendants' wrongful actions.

WHEREFORE, Plaintiff prays for entry of judgment, jointly and severally, against the Defendants in an amount in excess of the $150,000 in actual damages in an exact amount to be proved at trial, plus treble damages and punitive damages to punish and deter the Defendants and others from engaging in similar conduct in the future, court costs, attorneys' fees, and expert fees pursuant to 42 U.S.C. § 1988, and grant Plaintiff such additional relief this Honorable Court deems equitable and just.

### COUNT III
### Violations of 42 U.S.C. § 1983
### (Against Village Defendants, KTJ, and Jurusik)

170.    Plaintiff incorporates by reference each allegation contained in Paragraphs 1 through 169 as if fully set forth herein.

171.    Defendants are "persons" as defined under 42 U.S.C. § 1983.

172.    The clandestine RICO enterprise and predicate acts alleged *supra* functionally barred Plaintiff's civil rights and liberties for the improper personal benefit of Defendants.

173.    Defendants, acting under color of law, wrongfully enacted, wrongfully enforced or did not enforce, the provisions of the Village Code and deprived Plaintiff of his constitutional rights to: (1) equal protection under the law; (2) due process; (3) just compensation for the taking and damaging of private property; and (4) freedom of speech and the right to seek redress of grievances under the U.S. Constitution, in violation of 42 U.S.C. § 1983.

174.    Defendants knowingly and maliciously took these actions with reckless indifference to the constitutionally protected rights of Plaintiff.

175.   Defendants alleged bad acts, and/or failures to act, were and are objectively unreasonable.

176.   There was no rational basis for said actions, nor any public benefit received, nor any legitimate state purpose served, nor could have been reasonably achieved, as evidenced by the repeated failures of the commercial uses within the established residential neighborhood.

177.   Defendants' acts constitute violations of 42 U.S.C. § 1983.

178.   Plaintiff has been damaged in an amount in excess of $150,000.00, and is entitled to damages, statutory damages, treble damages, attorney's fees, and costs related to Defendants' conduct, as a result of the Defendants' wrongful actions.

WHEREFORE, Plaintiff prays for entry of judgment, jointly and severally, against the Defendants in an amount in excess of the $150,000 in actual damages in an exact amount to be proved at trial, plus treble damages and punitive damages to punish and deter the Defendants and others from engaging in similar conduct in the future, court costs, attorneys' fees, and expert fees pursuant to 42 U.S.C. § 1988, and grant Plaintiff such additional relief this Honorable Court deems equitable and just.

## COUNT IV
### Violations of 42 U.S.C. § 1985(3)
**(Against Village Defendants, KTJ, Jurusik, Rhoads, WSMC, and Neyer)**

179.   Plaintiff incorporates by reference each allegation contained in Paragraphs 1 through 178 as if fully set forth herein.

180.   As set forth above, a conspiracy existed among Defendants to harm Plaintiff in his property, business, and his person and to deprive Plaintiff of the equal protection of the laws, due process rights, and rights under the U.S. Constitution.

181.    Toward that end, Defendants committed multiple acts of fraud in furtherance of the conspiracy against Plaintiff.

182.    The sum of Defendants' acts in furtherance of a common design constitute a conspiracy in violation of 42 U.S.C. § 1985(3).

183.    Plaintiff has been damaged in an amount in excess of $150,000.00, and is entitled to damages, statutory damages, treble damages, attorney's fees, and costs related to Defendants' conduct, as a result of the Defendants' wrongful actions.

WHEREFORE, Plaintiff prays for entry of judgment, jointly and severally, against the Defendants in an amount in excess of the $150,000 in actual damages in an exact amount to be proved at trial, plus treble damages and punitive damages to punish and deter the Defendants and others from engaging in similar conduct in the future, court costs, attorneys' fees, and expert fees pursuant to 42 U.S.C. § 1988, and grant Plaintiff such additional relief this Honorable Court deems equitable and just.

### COUNT V
### Violations of 42 U.S.C. § 1986
### TORT OF NEGLIGENCE
### (Village Defendants, KTJ, and Jurusik)

184.    Plaintiff repeats and re-alleges the allegations contained within Paragraphs 1 through 183 as though fully set forth herein.

185.    Defendants owed a duty to Plaintiff in their role as village officials and employees and were negligent in the *enactment* of the numerous preferential re-zonings.

186.    Defendants were negligent in the *enforcement* of the numerous preferential re-zonings.

41

187. Defendants failed to exercise due care to prevent the bad acts and failures to act within their powers and duties and constitutes *neglect* as set forth in 42 U.S.C. 1986.

188. Defendants' neglect to prevent harm proximately caused Plaintiff life-threatening physical injury, damage to real property, damage to personal property, damage to Plaintiff's business.

189. All of the foregoing actions and failures to act by the Defendants occurred in their official capacities and individual capacities under the color of law.

190. As a direct result of Defendants' bad acts, and the time and resources demanded of Plaintiff in defending his property, business, and civil rights, and resulting loss of income, Plaintiff's lender filed a foreclosure action against Plaintiff's property.

191. A duty was owed by Village Defendants, KTJ, and Jurusik to the Plaintiff.

192. Plaintiff suffered, and continues to suffer injuries and damages proximately caused by the Defendants.

193. Defendants' breach of the duty owed to Plaintiff was the proximate cause of Plaintiff's injuries and damages.

194. The injuries and damages to Plaintiff were reasonably foreseeable by Defendants based upon years of documents, communications, analyses, and testimony opposing the improper actions contained in the Village's and KTJ's files furnished by Plaintiff and other residents.

WHEREFORE, Plaintiff prays for judgment against the Defendants, joint and several, in such an amount in excess of this Court's jurisdictional requisite as will fairly and adequately compensate Plaintiff for all bodily injury, emotional harm, pain and suffering, loss of income, loss of enjoyment of life, property damage, business damages, punitive damages, and any other

injuries inflicted by Defendants and injunctive, declaratory, and such other and additional relief this Honorable Court deems just, including attorneys' fees, expert fees, and costs pursuant to 42 U.S.C. 1988.

**COUNT VI**
**Violations of Illinois Constitution – Article VIII(a)(c)**
**(Against Village Defendants, KTJ, Jurusik, Rhoads, WSMC, and Neyer)**

195. Plaintiff incorporates by reference each allegation contained in Paragraphs 1 through 194 as if fully set forth herein.

196. Plaintiff alleges the use of public monies and/or the extension of municipal credit for non-public purposes (*e.g.,* Rhoads, WSMC Partners, LLC, Neyer) by Village Defendants constitutes a violation of the Illinois Constitution Article VIII.

197. KTJ was a primary recipient of the aforesaid public monies and/or advancement of credit.

198. Plaintiff alleges the serial re-zonings of the Incompatible Property are invalid, due to *inter alia*, violations of the Illinois Constitution, Art. VIII(a) dating back to 2000.

199. According to Rhoads' Bankruptcy filings, Village's Proof of Claim 7-1 **(Ex. A)** the Village used public funds, and/or the extension of municipal credit (excluding substantial Village resources, billable hours from Village employees, and accrued interest) for *inter alia*: (1) to finance the Rhoads' costs in a non-public lawsuit *after* Rhoads and Hartz's private negotiations failed; (2) for Rhoads' failed and foreclosed Commonwealth Court Subdivision; (3) for Rhoads' failed and foreclosed Incompatible Property; (4) for Rhoads' never-built "medical office building"; (5) for Rhoads' "Commonwealth in the Village" municipal water and sewer "tap" fees; and, (6) for engineering fees for uncorrected Flagg Creek flood plain issues.

200. KTJ's undisclosed fees for legal representation of Rhoads' property interests in

43

his pending bankruptcy case are in addition to the amounts in the Village's Proof of Claim 7-1 and continue to escalate.

201.    Article VIII; Sec. 1. General Provisions, of the Illinois Constitution states:

(a). Public funds, property or credit shall be used only for public purposes.

(b). The State, units of local government and school districts shall incur obligations for payment or make payments from public funds only as authorized by law or ordinance.

(c). Reports and records of the obligation, receipt and use of public funds of the State, units of local government and school districts are public records available for inspection by the public according to law.

202.    Plaintiff alleges that Village Defendants, including Jurusik and KTJ, violated his rights under Art. VIII(c) regarding access to public records, in addition to the Village violations of the Illinois Freedom of Information Act.

203.    Plaintiff alleges that Jurusik and KTJ employed a similar scheme in nearby Clarendon Hills, Illinois, whereby at least $96,000.00 of public monies was paid to KTJ, and/or credit advanced, in furtherance of the alleged zoning tampering matter. KTJ's and Jurusik's fees for the Western Springs litigation matter was also over-billed to Clarendon Hills.

204.    Plaintiff alleges Village Defendants, Jurusik, and KTJ violated Plaintiff's rights under Art. VIII(c) to access to public records, more specifically Plaintiff's requests for un-redacted records to which *Plaintiff is entitled as a matter of law since public monies were used,* or municipal credit advanced, for non-public purposes in furtherance of the RICO enterprise.

205.    Plaintiff alleges KTJ and Jurusik, violated Plaintiff's rights under Art. VIII(c) (and the Illinois FOIA act) access to public records, more specifically un-redacted records demanded by Plaintiff from the Village of Clarendon Hills as a matter of law. **(Ex. D)**.

44

206. On information and belief, KTJ and its attorneys also failed or refused to comply with Clarendon Hills code requirements regarding the execution and return of oaths of office and a contract for services.

207. On information and belief KTJ and its attorneys have also not properly assumed office in Clarendon Hills.

WHEREFORE, Plaintiff demands declaratory judgment against Village Defendants, KTJ, and Jurusik and entry of an Order determining Defendants violated the Illinois Constitution Article VIII (a) and (c) and compelling Defendants to produce all documents relative to the use of government monies and credit advanced and for injunctive relief enjoining and restraining said Defendants, and anyone acting in concert with them, from continuing their respective unlawful activities in violation of Article VIII requiring said Defendants, and anyone acting in concert with them, to disgorge any and all monies which they may have earned or received as a result of any such wrongful activities; legal fees and costs of this action and interest thereon; and such other and additional relief this Honorable Court deems just.

## COUNT VII
### Violations of Illinois Criminal Code Section 33-1 and 33-3(a) and the Public Officer Prohibited Activities Act 50 ILCS 105/3
### (Village Defendants, KTJ, and Jurusik)

208. Plaintiff incorporates by reference each allegation contained in Paragraphs 1 through 207 as if fully set forth herein.

209. The Seventh Circuit has held that certain violations of Illinois' Official Misconduct Statute can constitute a RICO predicate act.

210. In this case, Plaintiff has alleged numerous counts for violations of the Illinois Official Misconduct Statute.

211. According to Illinois statute, *infra*, and KTJ's own publication *Identifying and Avoiding Conflicts of Interest – Answers to Fact Pattern Questions*, p. 6, Defendants are alleged to have violated sections of the Illinois Criminal Code. **(Ex. C)**.

### Sec. 33-1. Official Misconduct.

Sec. 33-1. Bribery. A person commits bribery when:

(a) With intent to influence the performance of any act related to the employment or function of any public officer, public employee, juror or witness, he or she promises or tenders to that person any property or personal advantage which he or she is not authorized by law to accept; or

(b) With intent to influence the performance of any act related to the employment or function of any public officer, public employee, juror or witness, he or she promises or tenders to one whom he or she believes to be a public officer, public employee, juror or witness, any property or personal advantage which a public officer, public employee, juror or witness would not be authorized by law to accept; or

(c) With intent to cause any person to influence the performance of any act related to the employment or function of any public officer, public employee, juror or witness, he or she promises or tenders to that person any property or personal advantage which he or she is not authorized by law to accept; or

(d) He or she receives, retains or agrees to accept any property or personal advantage which he or she is not authorized by law to accept knowing that the property or personal advantage was promised or tendered with intent to cause him or her to influence the performance of any act related to the employment or function of any public officer, public employee, juror or witness; or

(e) He or she solicits, receives, retains, or agrees to accept any property or personal advantage pursuant to an understanding that he or she shall improperly influence or attempt to influence the performance of any act related to the employment or function of any public officer, public employee, juror or witness.
720 ILCS 5/33-1

212. Jurusik and/or KTJ provided legal services for the private *personal advantage* of Village employees and/or officials with influence over KTJ's terms of employment.

46

213. Jurusik and/or KTJ provided legal services for the private *personal advantage* of Defendant Developers Rhoads, WSMC Partners, LLC, and/or Neyer while simultaneously purporting to be the village attorney.

214. On information and belief, Jurusik, KTJ, Benes, and Ziegler, by their own choosing, were ineligible to assume office and ineligible to receive compensation from the Village and developers at all relevant times.

215. On information and belief the Village was effectively unrepresented by counsel thus allowing Jurusik and KTJ to represent private developers while collecting compensation from both the Village and Defendant Developers through the Village under a veil of legitimacy.

216. On information and belief, Jurusik and KTJ created one or more common law conflicts of interests.

217. On information and belief, Jurusik and KTJ created one or more statutory conflicts of interests.

218. Village Defendants and Trustees aided and abetted, or acted with the reckless indifference to the injuries caused Plaintiff, in the commission of unlawful acts alleged herein.

219. Plaintiff alleges that the payments made to Jurusik and KTJ for their acts in contravention to the Illinois Constitution, Illinois Criminal Code, Public Officer Prohibited Activities Act, and Village Code constitutes *bribery* of a Village official.

220. Plaintiff alleges that the legal services provided by KTJ and Jurusik to Village employees and officials violate Sec. 33-1 of the Ill. Criminal Code and constitutes *bribery* of, or a *personal advantage* to, a Village official and/or employee.

221. Plaintiff alleges, in addition to, or in the alternative of, bribery allegations some or all of the payments may be considered extortion payments in the meaning of 18 U.S.C. 1951.

222. Plaintiff alleges any monies paid by private developers (*e.g.*, Rhoads, WSMC Partners, LLC, Neyer), through the Village acting as "paymaster," to ineligible Defendants constitutes additional counts of bribery, more specifically Official Misconduct.

### Sec. 33-3(a) Official Misconduct.

(a) A public officer or employee or special government agent commits misconduct when, in his official capacity or capacity as a special government agent, he or she commits any of the following acts:

(1) Intentionally or recklessly fails to perform any mandatory duty as required by law; or

(2) Knowingly performs an act which he knows he is forbidden by law to perform; or

(3) With intent to obtain a personal advantage for himself or another, he performs an act in excess of his lawful authority; or

(4) Solicits or knowingly accepts for the performance of any act a fee or reward which he knows is not authorized by law.

720 ILCS 5/33-3

223. Plaintiff alleges Village Defendants, KTJ, and Jurusik violated one or more Sec. 33-3(a) subsections of the Illinois Criminal Code constituting *official misconduct*.

224. Plaintiff alleges that the ineligibility of KTJ, Jurusik, Benes, and Zeigler to hold office (by their own choosing), and receive compensation from the Village *and* private developers, constitutes official misconduct.

225. Village Defendants, KTJ, and Jurusik knew, or should have reasonably known, their actions constitute official misconduct by virtue of KTJ's publications on the matters.

226. Defendants are alleged to have violated the Public Officer Prohibited Activities Act (also known as the "Corrupt Practices Act") given the conflicts of interests created and/or permitted by Village Defendants, KTJ, and Jurusik.

Prohibited interest in contracts. (a) No person holding any office, either by election or appointment under the laws or Constitution of this State, may be in any manner financially interested directly in his own name or indirectly in the name of any other person, association, trust, or corporation, in any contract or the performance of any work in the making or letting of which such officer may be called upon to act or vote. No such officer may represent, either as agent or otherwise, any person, association, trust, or corporation, with respect to any application or bid for any contract or work in regard to which such officer may be called upon to vote. Nor may any such officer take or receive, or offer to take or receive, either directly or indirectly, any money or other thing of value as a gift or bribe or means of influencing his vote or action in his official character. Any contract made and procured in violation hereof is void.

50 ILCS 105/3

227.    KTJ's explanation of the Corrupt Practices Act is set for in **Ex. C** and demonstrated Defendants' knowledge of their alleged violations of the act.

228.    Thus, it is pled as a "no brainer" that KTJ and Jurusik had undisclosed financial interests in the conflicts they themselves manufactured, both for themselves and for others.

229.    KTJ's and Jurusik's refusal to be bound to the Village by written contract and the requirements for executing and returning oaths of office, as required by Village Code, does not relieve KTJ and Jurusik of their obligations to comply with the rule of law.

WHEREFORE, Plaintiff demands declaratory judgment against Village Defendants, KTJ, and Jurusik for injunctive relief enjoining and restraining said defendants, and anyone acting in concert with them, from continuing their respective unlawful activities in violation of the Illinois Criminal Code and the Public Officer Prohibited Activities Act; requiring said Defendants, and anyone acting in concert with them, to disgorge any and all monies which they may have earned or received as a result of any such wrongful activities; legal fees and costs of this action and interest thereon; and such other and additional relief this Court deems just.

## COUNT VIII
### Tort of Intentional Infliction of Severe Emotional Distress
#### (All Defendants)

230.    Plaintiff repeats and re-alleges the allegations contained within Paragraphs 1 through 229 above as though fully set forth herein.

231.    The breach of the duties owed Plaintiff represents an unprecedented attack *directed at a single resident citizen* so extreme and outrageous, for such a long period, *for no legitimate state purpose or public benefit,* and without any relief, that no other citizen in the Village has had to endure, nor should be reasonably expected to endure.

232.    As set forth above, Defendants have knowingly caused the severe deprivation of sleep of Plaintiff for about 16 years; plus 16 years of having to repeatedly defend Plaintiff's property and civil rights against the clandestine RICO enterprise where the Village and KTJ caused to be disclosed in their February 2015 the Proof of Claim 7-1 (Ex. A1) pled as a judicial admission of the enterprise by the parties.

233.    Defendants intended to cause, consciously caused, recklessly caused, or disregarded the probability of causing severe emotional distress and physical injury.

234.    Defendants' conduct actually and proximally caused severe emotional distress and physical injury to Plaintiff.

235.    The intent to cause harm, and/or recklessly disregarding the reasonably likelihood of causing harm, is evident from 2000 to present day resulting from the enterprise.

236.    Village Defendants knew there was a likelihood of harm, the gravity of the various injuries, their duty to prevent such harms, and their *overt neglect* to do so.

237.    Defendants knew the likelihood that Plaintiff and Plaintiff's family would be susceptible to distress by not being able to relocate away from the "*physical zone of danger*" created and perpetuated by Defendants with Plaintiff stuck squarely in the middle.

238.    Defendants were aware by virtue of their bad acts and failures to act that Plaintiff would be injured and by virtue of Plaintiff's correspondence with Village Officials.

239.    Injuries proximately caused by Defendants include, *inter alia*, interfering with Plaintiff's ability to sell his property, causing a foreclosure action against Plaintiff's property and *naming his ailing parents as codefendants*, the death of Plaintiff's father after being named a codefendant in the foreclosure, damages to Plaintiff's person by effectively barring medical treatment, vision damage, medically diagnosed asymmetrical facial atrophy (disfigurement from untreated infection), and chronic pain from infection, compromised immune system resulting from malnutrition and years of sleep deficit, which were treatable/preventable, but for Plaintiff being repeatedly forced to defend his property and his civil rights. Thus such medical treatments and reconstructive surgery has been barred by Village Defendants repeatedly refusing to be held answerable and accountable to its citizens.

240.    Said injuries and pain have interfered with Plaintiff's ability to drive and work, thus forcing Plaintiff out of business and out of the Village via the foreclosure action.

241.    Defendants' bad acts and failures to act have altered and interfered with Plaintiff's daily activities, work, damaged his property, business, and his person.

242.    Plaintiff has also been forced to live in fear, residing within one block of Defendant Rhoads who Plaintiff believes, and has good reason to believe, to be potentially violent toward Plaintiff for having disclosed the alleged RICO enterprise activities and other financial frauds against the United States, its federal banking agencies, and the U.S. Bankruptcy Court.

243.    Rhoads's own lawyers can't control him and his writings demonstrate an utter break from reality, as if he is the victim, as it relates to the damages and injuries Rhoads has

51

caused Plaintiff, the Village, and other creditors. On information and belief, the amounts he owes creditors totals about $10 million, yet he purports to be the victim. **(Ex. A4)**.

244. Village Defendants bad acts and omissions have both created the threatening situation and simultaneously prevented Plaintiff from relocation from the "*physical zone of danger*" Defendants created.

245. Defendants' bad acts and failures to act have altered, interfered, and harmed Plaintiff's health, income, earning potential, savings, and home value having been forced to repeatedly defend his property, business, and constitutional rights *for more than 16 years, or about 30% of his life,* only to recently learn of the financial transaction dating back to 2000 when Village Defendants filed their Proof of Claims on or about February 19, 2015. **(Ex. A).**

246. The repetitive acts, *supra,* and the thousands of hours wasted by Plaintiff's defending his property and constitutional rights against the hidden RICO enterprise have caused severe emotional stress.

247. Defendants' conduct was, and continues to be, *beyond any and all bounds tolerated in a civil society* and has proximately caused injuries to Plaintiff for 16 years.

248. All of the foregoing actions and failures to act by the Village Defendants, KTJ, and Jurusik occurred in their capacities acting under color of law.

249. Defendants, and each of them, engaged in outrageous conduct towards Plaintiff, with the intention to cause, or with reckless disregard for the probability of causing Plaintiff to suffer severe emotional distress. To the extent that said outrageous conduct was perpetrated by certain Defendants, the remaining Defendants adopted and ratified said conduct with a *wanton and reckless disregard* of the deleterious consequences to Plaintiff and the value of human life.

250.    Defendants committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice and in conscious disregard of Plaintiff's rights entitling Plaintiff to recover punitive damages.

251.    Defendants were all well aware of the likelihood of injury caused based upon *inter alia* Plaintiff's correspondence with the Village demanding action for violations of Village Code since 2000.

252.    As a proximate cause of said conduct, Plaintiff has suffered and continues to suffer extreme distress, humiliation, anguish, and emotional, and physical injuries including, embarrassment from facial disfigurement, vision impairment, and chronic pain stemming from untreated recurring infections, as well as economic losses and damages resulting from not being able to relocate, drive, and work productively.

WHEREFORE, Plaintiff prays for judgment against the Defendants, joint and several, in such an amount in excess of this Court's jurisdictional requisite as will fairly and adequately compensate Plaintiff for all bodily injury, emotional harm, pain and suffering, loss of income, loss of enjoyment of life, property damage, business damages, punitive damages, and any other injuries inflicted by Defendants and such injunctive, declaratory, and such other and additional relief this Honorable Court deems just, including attorneys' fees, expert fees, and costs pursuant to 42 U.S.C. 1988.

## COUNT IX
### Tort of Negligent Infliction of Severe Emotional Distress
### (All Defendants)

253.    Plaintiff repeats and re-alleges the allegations contained within Paragraphs 1 through 252 above as though fully set forth herein.

53

254. In addition to, and in the alternative of, and without prejudice to Count VIII Plaintiff alleges the Defendants' Negligent Infliction of Severe Emotional Distress.

255. All of the foregoing actions and failures to act by the Village Defendants, KTJ, and Jurusik occurred in their capacities acting under color of law to injure Plaintiff.

256. At all relevant times, all Village Defendants, KTJ, and Jurusik, and each of them, had the power, ability, authority, and duty to stop engaging in the conduct described herein and/or to intervene to prevent or prohibit said conduct.

257. Despite said knowledge, power, and duty, Defendants failed to act to prevent harm to stop engaging in the conduct described herein and/or to prevent or prohibit such conduct or otherwise protect Plaintiff.

258. To the extent that said negligent conduct was perpetrated by certain Village Defendants, KTJ, and Jurusik, the remaining Defendants confirmed and ratified said conduct with the knowledge that Plaintiff's emotional and physical distress would thereby increase, and with a *wanton and reckless* disregard for the deleterious consequences to Plaintiff and the value of human life.

259. As a proximate cause of said conduct, Plaintiff has suffered and continues to suffer extreme distress, humiliation, anguish, and emotional, and physical injuries including, embarrassment from facial disfigurement, vision impairment, and chronic pain stemming from untreated recurring infections, as well as economic losses and damages resulting from not being able to relocate, drive, and work productively.

WHEREFORE, Plaintiff prays for judgment against the Defendants, joint and several, in such an amount in excess of this Court's jurisdictional requisite as will fairly and adequately compensate Plaintiff for all bodily injury, emotional harm, pain and suffering, loss of income,

54

loss of enjoyment of life, property damage, business damages, punitive damages, and any other injuries inflicted by Defendants and such injunctive, declaratory, and such other and additional relief this Honorable Court deems just, including attorneys' fees, expert fees, and costs pursuant to 42 U.S.C. 1988.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues for which a jury trial is permitted.

Respectfully submitted,

By:

November 10, 2016

Plaintiff, Stephen Jackson, *pro se*

Stephen Jackson
P.O. Box 429
Hinsdale, IL 60522
773.800.1570
stephenmjackson@aol.com

238.    Defendants were aware by virtue of their bad acts and failures to act that Plaintiff would be injured and by virtue of Plaintiff's correspondence with Village Officials.

239.    Additional injures resulting therefrom include interfering with the ability to sell his property, causing a foreclosure action against Plaintiff's property, and *also naming his parents as defendants*, the death of Plaintiff's father after being named as a defendant in the foreclosure action *supra*, damages to Plaintiff's person by interfering with medical treatment, vision damage, recurring infections, medically diagnosed asymmetrical facial atrophy (disfigurement due to untreated infections) and chronic eye pain/infection, untreated root canal infection and acute pain because Plaintiff cannot sell his home, relocate and work, to pay for necessary medical treatments and reconstructive surgery while having to repeatedly defend his civil rights, his property, and his business interests and foregoing sleep and medical to do so by Village Defendants who repeatedly refuse to be answerable to residents.

240.    Said have interfered with Plaintiff's ability to drive and work and thus forcing Plaintiff out of business and out of the Village via the aforesaid foreclosure action.

241.    Defendants' bad acts and failures to act have altered and interfered with Plaintiff's daily activities, work, damaged his property, business, and his person.

242.    Plaintiff has also been forced to live in fear, residing within one block of Defendant Rhoads who Plaintiff believes, and has good reason to believe, to be potentially violent toward Plaintiff for having disclosed the alleged RICO enterprise activities and other financial frauds against the United States, its federal banking agencies, and the U.S. Bankruptcy Court.

243.    Rhoads's own lawyers can't control him and his writings demonstrate an utter break from reality, as if he is the victim, as it relates to the damages and injuries he has caused

Plaintiff, the Village, and other creditors totaling. On information and belief, the amounts he owes creditors totals about $10 million, yet he purports to be the victim. **(Ex. A4)**.

244.    Village Defendants bad acts and omissions have both created the threatening situation and simultaneously prevented Plaintiff from relocation from the "*physical zone of danger*" Defendant created.

245.    Defendants' bad acts and failures to act have altered, interfered, and harmed Plaintiff's health, income, earning potential, savings, and home value having been forced to repeatedly defend his property, business, and constitutional rights *for more than 16 years, or about 30% of his life,* only to recently learn of the financial transaction dating back to 2000. **(Ex. A).**

246.    The repetitive acts, *supra,* and the thousands of hours wasted by Plaintiff's defending his property and constitutional rights against the hidden RICO enterprise have caused severe emotional stress.

247.    Defendants' conduct was, and continues to be, beyond any and all bounds tolerated in a civil society and has harmed Plaintiff for 16 years.

248.    All of the foregoing actions and failures to act by the Village Defendants, KTJ, and Jurusik occurred in their capacities acting under color of law.

249.    Defendants, and each of them, engaged in outrageous conduct towards Plaintiff, with the intention to cause, or with reckless disregard for the probability of causing Plaintiff to suffer severe emotional distress. To the extent that said outrageous conduct was perpetrated by certain Defendants, the remaining Defendants adopted and ratified said conduct with a *wanton and reckless disregard* of the deleterious consequences to Plaintiff and the value of human life.

250.    Defendants committed the acts alleged herein maliciously, fraudulently and

oppressively with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice and in conscious disregard of Plaintiff's rights entitling Plaintiff to recover punitive damages.

251.    Defendants were all well aware of the likelihood of injury caused based upon *inter alia* Plaintiff's correspondence with the Village demanding action for violations of Village Code since 2000.

252.    As a proximate cause of said conduct, Plaintiff has suffered and continues to suffer extreme distress, humiliation, anguish, and emotional, and physical injuries including, embarrassment from facial disfigurement, vision impairment, and chronic pain stemming from untreated recurring infections and malnutrition, as well as economic losses and damages resulting from not being able to drive and work.

WHEREFORE, Plaintiff prays for judgment against the Defendants, joint and several, in such an amount in excess of this Court's jurisdictional requisite as will fairly and adequately compensate Plaintiff for all bodily injury, emotional harm, pain and suffering, loss of income, loss of enjoyment of life, property damage, business damages, punitive damages, and any other injuries inflicted by Defendants and such injunctive, declaratory, and such other and additional relief this Honorable Court deems just, including attorneys' fees, expert fees, and costs pursuant to 42 U.S.C. 1988.

## COUNT IX
### Tort of Negligent Infliction of Severe Emotional Distress
### (All Defendants)

253.    Plaintiff repeats and re-alleges the allegations contained within Paragraphs 1 through 252 above as though fully set forth herein.

254.    In addition to, and in the alternative of, and without prejudice to Count VIII Plaintiff alleges the Defendants' Negligent Infliction of Severe Emotional Distress.

255. All of the foregoing actions and failures to act by the Village Defendants occurred in their capacities acting under color of law to injure Plaintiff.

256. At all relevant times, all Village Defendants, KTJ, and Jurusik, and each of them, had the power, ability, authority, and duty to stop engaging in the conduct described herein and/or to intervene to prevent or prohibit said conduct.

257. Despite said knowledge, power, and duty, Defendants failed to act to prevent harm to stop engaging in the conduct described herein and/or to prevent or prohibit such conduct or otherwise protect Plaintiff.

258. To the extent that said negligent conduct was perpetrated by certain Village Defendants, KTJ, and Jurusik, the remaining Defendants confirmed and ratified said conduct with the knowledge that Plaintiff's emotional and physical distress would thereby increase, and with a *wanton and reckless* disregard for the deleterious consequences to Plaintiff and the value of human life.

259. As a proximate cause of said conduct, Plaintiff has suffered and continues to suffer extreme distress, humiliation, anguish, and emotional, and physical injuries including, embarrassment from facial disfigurement, vision impairment, and chronic pain stemming from untreated recurring infections and malnutrition, as well as economic losses and damages resulting from not being able to drive and work.

WHEREFORE, Plaintiff prays for judgment against the Defendants, joint and several, in such an amount in excess of this Court's jurisdictional requisite as will fairly and adequately compensate Plaintiff for all bodily injury, emotional harm, pain and suffering, loss of income, loss of enjoyment of life, property damage, business damages, punitive damages, and any other injuries inflicted by Defendants and such injunctive, declaratory, and such other and additional

loss of enjoyment of life, property damage, business damages, punitive damages, and any other injuries inflicted by Defendants and such injunctive, declaratory, and such other and additional relief this Honorable Court deems just, including attorneys' fees, expert fees, and costs pursuant to 42 U.S.C. 1988.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues for which a jury trial is permitted.

Respectfully submitted,

By:

November 10, 2016                    Plaintiff, Stephen Jackson, *pro se*

Stephen Jackson
P.O. Box 429
Hinsdale, IL 60522
773.800.1570
stephenmjackson@aol.com

## **APPENDIX**

A. Rhoads U.S. Bankruptcy Court N.D. of Illinois, Eastern Div., Case 14-17886 Group
   Exhibits Village of Western Springs Proof of Claim 7-1, Dkts 1, 113, and 254

B. Rhoads U.S. Bankruptcy Court Dkt. 111

C. Klein, Thorpe and Jenkins, Ltd. Publications

D. Village of Clarendon Hills Sample Legal Fee Invoices for representation of Clarendon
   Hills and private real estate developer J. Michael Van Zandt

E. Village of Western Springs – Notice of Hearing regarding 2016 Neyer Re-Zoning

F. Neyer Re-Zoning application materials

G. Village of Western Springs Resident Opposition Affidavit and Letter

H. Winston & Strawn and Klein, Thorpe and Jenkins, Ltd. Correspondence to Jackson on
   behalf of Gurrie C. Rhoads

   i.   Mark Henning's Plan Commission Card dated before threatening Plaintiff
   ii.  Threat Letter 1 - Winston & Strawn letter to Plaintiff
   iii. Threat Letter 2 - Klein, Thorpe and Jenkins, Ltd. letter to Plaintiff

I. Village's Warranty Deed for Plaintiff's home site, attested to by Defendant Jasica

J. Photographs of Glare entering home, 24/7 generators and industrial equipment, faulty
   traffic study, and concealed re-zoning sign, Village workers removing trees from
   WSMC's property

K. Damage Models; Trulia and REALTOR.com home market value estimates, Matched
   Pair Damage Analyses, Cost Approach, Listing sheet for nearby 4525 Central Avenue

L. Former Village President Jack Lynch: *"Where I Stand"* (President election material)

M. Defendant Rodeghier's Oath of Office and email to Jackson dated December 31, 2011,
   Village Org Chart, Meeting Minutes identifying Jurusik as "Village Attorney" and
   Jurusik's letter to Plaintiff regarding Plaintiff "putting" property back to Village

N. Letter from Robert Sherwood Opposition to the then proposed Ordinance 01-2162
   evidencing the intent of the Village *before* appointing KTJ

O. Defendants Service List

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

IN RE:                  )
Gurrie C. Rhoads          )     Bankruptcy No. 14 B 17886
                    )     Chapter 7
            Debtors      )     Judge Timothy A. Barnes
                    )

To:    See attached list

### NOTICE OF HEARING

**PLEASE TAKE NOTICE** that on **May 11, 2016,** at the hour of 10:00 A.M., or as soon thereafter
as counsel may be heard, I shall appear before the honorable Timothy A. Barnes in Courtroom 744
of the United States Bankruptcy Court, 219 S. Dearborn St., Chicago, Illinois, or any other judge
sitting in his place and stead, and shall then and there present the attached **Objection to Claim #7,**
a copy of which is hereby served upon you. You may appear if you so choose.

                            Kenneth E. Garstka
                            Law Offices of Kenneth E. Garstka
                            314 N. Catherine
                            LaGrange Park, IL 60526
                            708-305-7271
                            kennethegarstka@gmail.com

### CERTIFICATE OF SERVICE

     I, Kenneth E. Garstka, an attorney, certify that I caused a copy of the foregoing Notice and
Motion to be served on the parties listed on the attached service list by electronic notice where
indicated, or by first class mail by depositing with the United States Postal Service, LaGrange,
Illinois, postage prepaid, prior to 5:00 P.M., this 11th day of April, 2016.

                            /s/ Kenneth E. Garstka
                            Kenneth E. Garstka



**EXHIBIT**
**A1**

**Notice List**
**Gurrie C. Rhoads**
**14 B 17886**

Elecmat Remington, LLC
c/o Herman J. Marino
53 W. Jackson Blvd.
Chicago IL  60604

- Edmond M Burke   eburke@chuhak.com, mvasquez@chuhak.com

- Mark E. Burt   meblawllc@gmail.com

- Barry A Chatz   bachatz@arnstein.com,
  bchatz@ecf.epiqsystems.com;jbmedziak@arnstein.com;blsutton@arnstein.com;irsiabc@
  aol.com

- Deborah K Ebner   dkebner@deborahebnerlaw.com,
  sbutz@deborahebnerlaw.com;webmaster@debnertrustee.com;lizd@deborahebnerlaw.co
  m

- John W Guzzardo   jguzzardo@shawfishman.com, orafalovsky@shawfishman.com

- Jacob H. Karaca   jhkaraca@ktjnet.com

- Patrick S Layng   USTPRegion11.ES.ECF@usdoj.gov

- Herman J. Marino   hjmarino@marinotaxlaw.com

- Monica C O'Brien   gstern1@flash.net

- Kevin R Purtill   kpurtill@chuhak.com, nmatthiscyk@chuhak.com

- Brian L Shaw   bshaw@shawfishman.com, jbunton@shawfishman.com

- Gregory K Stern   gstern1@flash.net, steve_horvath@ilnb.uscourts.gov

- David Lloyd   dlloyd@davidlloydlaw.com

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

In Re:                              )     Chapter 11
        **GURRIE C. RHOADS**        )     Case No. 14 – 17886
                **Debtor**          )     Honorable Timothy A. Barnes

## OBJECTION TO PROOF OF CLAIM NUMBER 7 FILED BY
## VILLAGE OF WESTERN SPRINGS FILED FEBRUARY 19, 2015

NOW COMES Commonwealth Properties Company LLC, Creditor herein, by and through its attorney, Kenneth E. Garstka as and for its Objection to Proof of Claim Number 7 Filed by Village of Western Springs Filed February 19, 2015, states as follows:

1.      A Voluntary Petition for Relief was filed May 12, 2014, and Gurrie Rhoads' motion to convert the case from Chapter 11 to Chapter 7 was granted by the Honorable Timothy A. Barnes on May 12, 2015.

2.      The Village of Western Springs has filed proof of claim number 7, a true and correct copy of which is attached here to and incorporated here in as **Group Exhibit A** (hereinafter "the claim"). The claim asserts a secured interest in property of the Estate in the amount of $218,058.30, and an unsecured claim against the estate in the amount of $196,869.10.

## OBJECTION TO SECURED CLAIM OF VILLAGE OF WESTERN SPRINGS

3.      The secured portion of the claim is based upon a Memorandum of Judgment recorded February 5, 2014 as document #1404545105 arising out of its judgment obtained in Case No. 06CH281 (Circuit Court of Cook County, Illinois). The recorded Memorandum states that judgment was entered on January 17, 2014 in the amount of $218,058.00 in favor of the Village of Western Springs against Gurrie Rhoads, individually, and Rhoads Development Company, a sole proprietorship (the "$218,058 Judgment"). However, this recorded judgment fails to give rise to any secured claim in the Bankruptcy proceeding, since neither Gurrie Rhoads nor Rhoads Development Company has any interest in the property to which the judgment attached.

4.      Attached to the Memorandum of Judgment recorded in favor of the Village of Western Springs are five legal descriptions (Exhibits A, C, D, E and F). A search of the public record

discloses the following with respect to each of the five parcels of land described in the above-referenced exhibits.

(A)    Exhibit A: 4901 Commonwealth Ave, Western Springs, IL - Permanent Tax Index No.: 18-07-400-067-0000

This property along with other land was conveyed to Commonwealth Properties Company, L.L.C. by deed recorded January 20, 1999 as Document #99059067, in Cook County, Illinois. No subsequent document has been recorded since the date of this deed conveying any ownership interest in this property. The Cook County Treasurer's website indicates that the current tax assessment for this property is Commonwealth Properties Company, LLC.

(B)    Exhibit C: 5312 Commonwealth Ave., Western Springs, IL - Permanent Tax Index No.: 18-07-418-059-1023.

Exhibit D: 5400 Commonwealth Ave., Western Springs, IL - Permanent Tax Index No: 18-07-418-059-1026.

Exhibit E: 5410 Commonwealth Ave, Western Springs, IL - Permanent Tax Index No. 18-07-418-059-1020.

The property contained in Exhibits C, D and E, along with other land, was submitted to the Illinois Condominium Property Act by the Declaration of Condominium Ownership for Commonwealth in the Village-South recorded December 3,2003 as Document #0334231109, as amended from time to time. The owner of this Condominium property is certified in the recorded document to be Commonwealth Properties Company, LLC. The underlying property of this Condominium was conveyed to Commonwealth Properties Company, LLC, by deed recorded January 20, 1999 as Document #99059067, in Cook County, Illinois. No subsequent instrument of conveyance has been recorded against the subject property other than a certain Construction Mortgage recorded April 11, 2008 as Document #0810233130. This Mortgage is executed by Commonwealth Properties Company, LLC as mortgagor/owner and includes the property contained in Exhibits C, D and E. The Cook County Treasurer's website indicates that the current tax assessee for these three properties is Commonwealth Properties Company, LLC.

(C)    Exhibit F: 4829 Commonwealth Ave, Western Springs, IL - Permanent Tax Index No.: 18-07-200-054-0000.

The Treasurer's website indicates that the current tax assessment for this property is Commonwealth Properties Company, LLC. A search of the public records of Cook County, Illinois discloses no conveyance with respect to the property.

5.      Based upon the foregoing, neither Gurrie Rhoads, individually, nor Rhoads Development Company, has, or has ever had any interest in the properties described in Exhibits A, C, D, E and F, attached to the aforementioned Memorandum of Judgment., and accordingly, there exists no basis to assert a secured claim against this estate.

6.      Since Gurrie Rhoads, individually, and Rhoads Development Company, were defendants in Case No. 06CH281, the asserted secured claim in the amount of $218,058.30 should be reclassified as an **unsecured** claim against this estate in the amount of$218,058.30.

7.      The documents supporting the unsecured portion of the claim of the Village of Western Springs relate to projects owned by "Commonwealth" or "Commonwealth Properties". If in their references to "Commonwealth" and "Commonwealth Properties", the Village intended those references to be shorthand for Commonwealth Properties Company, LLC; then and in that event, the entire unsecured portion of the Village claim would fail, as Commonwealth Properties Company, LLC, is not one of the named Debtors in the subject Bankruptcy proceeding. Nevertheless, it is generally correct to assume that the beneficial owner of Commonwealth Properties Company, LLC, which is the Commonwealth Avenue Venture, has used "Commonwealth" and "Commonwealth Properties" as a trade style from time to time.

8.      Notwithstanding the possibility that the correct obligor is not a debtor in this bankruptcy case, the claim of the Village of Western Springs is not supported by the information attached to its Proof of Claim.

9.      The unsecured portion of the Village of Western Springs Proof of Claim has six components. Each will be identified herein and addressed separately.

        A.      Judgment Interest ($19,625.25). The interest is based on the Village's January 17, 2014 judgment obtained in Case No. 06CH281 in the Circuit Court of Cook County against Gurrie Rhoads individually, and Rhoads Development. This component of the unsecured portion of the Proof of Claim should be disallowed to the extent that it includes judgment interest on and after the Petition Date.

        B.      Commonwealth Court ($5,732.72). This component consists of fees to have been paid to the Village of Western Springs for their inspection of construction on a six-lot residential subdivision. While the Village approved the proposed development in August,

2006, the project was subsequently abandoned without any work being performed.  Since no construction took place, no construction inspection fees can be due to the Village.

C/D:    Commonwealth Medical and 47th and Commonwealth ($15,321.35 and $12,659.72).  Both of the amounts contained in these two components were for inspection fees to have been payable to the Village of Western Springs for a Phase 2 commercial building to have been constructed in the Village.  Numerous plan review fees and deposits were paid to the Village in anticipation of the building's construction, but the building project was abandoned and the Phase 2 commercial building was never constructed. As a result there can be no inspection fees due to the Village since there was never any construction to inspect.

E.    Tap-on Fees ($83,000.00). This component of the Village's unsecured Proof of Claim relates to a 35 building development with two to five units per Building. The Village of Western Springs claims that the total amount owed for tap-on fees for required sewer and water service for this project is $136,800.00. However, their attachment shows that beginning with Building 20 and continuing through Building 35 the Village increased their tap-on fees from a $400.00 charge per building to a $2,000.00 charge per unit. As a result of this new fee structure the Village effectively increased their fees for each of Buildings 19 through 35 by $1,000 to $2,500 depending on the number of units per building. No notice of this increase was ever provided nor was the requisite local ordinance passed to provide a legal basis for this increase.

All 35 buildings were constructed in the same manner so that there was no need for any change in the method of assessing charges for "tap" fees by the Village. Had Buildings 20 through 35 been assessed "tap" fees in the same manner as the Village utilized in the first nineteen buildings in the project, i.e. on a per building basis rather than on a per unit basis, the total amount of "tap" fees due to the Village for would have been $44,800.00. Since the Village's own attachment shows that $53,800.00 was paid for sewer and water tap-on fees there should actually be a refund of $9,000.00 due from the Village.

F.    Commonwealth Phase II ($60,884.56). This component of the Village's unsecured Proof of Claim relates to inspection fees allegedly due to the Village of Western Springs for a construction project that was actually completed and certified as ready for occupancy

on September 27, 2005. With respect to the inspection fees that the Village claims are still due and owing, that portion of the fees totaling $51,437.27 was for inspections that purportedly took place after the date on which construction was certified as complete by the Village. Only $9,447.29 in inspection fees out of the total amount claimed was for inspections undertaken by the Village prior to completion of construction.

10.    The Village has already collected cash deposits and letters of credit from Commonwealth in amounts as follows:

|  |  |
|---|---|
| Deposit for Berm | $ 30,000 |
| Letter of Credit | 105,400 |

The Village has spent a portion of the $105,400, leaving a balance of either $64,300 (according to Commonwealth) or $27,755.29 (according to the Village). Inasmuch as Commonwealth is one of the named parties in the $218,058 Judgment, Commonwealth wishes to apply the above deposit and remainder amount to partial satisfaction of the $218,058 Judgment on behalf of both itself and the Debtor.

11.    The Village has promised to pay the sum of $6,000 to Commonwealth in return for paving 53rd Street to a higher standard than is required by their code. Commonwealth wishes to apply this $6,000 to partial satisfaction of the $218,058 Judgment on behalf of both itself and the Debtor.

12.    The Village has repeatedly overcharged for building permit fees because of a previous Village employee's misapplication of the relevant provisions of the Western Springs Municipal Code. All such overcharges were paid under protest by Commonwealth at the time that building permits were issued to Commonwealth. Cumulatively, and without interest, these overcharges have amounted to a total of $102,088. Commonwealth wishes to apply a credit for these overcharges to partial satisfaction of the $218,058 Judgment on behalf of both itself and the Debtor.

**WHEREFORE,** based upon the foregoing, Movant prays that this court deny the secured portion of claim number 7 filed by the Village of Western Springs in its entirety, and grant an unsecured claim to the Village of Western Springs in the amount of $15,690 plus judgment interest to the

Petition Date only, and for any additional relief that this Court deems just and proper.

Respectfully Submitted:

Commonwealth Properties Company, LLC

By: _____

Kenneth E. Garstka
Attorney for Commonwealth Properties Company, LLC
314 N. Catherine
LaGrange Park, IL 60526
(708) 305-7271

# GROUP EXHIBIT A

Case: 1:16-cv-10499 Document #: 1 Filed: 11/10/16 Page 71 of 173 PageID #:71

Case 14-17886   Doc 254-1   Filed 04/11/16   Entered 04/11/16 11:31:04   Desc Exhibit
Case 14-17886   Claim 7-1   Filed 02/19/15   Desc Main Document   Page 1 of 2

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT Northern District of Illinois | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:<br>Gurrie Rhoads | Case Number:<br>14-17886 | **FILED** |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

**U.S. Bankruptcy Court<br>Northern District of Illinois**

Name of Creditor (the person or other entity to whom the debtor owes money or property):

Village of Western Springs

**2/19/2015**

**Jeffrey P. Allsteadt, Clerk**

**COURT USE ONLY**

Name and address where notices should be sent:

Village of Western Springs
740 Hillgrove Avenue
Western Springs, IL 60558-1409

Telephone number: 3129846400   email: mamilluzzi@ktjlaw.com

Mallory A Milluzzi
20 N. Wacker Drive Ste 1660
Chicago, IL 60606

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**
_____ *(If known)*
Filed on: _____

Name and address where payment should be sent (if different from above):

Telephone number:   email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $ 414927.40

If all or part of the claim is secured, complete item 4. If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Court Judgment, Services Rendered (See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor:<br>____ | 3a. Debtor may have scheduled account as:<br><br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br><br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)

Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☑ Real Estate   ☐ Motor Vehicle   ☑ Other

Describe: Recorded Memorandum of Judgment

Value of Property: $ 500000.00

Annual Interest Rate (when case was filed) 9 % ☑ Fixed or ☐ Variable

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$ 218058.30

Basis for perfection: _____

Amount of Secured Claim: $ 218058.30

Amount Unsecured: $ 196869.10

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

| ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). | ☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507(a)(4). | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507(a)(5). | Amount entitled to priority: |
|---|---|---|---|
| ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507(a)(7). | ☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507(a)(8). | ☐ Other – Specify applicable paragraph of 11 U.S.C. §507(a)(_). | $ _____ |

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

Case: 1:16-cv-10499 Document #: 1 Filed: 11/10/16 Page 72 of 173 PageID #:72

Case 14-17886   Doc 254-1   Filed 04/11/16   Entered 04/11/16 11:11:04   Desc Exhibit
Case 14-17886   Claim 7-1   Filed 02/19/15   Desc Main Document   Page 2 of 2

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. (*See instruction #7, and the definition of "redacted".*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8) Check the appropriate box.

☐ I am the creditor.   ☑ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Mallory A. Milluzzi
Title: Attorney for Village of Western Springs
Company: Klein, Thorpe & Jenkins, Ltd.
Address and telephone number (if different from notice address above):

_____   s/ Mallory A. Milluzzi   2/19/2015
_____   (Signature)   (Date)

Telephone number: .   email: .

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Case: 1:16-cv-10499 Document #: 1 Filed: 11/10/16 Page 73 of 173 PageID #:73

Case 14-17886   Doc 254   Filed 04/11/16   Entered 04/11/16 11:04   Desc Exhibit
Case 14-17886   Claim 7-1 Part 2   Filed 04/19/15   Desc Attachment 1   Page 1 of 22

MEMORANDUM OF JUDGMENT

IN THE CIRCUIT COURT OF
COOK COUNTY, ILLINOIS

HARTZ CONSTRUCTION CO.,
INC. and CHICAGO TITLE
LAND TRUST CO., as Trustee
under Trust No. 17472, dated June
10, 2003,

v.

VILLAGE OF WESTERN
SPRINGS; GURRIE RHOADS;
COMMONWEALTH
PROPERTIES COMPANY, LLC;
and RHOADS DEVELOPMENT
COMPANY



Doc#:  1404545105 Fee: $50.00
Karen A.Yarbrough
Cook County Recorder of Deeds
Date: 02/14/2014 03:13 PM  Pg.  1 of 7

Recorder's Stamp

No. _____06 CH 281_____

## MEMORANDUM OF JUDGMENT

On January 17, 2014, judgment was entered in this court in favor of the Defendant Village of Western Springs and against the Defendants Gurrie Rhoads, individually and Rhoads Development Company, a sole proprietorship, whose addresses are 4815 Creek Drive, Western Springs, Illinois 60558 and Commonwealth Properties Company, LLC, a limited liability corporation of 4831 Commonwealth Avenue, Western Springs, Illinois 60550 in the amount of $218,058.30. Judgment was also entered in favor of the Defendant Village of Western Springs in dedicating Outlot A, also known as Outlot D-3. (See Exhibit A, legal description attached). A copy of the January 17, 2014 order is attached as Exhibit B.

ENTERED
Judge Neil H. Cohen-2021

FEB 05 2014

Judge Neil H. Cohen Judge's No. 2021
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK_____

Atty. No.: 90446_____

Name: Michael T. Jurusik____

Atty. for: Village of Western Springs____

Address: 20 N. Wacker Drive, Suite 1606

City/State/Zip: Chicago, Illinois 60606_____

Telephone: (312) 984-6400

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

322039_1

Case: 1:16-cv-10499 Document #: 1 Filed: 11/10/16 Page 74 of 173 PageID #:74

Case 14-17886   Doc 254   Filed 04/11/16   Entered 04/11/16 31:04   Desc Exhibit
Case 14-17886   Claim 7-1 Part 2   Filed 25 of 25   Desc Attachment 1   Page 2 of 22

## EXHIBIT A

Legal Description:

AN EXTENSION OF THE 52ND STREET RIGHT OF WAY, LOT D-3 IN COMMONWEALTH IN THE VILLAGE UNIT 3, A RESIDENTIAL PLANNED UNIT DEVELOPMENT, BEING A RESUBDIVISION OF PART OF SECTION 7, TOWNSHIP 36 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN THE VILLAGE OF WESTERN SPRINGS, COOK COUNTY, ILLINOIS

P.I.N. 18-07-400-067-0000

4901 COMMONWEALTH AVE
WESTERN SPRINGS, IL 60558-0000

322039_1

Order                                                                    (2/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPT / CHANCERY DIVISION

HARTE CONSTRUCTION CO. INC. ET AL.
                    PLAINTIFFS

v.                                                    No. 06 CH 281

VILLAGE OF WESTERN SPRINGS ET AL.
                    DEFENDANTS

### ORDER

THIS CAUSE COMING TO BE HEARD ON DEFENDANT VILLAGE OF WESTERN
SPRINGS MOTION FOR JUDGMENT ON ATTORNEY'S FEES AND REDUCTION OF
OUTLOT A AND ~~PROPER NOTICE THERE OF~~ DUE NOTICE HAVING BEEN GIVEN TO ALL PARTIES, THIS
COURT BEING ADVISED IN THE PREMISES,

IT IS HEREBY ORDERED:

The Village's MOTION For JUDGMENT ON ATTORNEYS AND DE-ANNEXATION
OF OUTLOT A IS GRANTED;

The Judgment for ATTORNEY'S FEES & COURTS IS AWARDED
IN THE AMOUNT OF $ 218,055.30 IN FAVOR OF THE
VILLAGE OF WESTERN SPRINGS;

DEFENDANT PLAINTIFFS SHALL EXECUTE A DEED CONVEYING
FEE SIMPLE TITLE TO OUTLOT A TO THE VILLAGE WITHIN 30 DAYS
OF THE DATE OF THIS ORDER.

THIS IS A FINAL AND APPEALABLE ORDER.

ENTERED: THIS MATTER IS DISMISSED
by agreement of the parties.

Atty. No.: 90446

Name: MICHAEL JURUSIK
      KLEIN THORPE + JENKINS LTD

Atty. for: VILLAGE OF WESTERN SPRINGS

Address: 20 N. WACKER DR #1660

City/State/Zip: CHICAGO ILLINOIS 60606

Telephone: 312/984 6400

Dated: _____

ENTERED
Judge Neil H. Cohen-2021
JAN 17 2014
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY
DEPUTY CLERK

Judge _____

Judge's No.

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
Copy Distribution - White: 1. ORIGINAL - COURT FILE  Canary: 2. COPY  Pink: 3. COPY

Case: 1:16-cv-10499 Document #: 1 Filed: 11/10/16 Page 76 of 173 PageID #:76

Case 14-17886   Doc 254   Filed 04/11/16   Entered 04/11/16 14:31:04   Desc Exhibit
Case 14-17886   Claim 7-1 Part 2   Filed 07/19/15   Desc Attachment 1   Page 4 of 22

## EXHIBIT C

Legal Description:

PART OF PARCEL 1: UNIT NUMBER 5312 COMMONWEALTH AVENUE, IN
COMMONWEALTH IN THE VILLAGE-SOUTH, A CONDOMINIUM AS DELINEATED
ON THE SURVEY OF CERTAIN LOTS OR PARTS OF COMMONWEALTH IN THE
VILLAGE UNIT 4, A RESIDENTIAL PLANNED UNIT DEVELOPMENT, BEING A
RESUBDIVISION OF PART OF SECTION 7, TOWNSHIP 38 NORTH, RANGE 12,
EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

P.I.N. 18-07-418-059-1023

5312 COMMONWEALTH AVE.
WESTERN SPRINGS, IL 60558-0000

322039_1

Case: 1:16-cv-10499 Document #: 1 Filed: 11/10/16 Page 77 of 173 PageID #:77

Case 14-17886   Doc 254     Filed 04/11/16   Entered 04/11/16 14:31:04   Desc Exhibit
Case 14-17886   Claim 7-1 Part 2   Filed 02/18/15   Desc Attachment 1   Page 5 of 22

## EXHIBIT D

Legal Description:

PART OF PARCEL 1: UNIT NUMBER 5400 COMMONWEALTH AVENUE, IN COMMONWEALTH IN THE VILLAGE-SOUTH, A CONDOMINIUM AS DELINEATED ON THE SURVEY OF CERTAIN LOTS OR PARTS OF COMMONWEALTH IN THE VILLAGE UNIT 4, A RESIDENTIAL PLANNED UNIT DEVELOPMENT, BEING A RESUBDIVISION OF PART OF SECTION 7, TOWNSHIP 38 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

P.I.N. 18-07-418-059-1026

5400 COMMONWEALTH AVE.
WESTERN SPRINGS, IL 60558-0000

Case: 1:16-cv-10499 Document #: 1 Filed: 11/10/16 Page 78 of 173 PageID #:78

Case 14-17886   Doc 254   Filed 04/11/16   Entered 04/11/16 14:31:04   Desc Exhibit
Case 14-17886   Claim 7-1 Part 2   Filed 02.9.0.25   Desc Attachment 1   Page 6 of 22

## EXHIBIT E

Legal Description:

PART OF PARCEL 1: UNIT NUMBER 5410 COMMONWEALTH AVENUE, IN COMMONWEALTH IN THE VILLAGE-SOUTH, A CONDOMINIUM AS DELINEATED ON THE SURVEY OF CERTAIN LOTS OR PARTS OF COMMONWEALTH IN THE VILLAGE UNIT 4, A RESIDENTIAL PLANNED UNIT DEVELOPMENT, BEING A RESUBDIVISION OF PART OF SECTION 7, TOWNSHIP 38 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

P.I.N. 18-07-418-059-1020

5410 COMMONWEALTH AVE.
WESTERN SPRINGS, IL 60558-0000

322039_1

Case: 1:16-cv-10499 Document #: 1 Filed: 11/10/16 Page 79 of 173 PageID #:79

Case 14-17886    Doc 254    Filed 04/11/16    Entered 04/11/16 14:31:04    Desc Exhibit
Case 14-17886    Claim 7-1 Part 2    Filed 04/09/15    Desc Attachment 1    Page 7 of 22

EXHIBIT F

Legal Description:

(EXCEPT COMMONWEALTH IN THE VILLAGE-SOUTH CONDOMINIUM) AND
(EXCEPT COMMONWEALTH IN THE VILLAGE UNIT 4) AND (EXCEPT
COMMONWEALTH IN THE VILLAGE CONDOMINIUM) PARK IN BLOCKS 7, 8, 11,
12, 15 AND 16 IN FOREST HILLS COMMERCIAL PARK DISTRICT, A SUBDIVISION
OF BLOCKS 5 TO 8, 17 TO 20, 29 TO 32, AND 41 TO 44 IN FOREST HILLS OF
WESTERN SPRINGS , A SUBDIVISION OF THE EAST 1/2 OF THE NORTHEAST 1/4
OF SECTION 7, TOWNSHIP 38 NORTH, RANGE 12, EAST OF THE THIRD
PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

P.I.N. 18-07-200-054-0000

4829 COMMONWEALTH AVE.
WESTERN SPRINGS, IL 60558-0000

322039_1

Case: 1:16-cv-10499 Document #: 1 Filed: 11/10/16 Page 80 of 173 PageID #:80

Case 14-17886    Doc 254    Filed 04/11/16    Entered 04/11/16 14:31:04    Desc Exhibit
     Case 14-17886    Claim 7-1 Part 2    Filed 11/19/15    Desc Attachment 1    Page 8 of 22

INTEREST CALCULATIONS ON WESTERN SPRINGS JUDGMENT AMOUNT

| | 9% Annual Interest pursuant to 735 ILCS | |
|---|---|---|
| Judgment Amount | 5/2-1303 | Total |
| $218,058.30 | $19,625.25 | $237,683.55 |

Case: 1:16-cv-10499 Document #: 1 Filed: 11/10/16 Page 81 of 173 PageID #:81

Case 14-17886   Doc 34-1   Filed 04/11/16   Entered 04/11/16 14:31:04   Desc Exhibit
Case 14-17886   Claim 7-1 Part 2   Filed 12/29/15   Desc Attachment 1   Page 9 of 22

Commonwealth Court

| YEAR | EFF DATE | DEPOSITS | AMOUNT | VDR NAME/ITEM DESC | COMMENTS |
|---|---|---|---|---|---|
| 2008 | 12/31/2008 | | -$80.00 | COUNTY COURT REPORTER | RC 9/30/06 EXP/PSTD WRNG |
| 2008 | 12/31/2008 | | $136.17 | COUNTY COURT REPORTER | RC COUNTY COURT REPRTR 10 |
| 2008 | 12/31/2008 | | $201.00 | COUNTY COURT REPORTER | RC COUNTY COURT REPRTR 10 |
| 2007 | 11/21/2007 | | $222.99 | JAMES J BENES & ASSOCIATE | COMMONWEALTH SINGLE FAM |
| 2007 | 11/21/2007 | | $817.64 | JAMES J BENES & ASSOCIATE | COMMONWEALTH SINGLE FAM |
| 2007 | 2/28/2007 | -$2,822.07 | | RHOADS DEVELOPMENT | BALANCE SHEET REVENUE TO _ |
| 2006 | 12/8/2006 | | $386.00 | KLEIN THORPE AND JENKINS | LEGAL SERVICE RENDERED - |
| 2006 | 12/1/2006 | | $40.00 | KLEIN THORPE AND JENKINS | LEGAL SERVICES OCT |
| 2006 | 11/10/2006 | | $144.68 | JAMES J BENES & ASSOCIATE | COMMONWEALTH COURT |
| 2006 | 11/10/2006 | | $1,914.00 | KLEIN THORPE AND JENKINS | LEGAL SERVICES - JULY |
| 2006 | 11/3/2006 | | $975.00 | KLEIN THORPE AND JENKINS | LEGAL SERVICES RENDERED M |
| 2006 | 11/3/2006 | | $1,206.20 | KLEIN THORPE AND JENKINS | LEGAL SERVICES RENDERED A |
| 2006 | 9/1/2006 | | $1,521.80 | KLEIN THORPE AND JENKINS | LEGAL SERVICES JUNE 2006 |
| 2006 | 8/31/2006 | | $1,062.11 | JAMES J BENES & ASSOCIATE | TO RECLASS 5/19/05 - BENE |
| 2006 | 8/25/2006 | | $289.36 | JAMES J BENES & ASSOCIATE | CMNWLTH SINGLE FAMILY |
| 2006 | 6/16/2006 | | $512.00 | KLEIN THORPE AND JENKINS | LEGAL SVCS THRU 4/30/06 |
| 2006 | 5/5/2006 | | $1,209.00 | KLEIN THORPE AND JENKINS | 'LEGAL SERVICES THRU 2/28/_ |
| 2006 | 5/5/2006 | | $585.00 | KLEIN THORPE AND JENKINS | 'LEGAL SERVICES THRU 1/31/_ |
| 2006 | 5/5/2006 | | $156.00 | KLEIN THORPE AND JENKINS | 'LEGAL SERVICES THRU 3/31/_ |
| 2006 | 3/3/2006 | | $275.44 | JAMES J BENES & ASSOCIATE | COMMONWEALTH SINGLE FMLY _ |
| 2006 | 2/24/2006 | | $352.75 | COUNTY COURT REPORTERS IN | '2/2 RE: TMBR TRLS/CMNWLTH_ |
| 2005 | 2/10/2006 | | $380.25 | KLEIN THORPE AND JENKINS | LEGAL SERVICES-DEC 2005 _ |
| 2005 | 12/9/2005 | | $627.80 | KLEIN THORPE AND JENKINS | 'LEGAL SERVICES THRU 10/31_ |
| 2005 | 9/23/2005 | | $153.00 | COUNTY COURT REPORTERS IN | 'REPORT OF PROCEEDINGS 9/1_ |
| 2005 | 9/16/2005 | | $466.80 | SUBURBAN LIFE MEDIA | 'LEGAL NOTICE-RHOADS |
| 2005 | 8/23/2005 | -$5,000.00 | | RHOADS DEV COMPANY | 'BALANCE SHEET REVENUE TO _ |
| | | -$7,822.07 | $13,554.79 | | |
| | | | $5,732.72 | | |

## Commonwealth Medical Building

| YEAR | EFF DATE | AMOUNT | VDR NAME/ITEM DESC | COMMENTS | Adjust |
|---|---|---|---|---|---|
| 2008 | 12/31/2008 | -$9,279.52 | | RC 2/12/08 RHOADS PAYMENT | |
| 2010 | 12/31/2010 | $1,515.06 | JAMES J BENES & ASSOCIATE | CMNWLTH COMM MED BLDG | |
| 2010 | 12/31/2010 | $1,139.88 | JAMES J BENES & ASSOCIATE | CMNWLTH COMM MED BLDG | |
| 2009 | 4/24/2009 | $478.34 | JAMES J BENES & ASSOCIATE | CMNWLTH COMM MED BLDG | |
| 2009 | 3/27/2009 | $522.93 | JAMES J BENES & ASSOCIATE | CMNWLTH COMM MED BLDG | |
| 2008 | 2/6/2009 | $113.51 | JAMES J BENES & ASSOCIATE | CMNWLTH COMM MED BLDG | |
| 2008 | 12/19/2008 | $1,197.88 | JAMES J BENES & ASSOCIATE | CMNWLTH COMM MED BLDG | |
| 2008 | 7/25/2008 | $1,699.22 | JAMES J BENES & ASSOCIATE | CMNWLTH COMM MED BLDG | |
| 2008 | 6/27/2008 | $838.86 | JAMES J BENES & ASSOCIATE | CMNWLTH COMM MED BLDG | |
| 2008 | 5/23/2008 | $4,834.38 | JAMES J BENES & ASSOCIATE | CMNWLTH COMM MED BLDG | |
| 2008 | 4/25/2008 | $6,162.46 | JAMES J BENES & ASSOCIATE | CMNWLTH COMM MED BLDG | |
| 2008 | 3/21/2008 | $3,537.47 | JAMES J BENES & ASSOCIATE | CMNWLTH COMM MED BLDG | |
| 2007 | 12/14/2007 | $752.22 | JAMES J BENES & ASSOCIATE | CMNWLTH COMM MED BLDG | |
| 2007 | 11/21/2007 | $506.38 | JAMES J BENES & ASSOCIATE | COMMONWEALTH COMM MED BLD | |
| 2007 | 11/21/2007 | $75.22 | JAMES J BENES & ASSOCIATE | COMMONWEALTH COMM MED BLD | |
| 2007 | 11/21/2007 | $1,227.06 | JAMES J BENES & ASSOCIATE | COMMONWEALTH COMM MED BLD | |

$15,321.35

Case: 1:16-cv-10499 Document #: 1 Filed: 11/10/16 Page 83 of 173 PageID #:83

Case 14-17886   Doc 264-1   Filed 04/11/16   Entered 04/11/16 14:31:04   Desc Exhibit
Case 14-17886   Claim 7-1 Part 2   Filed 04/11/25   Desc Attachment 1   Page 11 of 22

47th and Commonwealth

| YEAR | PER | JOURNAL | EFF DATE | AMOUNT | WARRANT | VDR NAME/ITEM DESC | COMMENTS |
|------|-----|---------|----------|--------|---------|--------------------|----------|
| 2012 | '11 | '011006_ | 11/2/2012 | $90.00 | '110212V _ | KLEIN THORPE AND JENKINS | LGL SVCS THRU 9/30/12 |
| 2012 | '08 | '008121_ | 8/17/2012 | $112.50 | '081712V _ | KLEIN THORPE AND JENKINS | LGL SVCS THRU 6/30/12 |
| 2010 | '12 | '012302_ | 2/11/2011 | $105.00 | '021111YE_ | KLEIN THORPE AND JENKINS | LGL SVCS THRU 12/31/10 |
| 2010 | '10 | '010054_ | 10/8/2010 | $84.00 | '100810V _ | KLEIN THORPE AND JENKINS | LGL SVCS THRU 7/31/10 |
| 2010 | '08 | '008147_ | 8/20/2010 | $42.00 | '082010V _ | KLEIN THORPE AND JENKINS | LGL SVCS THRU 6/30/10 |
| 2010 | '07 | '007002_ | 7/2/2010 | $817.60 | '070210V _ | KLEIN THORPE AND JENKINS | LGL SVCS THRU 5/31/10 |
| 2009 | '06 | '006191_ | 6/26/2009 | $525.00 | '062609V _ | KLEIN THORPE AND JENKINS | LEGAL SVCS THRU 5/31/09 |
| 2009 | '06 | '006191_ | 6/26/2009 | $42.00 | '062609V _ | KLEIN THORPE AND JENKINS | LGL SVCS THRU 4/30/09 |
| 2009 | '03 | '003210_ | 3/27/2009 | $924.00 | '032709V _ | KLEIN THORPE AND JENKINS | LGL SVCS THRU 1/31/09 |
| 2008 | '13 | '013088_ | 12/31/2008 | $708.07 | | JAMES J BENES & ASSOCIATE | RC BENES 3/31/06 BILL |
| 2008 | '12 | '012001_ | 12/1/2008 | -$926.80 | | | RC 5000 WOLF PURCH-LEGAL |
| 2008 | '09 | '009123_ | 9/19/2008 | $178.20 | '091908V _ | KLEIN THORPE AND JENKINS | LEGAL SVCS - JULY |
| 2008 | '09 | '009123_ | 9/19/2008 | $42.00 | '091908V _ | KLEIN THORPE AND JENKINS | LEGAL SVCS - JULY |
| 2008 | '08 | '008213_ | 8/29/2008 | $652.00 | '082908V _ | KLEIN THORPE AND JENKINS | LEGAL SVCS - JUNE |
| 2008 | '08 | '008144_ | 8/22/2008 | $154.47 | '082208V _ | JAMES J BENES & ASSOCIATE | 47TH & CMNWLTH COMM INSP |
| 2008 | '05 | '005182_ | 5/23/2008 | $42.00 | '052308V _ | KLEIN THORPE AND JENKINS | LEGAL SVCS - MARCH |
| 2008 | '04 | '004013_ | 4/4/2008 | $60.60 | '040408V _ | KLEIN THORPE AND JENKINS | LEGAL SVCS - FEB 2008 |
| 2008 | '03 | '003194_ | 3/21/2008 | $36.00 | '032108V _ | KLEIN THORPE AND JENKINS | LEGAL SVCS - JAN 2008 |
| 2008 | '03 | '003194_ | 3/21/2008 | $42.00 | '032108V _ | KLEIN THORPE AND JENKINS | LEGAL SVCS - JAN 2008 |
| 2007 | '13 | '013011_ | 12/31/2007 | $136.00 | | KLEIN THORPE AND JENKINS | TO RCLS KT&J 1/17/06 |
| 2007 | '13 | '013011_ | 12/31/2007 | $644.90 | | KLEIN THORPE AND JENKINS | TO RCLS KT&J 7/24/06 |
| 2007 | '13 | '013011_ | 12/31/2007 | $1,980.55 | | KLEIN THORPE AND JENKINS | TO RCLS KT&J 3/22/06 |
| 2007 | '13 | '013011_ | 12/31/2007 | $214.50 | | KLEIN THORPE AND JENKINS | TO RCLS KT&J 6/24/04 |
| 2007 | '13 | '013011_ | 12/31/2007 | $280.00 | | KLEIN THORPE AND JENKINS | TO RCLS KT&J 10/31/06 |
| 2007 | '12 | '012241_ | 2/15/2008 | $40.00 | '021508YE_ | KLEIN THORPE AND JENKINS | LEGAL SERVICES - DEC 2007 |
| 2007 | '12 | '012183_ | 12/28/2007 | $260.00 | '122807V _ | KLEIN THORPE AND JENKINS | LEGAL SERVICES - NOV 2007 |
| 2007 | '12 | '012183_ | 12/28/2007 | $225.30 | '122807V _ | KLEIN THORPE AND JENKINS | LEGAL SERVICES - NOV 2007 |
| 2007 | '12 | '012021_ | 12/7/2007 | $802.40 | '120707 _ | KLEIN THORPE AND JENKINS | LEGAL SERVICES - OCT 2007 |

| Year | | Account | Date | Amount | Check | | Payee | | Description |
|---|---|---|---|---|---|---|---|---|---|
| 2007 | '11 | '011137_ | 11/21/2007 | $181.01 | '112107V | — | JAMES J BENES & ASSOCIATE | — | 47TH & COMMONWEALTH |
| 2007 | '11 | '011137_ | 11/21/2007 | $722.07 | '112107V | — | JAMES J BENES & ASSOCIATE | — | 47TH & COMMONWEALTH |
| 2007 | '11 | '011078_ | 11/16/2007 | $140.00 | '111607V | — | KLEIN THORPE AND JENKINS | — | LEGAL SERVICES - AUG 2007 |
| 2007 | '11 | '011078_ | 11/16/2007 | $100.00 | '111607V | — | KLEIN THORPE AND JENKINS | — | LEGAL SERVICES - SEPT 200 |
| 2007 | '09 | '009014_ | 9/7/2007 | $40.00 | '090707V | — | KLEIN THORPE AND JENKINS | — | LEGAL SERVICE - JULY 2007 |
| 2007 | '09 | '009014_ | 9/7/2007 | $200.00 | '090707V | — | KLEIN THORPE AND JENKINS | — | LEGAL SERVICE - JULY 2007 |
| 2007 | '04 | '004284_ | 4/27/2007 | $480.00 | '042707V | — | KLEIN THORPE AND JENKINS | — | LEGAL SERVICES - FEB 2007 |
| 2007 | '04 | '004284_ | 4/27/2007 | $41.20 | '042707V | — | KLEIN THORPE AND JENKINS | — | LEGAL SERVICES - FEB 2007 |
| 2007 | '03 | '003155_ | 3/16/2007 | $440.20 | '031607V | — | KLEIN THORPE AND JENKINS | — | LEGAL SERVICES - JAN 2007 |
| 2006 | '13 | '130011_ | 12/31/2006 | $286.30 | | | JAMES J BENES & ASSOCIATE | | TO RCLS BENES BILL 3/4/04 |
| 2006 | '13 | '130011_ | 12/31/2006 | $1,174.65 | | | KLEIN THORPE AND JENKINS | | TO RCLS KLEIN THORPE 12/2 |
| 2006 | '13 | '130010_ | 12/31/2006 | $160.00 | | | | | RCLS JAN 2006 EXPENDITURE |
| 2006 | '12 | '120180_ | 2/2/2007 | $120.00 | '020207YE_ | | KLEIN THORPE AND JENKINS | | LEGAL SERVICES - DEC 2006 |
| 2006 | '12 | '120003_ | 12/1/2006 | $100.00 | '120106V | — | KLEIN THORPE AND JENKINS | | LEGAL SERVICES OCT |
| 2006 | '11 | '110090_ | 11/10/2006 | $20.00 | '111006V | — | KLEIN THORPE AND JENKINS | | LEGAL SERVICES - JULY |
| 2006 | '11 | '110003_ | 11/3/2006 | $140.00 | '110306V | — | KLEIN THORPE AND JENKINS | | LEGAL SERVICES RENDERED A |

$12,659.72

Case: 1:16-cv-10499 Document #: 1 Filed: 11/10/16 Page 84 of 173 PageID #:84

Case 14-17886   Doc 34-1   Filed 04/11/16   Entered 04/11/16 14:31:04   Desc Exhibit
Case 14-17886   Claim 7-1 Part 2   Filed 15 of 25   Desc Attachment 1   Page 12 of 22

Case: 1:16-cv-10499 Document #: 1 Filed: 11/10/16 Page 85 of 173 PageID #:85

Case 14-17886   Doc 34-1   Filed 04/11/16   Entered 04/11/16 14:31:04   Desc Exhibit
1  Case 14-17886   Claim 7-1 Part 2   Filed 10/05/25  Desc Attachment 1   Page 13 of 22



**VILLAGE** *of* **WESTERN SPRINGS**

740 HILLGROVE AVENUE | WESTERN SPRINGS, IL 60558-0528 | www.wsprings.com

April 10, 2009                                    Via U.S. and e-mail

PRESIDENT
John J. Lynch

TRUSTEES
Roger Hendrick
John Madell
William Rodeghier
Marcia Buell
Janet Dahl
James Maragos

CLERK
Jeanine Jasica

MANAGER
Patrick R. Higgins

DIRECTORS
Tracy Alden
Grace Turi
Pat Schramm
William Nelson
Ingrid Velkme
Martin Scott
Pamela Church
Anthony Bednarz

Mr. Gurrie Rhoads
4815 Creek Drive
Western Springs, IL 60558

Re:     Commonwealth Court Subdivision

Dear Gurrie:

As you and I have discussed in the past, the accounting for project review of Commonwealth Court needed to be revisited. This letter will clarify the status of the account.

The current balance due for past consultant reviews and other fees is $6,252.72. Attached you will find the related invoices. Although there has been no recent activity regarding this project, future reviews will require consultant and staff reviews prior to approval. Thus, a deposit of $5,000 is required for future costs.

In total, the amount due to the Village at this time is listed below:

| | |
|---|---|
| Balance due for review fees | $6,252.72 |
| Village administrative fee | $ 625.27 |
| Deposit for future review and admin. fee | $5,000.00 |
| Total | $11,877.99 |

If you have any questions or concerns, please feel free to contact me at 246-1800, extension 175.

Sincerely,

Martin Scott
Director of Community Development

Attachment

POLICE  Tel 708.246.8540  Fax 708.246.3609 | FIRE  Tel 708.246.1182  Code Fax 708.246.4871

VILLAGE SERVICES  Tel 708.246.1800  Fax 708.246.0284 | RECREATION  Tel 708.246.9070  Fax 708.246.1309

Case: 1:16-cv-10499 Document #: 1 Filed: 11/10/16 Page 86 of 173 PageID #:86

Case 14-17886    Doc 34-1    Filed 04/11/16    Entered 04/11/16 14:31:04    Desc Exhibit
Case 14-17886    Claim 7-1 Part 2    Filed 02/19/15    Page 17 of 25 Desc Attachment 1    Page 14 of 22

January 7, 2009                                    Hand-Delivered

Mr. Gurrie Rhoads
4815 Creek Drive
Western Springs, IL 60558

Re:    Commonwealth "Medical Building" and "47th/Commonwealth" accounts

Dear Gurrie:

Attached please find the account balances for the Commonwealth Commercial
Development. The fees due are contained within the two accounts referenced above and
relate to legal and engineering reviews conducted in 2007 and 2008.

As I have mentioned in the past, if you would like to discuss individual charges I would
gladly meet with you. Please feel free to contact me at (708) 246-1800, extension 175.

Sincerely,



Martin Scott
Director of Community Development


Enclosures (4)

Case: 1:16-cv-10499 Document #: 1 Filed: 11/10/16 Page 87 of 173 PageID #:87

Case 14-17886    Doc 34-1    Filed 04/11/16    Entered 04/11/16 14:31:04    Desc Exhibit
Case 14-17886    Claim 7-1 Part 2    Filed 18/05/25    Desc Attachment 1    Page 15 of 22



# VILLAGE *of* WESTERN SPRINGS

740 HILLGROVE AVENUE | WESTERN SPRINGS, IL 60558-0528 | www.wsprings.com

February 5, 2008

PRESIDENT
John J. Lynch

TRUSTEES
Roger Hendrick
John Madell
William Rodeghier
Marcia Buell
Janet Dahl
James Maragos

CLERK
Jeanine Jasica

MANAGER
Patrick R. Higgins

DIRECTORS
Tracy Alden
Grace Turi
Pat Schramm
William Nelson
Ingrid Velkme
Martin Scott
Pamela Church
Anthony Bednarz

Mr. Gurrie Rhoads
4815 Creek Drive
Western Springs, IL 60558

Re:    Commonwealth Commercial – Invoices and Deposit Account

Dear Gurrie:

As we discussed last week, fees are due for the Commonwealth Commercial project. The current balance includes the following charges:

| | |
|---|---|
| James J. Benes & Associates (engineering review) | $506.38 |
| James J. Benes & Associates (engineering review) | $75.22 |
| James J. Benes & Associates (engineering review) | $1,227.06 |
| Don Morris Architects (architectural plan review) | $3,900.00 |
| Village administrative fee | $570.86 |
| Total | $6,279.52 |

The invoices for each charge are attached. Since additional consultant and staff reviews will occur, you are required to provide a deposit to cover the costs. A $3,000.00 deposit will be required. In total, amount due to the Village at this time is $9,279.52

If you have any questions or concerns, please feel free to contact me at 246-1800, extension 175.

Sincerely,

Martin Scott
Director of Community Development

Attachments (4)

POLICE Tel 708.246.8540 Fax 708.246.3609 | FIRE Tel 708.246.1182 Code Fax 708.246.4871

VILLAGE SERVICES Tel 708.246.1800 Fax 708.246.0284 | RECREATION Tel 708.246.9070 Fax 708.246.1309

Case: 1:16-cv-10499 Document #: 1 Filed: 11/10/16 Page 88 of 173 PageID #:88

Case 14-17886    Doc 34-1    Filed 04/11/16    Entered 04/11/16 14:31:04    Desc Exhibit
Case 14-17886    Claim 7-1 Part 2    Filed 10/06/25    Desc Attachment 1    Page 16 of 22

VILLAGE *of* WESTERN SPRINGS

740 HILLGROVE AVENUE | WESTERN SPRINGS, IL 60558-0528 | www.wsprings.com

PRESIDENT
John J. Lynch

TRUSTEES
Roger Hendrick
John Madell
William Rodegher
Marcia Buell
Janet Dahl
James Maragos

CLERK
Jeanine Jasica

MANAGER
Patrick R. Higgins

DIRECTORS
Tracy Alden
Grace Turi
Pat Schramm
William Nelson
Ingrid Velkme
Martin Scott
Pamela Church
Anthony Bednarz

March 17, 2009                                    Via U.S. and e-mail

Mr. Gurrie Rhoads
4815 Creek Drive
Western Springs, IL 60558

Re:    Commonwealth Commercial/Medical Office Property

Dear Gurrie:

As discussed during the recent Planning and Zoning Committee meeting, I am writing regarding possible changes to the Commonwealth Commercial property. You mentioned that several possibilities exist for reusing the existing Vaughn's building for a medical office use.

At a minimum, revisions to the approved plans, ordinances, and other relevant documents will need to be reviewed by Village Staff, Planning/Zoning Committee, Plan Commission, and Village Board. All aspects of the redesign would likely need to be reviewed including, but not limited to, building modifications, site engineering, stormwater calculations, landscaping, and project schedule. A conceptual sketch of any proposed building and/or site modifications would allow Staff to provide more direction for you or other applicants.

Aside from the issues listed above, other matters must be addressed before any further reviews of the project are conducted. As noted in recent correspondence and conversations, the letter of credit must be renewed and outstanding review fees must be paid in full. Following our recent conversation, the (February 2008) payment of $9,279.52 was credited to the account. The accounts were consolidated and the new balance due is $20,944.66. Attached you will find the related invoices.

Since review of the project is still active and additional consultant and staff reviews will be necessary, you are required to provide a deposit for future costs. A $5,000 deposit will be required.

Case: 1:16-cv-10499 Document #: 1 Filed: 11/10/16 Page 89 of 173 PageID #:89

Case 14-17886   Doc 84-1   Filed 04/11/16   Entered 04/11/16 14:31:04   Desc Exhibit
Case 14-17886   Claim 7-1 Part 2   Filed 02/20/15   Desc Attachment 1   Page 17 of 22

In total, the amount due to the Village at this time is listed below:

| Reimbursement for review fees | $20,944.66 |
| Village administrative fee | $2,094.46 |
| Deposit for future review and admin. fee | $5,500.00 |
| Total | $28,539.12 |

If you have any questions or concerns, please feel free to contact me at 246-1800, extension 175.

Sincerely,

Martin Scott
Director of Community Development

Attachment

Case 14-17886   Claim 7-1 Part 2   Filed 02/19/15   Desc Attachment 1   Page 18 of 22

# Commonwealth Building Permit and Tap On History

| Lot | #Units | Permit Fee | Total tap on fees paid | | | tap on fees required per code at time of permit iss | | | Approved or Issued date |
|---|---|---|---|---|---|---|---|---|---|
| | | | Sewer | Water* | Total tap-ons paid per building | Required water tap fee | Required sewer tap fee | Total "Required" tap-ons per building | |
| Bldg 1 | A total of 39 units were | | 200 | 200 | 400 | 200 | 200 | 400 | |
| Bldg 2 | built amongst buildings | | 200 | 200 | 400 | 200 | 200 | 400 | |
| Bldg 3 | 1 through 12 | | 200 | 200 | 400 | 200 | 200 | 400 | |
| Bldg 4 | | | 200 | 200 | 400 | 200 | 200 | 400 | |
| Bldg 5 | | | 200 | 200 | 400 | 200 | 200 | 400 | |
| Bldg 6 | | | 200 | 200 | 400 | 200 | 200 | 400 | |
| Bldg 7 | | | 200 | 200 | 400 | 200 | 200 | 400 | |
| Bldg 8 | | | 200 | 200 | 400 | 200 | 200 | 400 | |
| Bldg 9 | | | 200 | 200 | 400 | 200 | 200 | 400 | |
| Bldg 10 | | | 200 | 200 | 400 | 200 | 200 | 400 | |
| Bldg 11 | | | 200 | 200 | 400 | 200 | 200 | 400 | |
| Bldg 12 | | | 200 | | | 200 | 200 | 400 | |
| Bldg 13 | 4 Unit | 3,572 | 1,000 | | | 200 | 200 | 400 | 7/6/1998 |
| Bldg 14 | 4 Unit | 5,370 | 1,000 | | | 200 | 200 | 400 | 9/30/1997 |
| Bldg 15 | 4 Unit | | 500 | | | 800 | 800 | 1,600 | No records |
| Bldg 16 | 5 unit | 6,363 | 500 | 500 | 1000 | 1,000 | 1,000 | 2,000 | No records |
| Bldg 17 | 5 Unit | 3,895 | 1,000 | | 1000 | 1,000 | 1,000 | 2,000 | 7/22/1999 |
| Bldg 18 | 4 Unit | 3,572 | 500 | 500 | 1000 | 800 | 800 | 1,600 | 1/23/1998 |
| Bldg 19 | 5 Unit | 3,895 | 4,000 | 4,000 | 8,000 | 4,000 | 4,000 | 8,000 | 12/17/1999 |
| Bldg 20 | 4 unit | 3,700 | 4,000 | 4,000 | 8000 | 4,000 | 4,000 | 8,000 | 12/17/1999 |
| Bldg 21 | 2 Unit | 1,850 | 1,000 | 1,000 | 2000 | 2,000 | 2,000 | 4,000 | 12/17/1999 |
| Bldg 22 | 2 Unit | 1,850 | 1,000 | 1,000 | 2000 | 2,000 | 2,000 | 4,000 | 12/17/1999 |
| Bldg 23 | 4 Unit | Unknown | 1,000 | 1,000 | 2000 | 4,000 | 4,000 | 8,000 | 1/30/2004 |
| Bldg 24 | 4 Unit | 3,570 | 1,000 | 1,000 | 2000 | 4,000 | 4,000 | 8,000 | 1/30/1999 |

Case 14-17886    Claim 7-1 Part 2    Filed 02/19/15    Desc Attachment 1    Page 19 of 22

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Bldg 25 | 4 Unit | 10.913 | 1.000 | 2000 | 1.000 | 4.000 | 4.000 | 8.000 | 9/27/2001 |
| Bldg 26 | 5 Unit | 12.917 | 1.000 | 2000 | 1.000 | 5.000 | 5.000 | 10.000 | 9/27/2001 |
| Bldg 27 | 5 Unit | | 1.000 | 2000 | 1.000 | 5.000 | 5.000 | 10.000 | |
| Bldg 28 | 4 Unit | 2,400.00 | 1.000 | 2000 | 1.000 | 4.000 | 4.000 | 8.000 | 7/29/2003 |
| Bldg 29** | 5 Unit | Unknown | 1.000 | 2000 | 1.000 | 5.000 | 5.000 | 10.000 | 1/30/2003 |
| Bldg 30 | 4 Unit | 2,400.00 | 1.000 | 2000 | 1.000 | 4.000 | 4.000 | 8.000 | 11/14/2003 |
| Bldg 31 | 4 Unit | 2,400.00 | 1.000 | 2000 | 1.000 | 4.000 | 4.000 | 8.000 | 11/14/2003 |
| Bldg 32 | 2 Unit | 16,147.15 | 1.000 | 2000 | 1.000 | 2.000 | 2.000 | 4.000 | 5/20/2005 |
| Bldg 33 | 2 Unit | 10,225.73 | 1.000 | 2000 | 1.000 | 2.000 | 2.000 | 4.000 | 6/21/2005 |
| Bldg 34 | 3 Unit | 9,064.24 | 1.000 | 2000 | 1.000 | 3.000 | 3.000 | 6.000 | 6/29/2005 |
| Bldg 35 | 4 Unit | 11,115.00 | 1.000 | 2000 | 1.000 | 4.000 | 4.000 | 8.000 | 7/13/2005 |

**Totals**

| | |
|---|---|
| Total paid for all sewer and water tap ons | $53,800.00 |
| Total required amount to be paid | $136,800.00 |
| Total amount due the village for underpaying tap on fees | **$83,000.00** |

* - Nearly all records indicate that sewer and water taps were paid per building such that regardless of the number of units only one tap on was paid.
** - The building 29 file contains a note that the value was calculated as 5 x $200,000 per unit. Per file notes Gurrie objects in letter dated 10/12/01.

Phase 1 = Buildings 1 to 12
Phase 2 = Buildings 13 to 19
Phase 3 = Buildings 20 to 35
Not verified for complete accuracy

## Commonwealth Phase II A and III Escrow

| Date | | Transaction | Amounts | | Balance |
|---|---|---|---|---|---|
| 6/19/1996 to 7/3/1996 | 12/31/1996 | Initial Deposit<br>James J. Benes* | $30,000.00 | ($9,616.10)<br>($400.00) | |
| 1/1/1997 to | 12/31/1997<br>12/31/1997 | Village of Western Springs<br>James J. Benes*<br>Transfer to Escrow | $3,449.16 | ($8,704.89)<br>($6,624.88) | |
| 1/1/1998 to<br>1/1/1999 to | 12/31/1998<br>6/9/1999 | James J. Benes*<br>James J. Benes*<br>**Balance at 6/9/99** | | ($6,331.09)<br>**($31,676.96)** | **$1,772.20** |
| 7/5/1999 to | 6/28/1999<br>12/31/1999 | Commonwealth Addition<br>James J. Benes<br>**Balance at 12/31/99** | $32,465.76<br>**$65,914.92** | ($24,773.47)<br>**($56,450.43)** | **$9,464.49** |
| 1/1/2000 to | 5/19/2000<br>5/19/2000<br>9/15/2000<br>10/20/2000<br>12/31/2000 | Don Morris<br>Hawes Engineering<br>Hawes Engineering<br>Don Morris Architect<br>James J. Benes<br>**Balance at 12/31/00** | **$65,914.92** | ($3,480.00)<br>($881.96)<br>($1,144.50)<br>($155.00)<br>($5,817.66)<br>**($68,929.55)** | **($3,014.63)** |
| | 6/29/2001<br>8/8/2001<br>9/28/2001<br>10/19/2001<br>10/25/2001<br>11/28/2001<br>2/4/2002<br>3/14/2002<br>3/27/2002<br>7/11/2002<br>7/18/2002 | James J. Benes<br>James J. Benes<br>James J. Benes<br>Cook County Recorder<br>James J. Benes<br>James J. Benes<br>James J. Benes<br>James J. Benes<br>James J. Benes<br>Klein, Thorpe and Jenkins<br>Deposit | $5,656.43<br>**$71,571.35** | ($1,324.02)<br>($839.30)<br>($249.42)<br>($547.00)<br>($399.28)<br>($854.27)<br>($617.32)<br>($468.91)<br>($293.08)<br>($385.00)<br>**($74,817.15)** | **($3,245.80)** |
| | 4/25/2003<br>5/29/2003 | James J. Benes<br>James J. Benes | **$71,571.35** | ($281.24)<br>($448.68)<br>**($75,547.07)** | **($3,975.72)** |
| | 4/1/2004<br>6/23/2004<br>7/27/2004<br>8/11/2004<br>9/15/2004<br>9/15/2004<br>11/12/2004<br>11/12/2004<br>1/27/2005 | James J. Benes<br>James J. Benes<br>James J. Benes<br>James J. Benes<br>James J. Benes<br><br>James J. Benes<br>James J. Benes<br>James J. Benes | $3,000.00 | ($201.63)<br>($268.84)<br>($205.59)<br>($1,143.88)<br>($521.80)<br><br>($717.47)<br>($130.44)<br>($391.34) | |

| Date | Name | Amount | Description |
|---|---|---|---|
| 1/27/2005 | James J. Benes | ($161.14) | |
| 1/27/2005 | James J. Benes | ($652.25) | |
| 1/27/2005 | James J. Benes | ($160.35) | |
| 1/27/2005 | James J. Benes | ($326.13) | |
| 6/3/2005 | James J. Benes | ($1,209.27) | |
| Copies provided up to this point | | ($82,137.20) → ($7,565.85) | |
| | | $74,571.35 | |
| 7/29/2005 | Klein Thorpe | ($97.50) | |
| 8/19/2005 | James J. Benes | ($482.00) | |
| 8/19/2005 | James J. Benes | ($760.04) | |
| 8/19/2005 | James J. Benes | ($327.40) | |
| 8/26/2005 | Klein Thorpe | ($214.50) | |
| 1/14/2005 | Klein Thorpe | ($546.00) | |
| 11/23/2005 | James J. Benes | ($895.15) | |
| 11/23/2005 | James J. Benes | ($2,272.31) | |
| 11/23/2005 | James J. Benes | ($50.34) | |
| 1/6/2006 | Urban Forest Management | ($105.00) | |
| 1/13/2006 | Urban Forest Management | ($210.00) | |
| 2/10/2006 | Klein Thorpe | ($566.50) | |
| 3/10/2006 | James J. Benes | ($354.04) | |
| 5/5/2006 | Klein Thorpe | ($234.00) | |
| 5/5/2006 | Klein Thorpe | ($214.50) | |
| 5/5/2006 | Klein Thorpe | ($980.00) | |
| 5/5/2006 | Klein Thorpe | ($214.50) | |
| 6/16/2006 | Klein Thorpe | ($358.20) | |
| | | ($16,547.83) | |
| | | $74,571.35 | |
| 5/19/2006 | James J. Benes | ($212.42) | CMMWLTH RECAPT |
| 5/19/2006 | James J. Benes | ($212.42) | CMMWLTH RECAPT |
| 5/19/2006 | James J. Benes | ($354.04) | CMMWLTH HOA-BASIN |
| 9/1/2006 | Klein Thorpe | ($193.90) | LEGAL SERVICES JUNE 2006 |
| 10/6/2006 | County Cour Reporter | ($213.75) | 4636 GLBRT/HARTZ/RHOADS |
| 10/6/2006 | County Court Reporter | ($335.92) | 4636 GLBRT/HARTZ/RHOADS |
| 10/8/2006 | County Court Reporter | ($380.00) | RHOADS/CMNWLTH |
| 11/3/2006 | Klein Thorpe | ($414.80) | LEGAL SERVICES RENDERED AUG |
| 11/10/2006 | James J. Benes | ($723.40) | COMMONWEALTH AVE PHASE 3 |
| 11/10/2006 | Klein Thorpe | ($617.60) | LEGAL SERVICES - JULY |
| 11/17/2006 | James J. Benes | ($940.41) | COMMONWEALTH AVE PHASE 3 |
| 12/7/2006 | James J. Benes | ($1,833.04) | COMMONWEALTH AVE |
| 12/7/2006 | Klein Thorpe | ($605.50) | LEGAL SERVICES OCT |
| 12/8/2006 | Klein Thorpe | ($1,256.20) | LEGAL SERVICE RENDERED |
| 12/31/2006 | Klein Thorpe | ($1,047.26) | RCLS BENES BILL TO CORR A |
| 3/2/2007 | James J. Benes | ($223.00) | COMMONWEALTH PHASE 3 |
| 3/16/2007 | Klein Thorpe | ($401.48) | LEGAL SERVICES - JAN 2007 |
| 4/27/2007 | James J. Benes | ($297.32) | CMWLTH PHASE 3 |
| 4/27/2007 | Klein Thorpe | ($662.80) | LEGAL SERVICES - FEB 2007 |
| 5/18/2007 | James J. Benes | ($817.64) | COMMONWEAL TH PHASE 3 |
| 6/15/2007 | Klein Thorpe | ($180.00) | LEGAL SERVICES - APR 2007 |
| 8/10/2007 | Klein Thorpe | ($80.00) | LEGAL SERVICES - JUNE 2007 |
| 9/7/2007 | Klein Thorpe | ($609.82) | LEGAL SERVICE - JULY 2007 |
| 10/19/2007 | James J. Benes | ($1,142.44) | COMMONWEALTH AVE-PHASE 3 |
| 11/16/2007 | Klein Thorpe | ($240.00) | LEGAL SERVICES - AUG 2007 |
| 11/16/2007 | Klein Thorpe | ($660.00) | LEGAL SERVICES - SEPT 2007 |
| | | ($91,119.18) | |
| | | $74,571.35 | |

Commonwealth Escrow

| Date | Name | Amount | Description |
|---|---|---|---|
| 11/21/2007 | James J. Benes | ($216.27) | COMMONWEALTH PHASE 3 BLD |
| 11/21/2007 | James J. Benes | ($7,192.33) | COMMONWEALTH AVE-PHASE 3 |
| 11/30/2007 | James J. Benes | ($216.27) | 5209-5217 CMNWLTH-PHASE II |
| 11/30/2007 | James J. Benes | ($216.27) | 5201-5207 CREEK-PHASE II |
| 11/30/2007 | James J. Benes | ($144.68) | 5201-5207 CREEK-PHASE II |
| 12/7/2007 | Klein Thorpe | ($340.00) | LEGAL SERVICES - OCT 2007 |
| 12/14/2007 | James J. Benes | ($54.07) | 5201 5207 CREEK DR |
| 12/14/2007 | James J. Benes | ($54.07) | 5209-5217 COMMONWEALTH |
| 12/14/2007 | James J. Benes | ($54.07) | CMNWLTH PHASE 3 BLDG 27 |
| 12/14/2007 | James J. Benes | ($150.44) | CMNWLTH AVE PHASE 3 |
| 12/28/2007 | Klein Thorpe | ($40.00) | LEGAL SERVICES - NOV 2007 |
| 12/31/2007 | Klein Thorpe | ($87.50) | KTJ CK#72059 12/4/03 |
| 12/31/2007 | James J. Benes | ($193.72) | BENES CK#72370 10/29 |
| 12/31/2007 | James J. Benes | ($358.42) | BENES CK#70351 5/29/___ |
| 12/31/2007 | James J. Benes | ($384.58) | BENES CK#69905 4/25/___ |
| 12/31/2007 | James J. Benes | ($192.30) | BENES CK#68993 2/19/___ |
| 12/31/2007 | Klein Thorpe | ($214.50) | LEGAL BILL 2004 CK#77214 |
| 12/31/2007 | Klein Thorpe | ($741.00) | LEGAL BILL 2004 CK#77214 |
| 12/31/2007 | Klein Thorpe | ($604.50) | LEGAL BILL 2004 CK#77214 |
| 12/31/2007 | Klein Thorpe | ($975.00) | LEGAL BILL SEPT 2004 CK#77639 |
| 12/31/2007 | Klein Thorpe | ($39.00) | LEGAL BILL NOV 2004 CK#78617 |
| 12/31/2007 | Klein Thorpe | ($181.53) | LEGAL BILL OCT 2004 CK#78016 |
| 2/15/2008 | Klein Thorpe | ($90.00) | LEGAL SERVICES - DEC 2007 |
| 2/15/2008 | James J. Benes | ($3,097.22) | COMMONWEALTH AVE-PHASE 3 |
| 2/15/2008 | Urban Forest Management | ($1,147.50) | COMMONWEALTH AVE THRU 11/ |
| 3/21/2008 | Klein Thorpe | ($247.00) | LEGAL SVCS - JAN 2008 |
| 4/25/2008 | James J. Benes | ($231.71) | CMNWLTH AVE PHASE 3 INSPE |
| 5/23/2008 | Klein Thorpe | ($866.80) | LEGAL SVCS - MARCH 2008 |
| 5/23/2008 | James J. Benes | ($308.95) | CMNWLTH AVE - PHASE 3 |
| 6/27/2008 | James J. Benes | ($1,251.24) | CMNWLTH AVE PHASE 3 |
| 6/27/2008 | James J. Benes | ($1,071.80) | LEGAL SVCS - APRIL  2008 |
| 7/3/2008 | Klein Thorpe | ($42.00) | LEGAL SVCS - MAY  2008 |
| 8/22/2008 | James J. Benes | ($525.21) | CMNWLTH AVE PHASE 3 |
| 8/29/2008 | Klein Thorpe | ($105.00) | LEGAL SVCS - JUNE 2008 |
| 9/19/2008 | Klein Thorpe | ($231.00) | LEGAL SVCS - JULY  2008 |
| 10/3/2008 | James J. Benes | ($388.48) | CMNWLTH AVE PHASE 3 INSP |
| 10/17/2008 | Klein Thorpe | ($63.00) | LEGAL SVCS - AUGUST 2008 |
| 10/31/2008 | James J. Benes | ($543.88) | CMNWLTH AVE-PHASE 3 |
| 10/31/2008 | Klein Thorpe | ($903.00) | LEGAL SVCS - SEPTEMBER 2008 |
| 11/14/2008 | James J. Benes | ($170.26) | CMNWLTH PHASE 3 INSP |
| 12/5/2008 | Klein Thorpe | ($664.95) | LEGAL SVCS - OCTOBER 2008 |
| 12/19/2008 | Urban Forest Management | ($217.50) | COMMONWEALTH - SEPT |
| 12/19/2008 | James J. Benes | ($3,291.65) | CMNWLTH AVE PHASE 3 INSP |
| 12/26/2008 | Klein Thorpe | ($1,568.40) | LEGAL SERVICES - NOVEMBER 2008 |

| | BALANCE 12/31/08 | $74,571.35 | ($135,455.91) | ($60,884.56) | **Total Amount Due** |

Commonwealth Escrow

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

In Re:                              )          BK No.:   14-17886
GURRIE C. RHOADS,                   )
                                    )
                                    )          Chapter: 11
                                    )          Honorable Timothy A. Barnes
                                    )
                                    )
        Debtor(s)                   )

### ORDER EXTENDING DEBTOR IN POSSESSION'S EXLCUSIVE TIME TO FILE CHAPTER 11 PLAN OF REORGANIZATION AND TIME TO OBTAIN ACCEPTANCES OF CHAPTER 11 PLAN

THIS CAUSE COMING ON TO BE HEARD on Debtor's Motion For Entry Of An Order Pursuant to Section 1121(d) Of The Bankruptcy Code Extending The Exclusive Period To File His Plan of Reorganization And Extending The Corresponding Dates To Obtain Acceptances Thereof, due and proper notice having been served, the Court having jurisdiction over the parties and subject matter and having considered Elecmat Remington LLC's Response in Opposition to Debtor's Motion and otherwise being fully advised in the premises:

IT IS HEREBY ORDERED THAT:

1. The exclusive period for the Debtor In Possession to file a Plan of Reorganization is extended to and including December 1, 2014;
2. The deadline by which the Debtor In Possession has to obtain acceptances of a Plan of Reorganization is extended to and including January 30, 2015.

Enter:

United States Bankruptcy Judge

Dated:   OCT 2 1 2014

**Prepared by:**
Gregory K. Stern (Atty. ID #6183380)
Monica C. O'Brien (Atty. ID #6216626)
Rachel D. Stern (Atty. ID #6310248)
53 West Jackson Boulevard
Suite 1442
Chicago, Illinois 60604
(312) 427-1558

2 1 OCT 2014



EXHIBIT A                              Rev: 20130104_bko

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | | |
|---|---|---|
| In Re: | ) | BK No.:    14-17886 |
| GURRIE C. RHOADS, | ) | |
| | ) | |
| | ) | Chapter: 11 |
| | ) | Honorable Timothy Barnes |
| | ) | |
| | ) | |
| Debtor(s) | ) | |

## ORDER EXTENDING THE EXCLUSIVE PERIOD FOR
## DEBTOR-IN-POSSESSION TO FILE HIS PLAN AND DISCLOSURE STATEMENT

This cause coming to be heard on the Joint Motion of the Village of Western Springs and Debtor-in-possession for Entry of an Order Pursuant to § 1121(d) of the Bankruptcy Code Extending the Exclusive Period for Debtor-in-possession to File His Plan and Disclosure Statement; due and proper notice having been given; the Court having jurisdiction over the parties and subject matter and having heard the statements of counsel; and the Court being fully advised in the premises;

IT IS HEREBY ORDERED THAT:

A. The exclusive period by which the Debtor-in-possession has to file a Plan of Reorganization and Disclosure Statement is extended to and including January 30, 2015; and

B. The deadline by which the Debtor-in-possession has to obtain acceptances of the Plan is extended to July 27, 2015.

Enter:

Honorable Timothy A. Barnes
Dated:  November 18, 2014                      United States Bankruptcy Judge

**Prepared by:**



EXHIBIT
A3

*Gurrie C. Rhoads*
*4815 Creek Drive*
*Western Springs, IL 60558*
*(708) 246-0906*

October 11, 2016

Mr. James B. Durkin
Arnstein & Lehr, LLP
120 S. Riverside Plaza
Ste 1200
Chicago, IL 60606

Dear Jim,

When you were appointed last year as Special Counsel in my bankruptcy case, to "negotiate with the Village and Hartz on matters affecting the estate", I was optimistic that you would bring some fairness and balance to the process. The results of those negotiations, if expressed in the September 6th "Global Settlement Chart" given us by Trustee Chatz, are very disappointing.

I am sending this letter, by the way, as the Managing Venturer of Commonwealth Avenue Joint Venture ("CAJV"), not as the Debtor. I am sending it without the knowledge of my counsel, so if that is not in accordance with protocol, then so be it. CAJV, as the Village well knows, is beneficial owner of the rights and properties that you have been negotiating about. The money that was used to buy Flagg Creek and the 35-foot strip belonged to CAJV, not to me. The money used to clean up the creek belonged to CAJV, not to me. The money that built the infrastructure that is the subject of the (Hartz) Recapture Agreement belonged to CAJV, not me.

My biggest disappointment is that you made no effort to talk to me, or Ken Garstka, the counsel for CAJV. Most, and probably all, of the issues between the Village and myself could be easily resolved if the parties would only talk to each other. Yet, for 2-1/2 years the lawyers have ruled the roost, while my wife and I have had many sleepless nights about whether we will be able to keep our house (through a cash payment for my 50%), and whether we will be able to keep faith with, and protect the interests of, my 17 venture partners, or my Commonwealth neighbors, or the folks living on Fair Elms with whom I have worked for many years.

My understanding of the bankruptcy law suggests that just about everything you are doing raises issues in connection with Section 365(c)(1) of the Bankruptcy Code. If any of these agreements being renegotiated are even assignable, and they probably are not, there was no request to assume them presented to the court by the Trustee. However, the more I seek to protest such things, the more tangled the case becomes, and that is not something I want.


EXHIBIT
14

James B. Durkin                          - 2 -                          October 11, 2016

My bankruptcy counsel says he will seek a meeting with Trustee Chatz and the Village to discuss the Global Settlement proposal, but I personally have my doubts about how much good this will do. The flood of stuff we keep getting from Attorney Guzzardo shows that he either doesn't understand the details, or is intent on attacking me anyway, or doesn't even care about the details and isn't really interested in a settlement. My counsel also tells me that it is bad form for me to question the Trustee's understanding of the law and Section 365(c)(1) in front of other lawyers.

If you can sit in on the meeting that would be wonderful, but I would actually prefer to have a separate session with you, in which I can discuss the details and the possible resolutions without having to worry about taking a "position" at all times.

My number is on the letterhead and my email is gurrie@aol.com.  If protocol matters in this case, Ken Garstka's number is 708-305-7271 and his email is kennethegarstka@gmail.com.  Again be aware that I am writing this without Ken's knowledge.

Very truly yours,

Gurrie C. Rhoads

**John Guzzardo**

| | |
|---|---|
| **From:** | John Guzzardo |
| **Sent:** | Wednesday, October 12, 2016 11:03 AM |
| **To:** | 'David Lloyd'; 'Kenneth E. Garstka' |
| **Cc:** | Barry A. Chatz (BACHATZ@arnstein.com); 'jbdurkin@arnstein.com'; Brian Shaw |
| **Subject:** | In re Rhoads: CAJV Letter 10/11/2016 |
| **Attachments:** | Durkin10112106.pdf |
| **Importance:** | High |

David and Ken,

Please see the attached letter, dated October 11, 2016, sent by Mr. Rhoads, purportedly on behalf of CAJV, to Mr. Durkin at the Trustee's office.

Needless to say, you both need to control your client. All communications must be through counsel. We will not respond to this.

David – you told me there would be a substantive response to the Global Settlement Offer ("The answer is not 'no.'") Given Mr. Rhoads' statements in the letter, that appears to not be true. Please provide, at your earliest opportunity, the Debtor's substantive counter-offer to the Global Settlement Offer, if he has one. The Trustee will not hold a settlement meeting with you until he receives that counter-offer -- and then we will consider whether it is worthwhile to meet.

Finally, David, given Mr. Rhoads' statements in the letter, I now need an immediate ETA for the Debtor's response to the Rule 37 letter. A motion to compel will be forthcoming in very short order if I can't get an ETA or if the ETA is too far out. The clock is ticking and Mr. Rhoads has exhausted our patience.

Very truly yours,

Attorney Guzzardo

Shaw Fishman Glantz & Towbin LLC
321 N. Clark Street, Suite 800
Chicago, IL 60654
Direct: (312) 276-1323
Direct Fax: (312) 980-3888
Main: (312) 541-0151
www.shawfishman.com

**MEMORANDUM OF
AGREEMENT**

Doc#: 1120946048 Fee: $38.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 07/28/2011 02:11 PM Pg: 1 of 1

[sic]

WHEREAS, the parties, GURRIE RHODES ("Service Provider") and WSMC PARTNERS, LLC, ("Operator") have entered into a Transition Services Agreement dated as of September 17, 2010; and

WHEREAS, said Transition Services Agreement provides, in part, that the Service Provider may record a Memorandum of Agreement against the property described below ("Property"); and

WHEREAS, the legal description of the Property is:

> Lot 1 in the Plat of Subdivision of Commonwealth Commercial Center being a Subdivision in the North ½ of Section 7, Township 38 North, Range 12, East of the Third Principal Meridian, Recorded as Document 0010894956 and Rerecorded as Document 0011077029 in Cook County Illinois.
> PIN 18-07-104-023-0000

WHEREAS, the Service Provider hereby elects to record this Memorandum of Agreement;

NOW THEREFORE, the world is put on notice that the above Transition Services Agreement exists between the Service Provider and Operator concerning the above described Property that is commonly known as 4700 Commonwealth Ave, Western Springs, IL, and hereby creates a lien on such property.

NOW THEREFORE, the world is put on notice that the Transition Services Agreement provides that the Operator is to pay sums certain to the Service Provider upon the occurrence of certain events described therein.

NOW THEREFORE, the world is put on notice that the Transition Services Agreement provides that this Memorandum of Agreement shall be subordinate to certain mortgages upon certain events described therein.

NOW THEREFORE, the world is put on notice that the Transition Services Agreement provides that upon the occurrence of certain events described therein, this Memorandum of Agreement shall be released.

NOW THEREFORE, the world is put on notice that the Transition Services Agreement may be viewed upon written request to the Service Provider and/or Operator.

This Document prepared by: Kenneth E. Garstka, Esq., 314 N. Catherine, La Grange Park, IL 60526 Ph: 708-352-6465



EXHIBIT
A5

Purchase Price                                                    $1,725,000.00

| | |
|---|---|
| Owners Title Policy | 3,500.00 |
| Survey | 1,500.00 |
| 50 % of Escrow Fees | 2,500.00 |
| Legal Fees of Keane & Keane | 9,358.00 |
| Other Legal Fees | 8,000.00 |
| State and County Transfer Taxes | 2,587.50 |
| Municipal transfer taxes | 0.00 |
| 50% of Commission | 30,000.00 |
| Unpaid Taxes - 2008 (2nd) - min to tax buyer | 49,224.61 |
| Unpaid Taxes - 2009 (1st) - est at 12-1 | 59,732.43 |
| Unpaid Taxes - 2009 (2nd - prelim est) | 10,633.20 |
| Other miscell costs, incl RE tax extras | 10,000.00 |

                                                                   187,035.74

Net Amount to Lender                                              $1,537,964.26


EXHIBIT
A6

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

In re:                              )         Chapter 11
    GURRIE C. RHOADS,               )         Case No. 14-17886
                        Debtor.     )         Honorable Timothy A. Barnes

## JOINT MOTION OF THE VILLAGE OF WESTERN SPRINGS AND DEBTOR-IN-POSSESSION FOR ENTRY OF AN ORDER PURSUANT TO § 1121(d) OF THE BANKRUPTCY CODE EXTENDING THE EXCLUSIVE PERIOD FOR DEBTOR-IN-POSSESSION TO FILE HIS PLAN AND DISCLOSURE STATEMENT

NOW COME the Village of Western Springs and Gurrie Rhoads (hereinafter "Debtor-in-possession" or "Mr. Rhoads" or "Gurrie") , by and through their respective proposed Counsel, and in support of their Joint Motion for Entry of an Order Pursuant to § 1121(d) of the Bankruptcy Code Extending the Exclusive Period for Debtor-in-possession to File His Plan and Disclosure Statement, state as follows:

### Jurisdiction and Venue

1.     This case is pending pursuant to Chapter 11 of the U.S. Bankruptcy Code, a Voluntary Application for relief having been filed on May 12, 2014. Mr. Rhoads, is now and has been since the filing, a Debtor-in-possession of his assets and in operation of his business pursuant to 11 U.S.C. §§ 1107 and 1108 of the Code.

2.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a) and 157. Venue is properly before this Court pursuant to 28 U.S.C. § 1408. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3.     The statutory predicate for the relief requested herein is § 1121(d) of the Bankruptcy Code.

4.     The Debtor's exclusive right to file a Plan of Reorganization and Disclosure



EXHIBIT
B

Statement expires December 1, 2014[1]. A copy of the Order extending the Debtor's exclusive right to file until December 1, 2014 is attached hereto as **Exhibit A**.

### Basis for Relief

5.    The Debtor's objective in this Chapter 11 case is to restructure his debt by way of a plan confirmation process.

6.    The Debtor has been diligently working on his Plan and Disclosure Statement. Although at this juncture, a Plan has been drafted, but would be a stronger and more effective if it included an agreement between the Village and Debtor-in-possession. The Village and Debtor-in-possession are currently negotiating an agreement for consideration by the Village Board of Trustees that would memorialize the ways the Village and Debtor-in-possession will work together to maximize value of property within the Estate. The Plan to be filed contemplates the implementation of the potential agreement between the Village and the Debtor-in-possession.

7.    If an agreement is reached between the Village and Debtor-in-possession, the final terms of any agreement requires approval by the Village Board of Trustees.

8.    To the extent it is able, the Village wants to assist the Debtor-in possession to maximize the value of his assets.

9.    The Village believes that the participation of Gurrie Rhoads and the utilization of his special knowledge and proprietary information will likely generate maximum dollars for every creditor of this estate.

10.    Accordingly, an allowance of an extension of time in which only the Debtor-in-

---

[1] Counsel for Debtor-in-possession was retained August 19, 2014 (post-petition) after irreconcilable differences arose between Mr. Rhoads, and, his original counsel of record. In order to obtain sufficient time in which to understand the scope of the engagement, gain an understanding of the property of this Estate, create a productive working environment among creditors so that necessary consensus among the creditors could be developed, and to thereafter draft a Plan and Disclosure Statement, this Court extended the date by which only the Debtor could file a Plan from September 8, 2014 until December 1, 2014.

337614_1                                      3

possession can file a Plan to enable the Village and the Debtor-in-possession to complete its negotiations and obtain approval of any potential agreement, is a reasonable request.

11.    Counsel for Gurrie Rhoads has spoken with counsel for Elecmat and advised counsel of the situation. In discussions, counsel acknowledged that implementation of an agreement that would increase distribution to creditors is in the best interests of the Estate, but Elecmat counsel requested that every effort be made to nonetheless file the Plan by the current exclusivity deadline of December 1, 2014. Debtor in Possession continues to diligently work toward Plan and Disclosure Statement completion.

12.    The Village Board meets on or about the 27th of each month. In light of the upcoming Thanksgiving and Christmas holidays, it is not possible for the Village and the Debtor-in-possession to complete negotiations of an agreement, and have an agreement, if reached, approved by the December 1, 2014 deadline. Furthermore, in light of the complications involved, it is highly unlikely that any approval can be obtained by January 1, 2015 due to the upcoming Christmas holidays.

13.    Pursuant to § 1121(d) of the Bankruptcy Code, a party in interest may request the Court to increase the Exclusive Period for cause.

14.    The Village and the Debtor-in-possession seek an extension. The extension requested in this Motion will not prejudice the legitimate interests of any party-in-interest in this chapter 11 case. Rather, the extension will further the Debtor's effort to preserve, maximize, and create value for all of the Debtor's creditors and enhance the likelihood of an outcome that will be in the best interests of all  parties in interest. Consequently, the Village and the Debtor believe that the requested extension is warranted and appropriate under the circumstances.    The extension request is not made due to lack of diligence. To the contrary, the Debtor is working

337614_1                                                        4

very hard and effectively to confirm a Plan that will generate the highest possible return for the Estate.

**Relief Requested**

15.     The Village and the Debtor seek to extend the Exclusive Period from December 1, 2014 to January 30, 2015 and 180 days thereafter to solicit acceptance of the Plan.

16.     The Village is advised and believes that exploring the viability of a plan that will include the active participation of Gurrie Rhoads would likely maximize a distribution for the Estate. Furthermore, if the exclusivity date is not extended, the current Plan could be filed but it would not maximize distribution to the creditors. Furthermore, in the event that a competing Plan is filed, that Plan will not be able to maximize distribution to creditors, and Debtor-in-possession will be compelled to expend resources that can be better spent on payments to creditors.

17.     Based upon the foregoing, the Village and the Debtor-in-possession, submit that cause exists to extend the exclusivity period.

18.     Movants believe that the extension sought, is in the best interest of all creditors of this estate, and will not be prejudicial to the interests of anyone.

**Notice**

13.     The Village and the Debtor have served Notice of this Motion upon: (a) the Office of the U.S. Trustee for this District; (b) all creditors of this Estate; and (c) any other party who has requested notice. Movants submit that no further notice need be given.

**WHEREFORE**, Movants respectfully request that the Court enter an Order:

(i)     extending the exclusive date by which the Debtor must file his Plan and Disclosure Statement from December 1, 2014 to January 30, 2015;

(ii)    extending the date for Debtor to solicit acceptances of the Plan to 180 days

337614_1                                5

thereafter;

    (iii)   extending this Court's date by which the Debtor must file his Plan of

Reorganization and Disclosure Statement; and

    (iv)   granting the Debtor such other relief as this Court deems just and proper.


Respectfully submitted,                          Respectfully submitted,
The Village of Western Springs,                  Gurrie C. Rhoads,

By: _____        By: _____
Michael T. Jurusik                                Deborah K. Ebner
Mallory A. Milluzzi                               (ARDC No. 61816159)
Klein, Thorpe & Jenkins, Ltd.                     Law Office of Deborah Kanner Ebner
20 North Wacker Drive                             11 East Adams Street
Suite 1660                                        Suite 904
Chicago, IL 60606                                 Chicago, Illinois 60603
(312) 984-6437                                    (312) 922-3838

## IDENTIFYING AND AVOIDING CONFLICTS OF INTEREST

# <u>Answers to Fact Pattern Questions</u>

– Prepared and Presented by –

THOMAS P. BAYER
MICHAEL T. JURUSIK
THOMAS M. MELODY
SCOTT F. UHLER
EVERETTE M. HILL, JR.
KATHLEEN T. HENN
HOWARD C. JABLECKI
JASON A. GUISINGER

of

### KLEIN, THORPE AND JENKINS, LTD.

20 North Wacker Drive
Suite 1660
Chicago, Illinois 60606-2903
Phone: (312) 984-6400
Fax: (312) 984-6444
www.ktjlaw.com

## FOR THE 96th ANNUAL CONFERENCE

## CONDUCTED BY THE ILLINOIS MUNICIPAL LEAGUE

**Friday, September 25, 2009**



EXHIBIT
C

240043_1



**(Item III.3)**

## AUTHORITY OF ELECTED OFFICIALS TO USE MUNICIPAL FUNDS

### Use of Municipal Credit Card / Criminal Action Against Elected Village Official

1.   No.   The Illinois Supreme Court recently discussed the scope of restrictions on municipal elected officials to use municipal funds or credit in *People v. Howard*, 228 Ill. 2d 428 (2008). In that case, the Mayor of Pekin, Illinois (Tazewell County) was using a municipal credit card for the short-term financing of his gambling habit. Although he would personally repay the municipal credit card bills each month, (with the exception of one month, where he paid the late charges, too), the court held that he had committed the statutory offense of "official misconduct" due to his misuse of Pekin's credit. The court held "that the [Illinois] constitution can serve as a predicate unlawful act for the offense of official misconduct." Section 33-3(c) of the Illinois Criminal Code makes "official misconduct" a crime. The Illinois Supreme Court for the first time stated that a violation of Article VII, Section 1(a) of the Illinois Constitution, which requires that "[p]ublic funds, property or credit shall be used only for public purposes," could be considered "official misconduct" under the Illinois Criminal Code. In upholding the trial court's ruling, the Illinois Supreme Court found the Mayor's personal use of Pekin's credit card was "official misconduct" because it made credit unavailable to the village for the time period during which credit was expended and not repaid, and also confirmed the 30 month probation sentence and monetary fines imposed on the Mayor.

2.   Because this type of misuse of municipal funds or credit has now been characterized as criminal conduct, any action by other village officials or employees to cover up or aid another official(s) or employee(s) who is engaged in similar conduct may be considered to be aiding and abetting a crime pursuant to the Illinois Criminal Code. If a misuse of municipal funds or credit is discovered, the matter should be turned over to the county state's attorney and the local police department or an outside law enforcement agency for investigation.

To avoid this type of misconduct, municipalities should consider:

- Adopting and distributing to all officials and employees a written business expense reimbursement policy that is consistent with the mandate of Article VII, Section 1(a) of the Illinois Constitution (public funds, property or credit shall be used only for public purposes) and the Internal Revenue Service regulations on what qualifies as eligible business-related reimbursement expenses.
- Limiting the number of municipal credit cards and authorized users of such cards and signatories on municipal business accounts (e.g., hardware store, office supply store, gas station, etc.).
- Auditing the statements of the credit cards and municipal business accounts on a regular basis.

# Klein, Thorpe & Jenkins, LTD –Conflict of Interest Municipal Law

The General Assembly has, by legislation, prohibited and limited the interests of both elected and appointed persons holding any office with a unit of local government they serve. First, the **Public Officer Prohibited Activities Act (50 ILCS 105/3(a)),** sometimes referred to as the "Corrupt Practices Act", provides that no elected or appointed public office holder "may be in any manner interested, either directly or indirectly, in his own name or in the name of any other person . . . in any contract or the performance of any work in the making or letting of which such officer may  be called upon to act or vote". **The words "may", "act" and "vote" have been emphasized to stress on the one hand that it is not necessary that the officer actually act or vote; the mere fact that the officer may act or vote can be enough to place the officer in violation of this Act, and, on the other hand, abstaining from voting or not even being present at the meeting at which the vote in question was taken is not enough to absolve the official from a violation of the Act.** In the event an officer has a conflict of interest in a contract coming before the public body and such officer cannot bring himself or herself within one of the several limited exceptions, then, in that case, the officer must make one of the following two decisions in order to avoid a violation of the Act:

1.    **have the contract removed from the agenda before a vote is taken, or**

2.    **resign his or her office before the vote is taken.**

The attorneys at KTJ continue to be amazed every time they hear a public official, and too often **even a governmental attorney,** say that all the public official need do in order to avoid a statutory conflict of interest is to abstain from voting. **Although abstaining from voting will be sufficient to avoid a common law conflict of interest, it is not enough to avoid a statutory conflict of interest.**

Next, the legislature has also included provisions in the Illinois Municipal Code prohibiting city and village officers from being interested in contracts with the city or village that they serve. (65 ILCS 5/3.1-55-10 and 65 ILCS 5/4-8-6 for commission form governments). Although these two Municipal Code contract prohibition provisions are similar to those found in the Corrupt Practices Act, they are not identical. Therefore, public officials and their attorneys must always review the provisions of the Corrupt Practices Act and, if applicable, the Municipal Code provisions when investigating a possible conflict of interest.

**These statutory conflict of interest provisions serve notice that self-dealing by public officials will not be tolerated.** Also, these statutory conflict of interest provisions are merely reflective of the common law that held contracts in which governmental officials had an interest voided on grounds of public policy to protect the government from being defrauded by its own servants.

Why is this issue of conflict of interest so important to public officials? Well, every time a vote is taken at a meeting of the public body, one or more members may, whether they realize it or not, face a potential conflict of interest, either statutory or common law. **Conviction for violating either of the conflict of interest statutes is a Class 4 felony punishable by a fine not to exceed $25,000, a jail sentence of 1 to 3 years, and removal from office.**

Several Firm members have prepared a handbook, entitled "Manual on Conflict of Interests and Liability of Illinois Elected Officials", published and distributed by the Illinois Municipal League. You may purchase copies of this manual from the League by going to the League's Website: http://www.iml.org, then go to the bottom of the right-side menu under the caption **Products/Services,** click on IML Publications,  then click on the manual Conflict of Interest and Liability and place your order.

# Klein, Thorpe and Jenkins, Ltd.
20 N. Wacker Drive
Suite 1660
Chicago, IL 60606
(312) 984-6400

Village of Clarendon Hills
Attn: Accounts Receivable
1 North Prospect Avenue
Clarendon Hills, IL 60514-1227

Statement Date: August 25, 2014

Matter ID:     3242-085

Statement #     171158
For Legal Services Rendered through July 31, 2014
103 S. Prospect Ave. Litigation

**Professional Fees**

| Date | | Description | Hours | Amount |
|---|---|---|---|---|
| 7/1/2014 | JAG | Preparation for deposition of Susan Hanlon | 3.60 | 720.00 |
| 7/2/2014 | JAG | Attendance at deposition of Susan Hanlon and meeting with clients regarding the same | 4.00 | 800.00 |
| 7/10/2014 | JAG | Preparation for deposition of Philip Altvater | 1.00 | 200.00 |
| 7/11/2014 | JAG | Attendance at deposition of Plaintiff Philip Altvater | 3.00 | 600.00 |
| 7/15/2014 | JAG | Preparation for and attendance at status hearing | 3.00 | 600.00 |
| 7/21/2014 | TPB | Communication from and preparation of memorandum to Randy Recklaus re Van Zandt Western Springs Project Litigation | 0.40 | 84.00 |
| 7/21/2014 | MTJ | Preparation of status report to Village Manager re Western Springs / Van Zandt litigation | 0.30 | 63.00 |
| 7/22/2014 | JAG | Communications with client regarding litigation status | 0.80 | 160.00 |
| 7/25/2014 | JAG | Communications with client regarding litigation status update and press release | 1.00 | 200.00 |
| 7/30/2014 | JAG | Communications with Mike Van Zandt regarding expert discovery schedule | 0.60 | 120.00 |
| 7/30/2014 | JAG | Communication with Mike Van Zandt regarding discovery schedule | 0.50 | 100.00 |

Total Fees:     3,647.00

**Rate Summary**

| | | | |
|---|---|---|---|
| Thomas P. Bayer | 0.40 hours at $ 210.00 /hr | | 84.00 |
| Michael T. Jurusik | 0.30 hours at $ 210.00 /hr | | 63.00 |
| Jason A. Guisinger | 17.50 hours at $ 200.00 /hr | | 3,500.00 |
| Total hours: | 18.20 | Total Fees: | 3,647.00 |

Confidential Attorney Client Privilege 000036

EXHIBIT
D

# VAN ZANDT INVOICE SUMMARY (Paid by Village of Clarendon Hills)
# RE: 88 PARK LITIGATION

| Date | Amount | Subtotals | KTJ Vendor |
|------|--------|-----------|------------|
| All of 2013 | Missing | $0.00 | KTJ |
| 01/16/14 | $2,744.00 | | KTJ |
| 02/12/14 | $5,495.92 | | KTJ |
| 03/12/14 | $1,060.00 | | KTJ |
| 04/23/14 | $1,425.00 | | KTJ |
| 05/28/14 | $3,354.70 | | KTJ |
| 06/26/14 | $4,023.00 | | KTJ |
| 07/25/14 | $2,775.80 | | KTJ |
| 08/25/14 | $3,893.70 | | KTJ |
| 09/16/14 | $1,896.96 | | KTJ |
| 10/21/14 | $4,830.50 | | KTJ |
| 11/19/14 | $4,709.34 | | KTJ |
| 12/18/14 | $1,100.00 | | KTJ |
| | | $37,308.92 | |
| 01/14/15 | $520.00 | | KTJ |
| 02/18/15 | $3,126.00 | | KTJ |
| 03/XX/15 | Missing | | KTJ |
| 04/21/15 | $7,223.85 | | KTJ |
| 05/15/15 | $3,563.90 | | KTJ |
| 06/22/15 | $2,459.44 | | KTJ |
| 07/16/15 | $2,286.33 | | KTJ |
| 08/17/15 | $3,945.30 | | KTJ |
| 09/16/15 | $369.00 | | KTJ |
| 10/19/15 | $2,070.50 | | KTJ |
| 11/10/15 | $8,915.70 | | KTJ |
| 12/17/15 | $17,002.97 | | KTJ |
| | | $51,482.99 | |
| 01/12/16 | $4,544.48 | | KTJ |
| 02/11/16 | $789.46 | | KTJ |
| 03/21/16 | $1,615.00 | | KTJ |
| 04/21/16 | $650.92 | | KTJ |
| 05/XX/16 | Missing | | KTJ |
| 06/XX/16 | Missing | | KTJ |
| 07/XX/16 | Missing | | KTJ |
| 08/XX/16 | Missing | | KTJ |
| 09/XX/16 | Missing | | KTJ |
| 10/XX/16 | Missing | | KTJ |
| 11/XX/16 | Missing | | KTJ |
| 12/XX/16 | Missing | | KTJ |
| | | $7,599.86 | KTJ |
| Klein, Thorpe Subtotal | $96,391.77 | | |

| Date | Amount | Subtotals | Experts/Vendors |
|------|--------|-----------|-----------------|
| Missing | Missing | | Appraiser |
| Missing | Missing | | Planner |
| Missing | Missing | | Other |
| Missing | Missing | | Other |

LINE #1

ORDER - BLANK                                                                    2116 (Rev. 6/13)

**STATE OF ILLINOIS**           **UNITED STATES OF AMERICA**        **COUNTY OF DU PAGE**
                    **IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT**

HANLON

                                    13 CH 3370
            VS                      **CASE NUMBER**

VILLAGE OF
CLARENDON HILLS

                                                                    File Stamp Here

                                        **ORDER**

This cause coming before the Court; the Court being fully advised in the premises, and having jurisdiction of the
subject matter, **IT IS HEREBY ORDERED:**

Outstanding written discovery to be responded
to in 14 days.

Michael VanZandt / 88 Park Avenue, LLC is
given leave to file an Appearance and Answer
the Complaint within 14 days.

Further status set for May 13 at 9:00 AM
for entry of case management order.

Name: Adam Kingsley            ☐ PRO SE        ENTER:
DuPage Attorney Number: 27758
Attorney for: PLAINTIFFS
Address: 14041 PETRONELLA DR
City/State/Zip: Libertyville, IL                        Judge
Telephone: 847.367.2750        Date: 4-4-14

**CHRIS KACHIROUBAS, CLERK OF THE 18th JUDICIAL CIRCUIT COURT ©**
**WHEATON, ILLINOIS 60187-0707**

Michael Van Zandt



**Page 1**

STATE OF ILLINOIS)
                 ) SS:
COUNTY OF DUPAGE )

IN THE CIRCUIT COURT FOR THE EIGHTEENTH
JUDICIAL CIRCUIT, DUPAGE COUNTY, ILLINOIS

SUSAN HANLON and PHILIP      )
ALTVATER                     )
                             )
        Plaintiffs,          )
                             ) No. 2013 CH 003370
    vs.                      )
                             )
                             )
VILLAGE OF CLARENDON HILLS, an )
Illinois Municipal Corporation, )
                             )
        Defendant.           )
------------------------------

The discovery deposition of MICHAEL VAN ZANDT,
called by the Plaintiff for examination, pursuant to
notice and pursuant to the provisions of the Illinois
Code of Civil Procedure and the Rules of the Supreme
Court pertaining to the taking of depositions for the
purpose of discovery, taken before Susan L. Bruesch,
CSR, a Notary Public within and for the County of Lake
and State of Illinois, at 1 North Prospect Avenue,
Clarendon Hills, Illinois, on September 8, 2014, A.D.,
at the hour of 1:00 p.m.

**Page 2**

1   APPEARANCES:
2   O'DONNELL LAW FIRM, LTD.
    14044 Petronella Drive
3   Suite 1
    Libertyville, IL 60048
4   847-367-2750
    rodonnell@odonnell-lawfirm.com
5   BY: MR. ROBERT T. O'DONNELL
6       Appeared on behalf of Susan Hanlon and
        Philip Altvater, the Plaintiffs.
7
8
9   KLEIN, THORPE & JENKINS, LTD.
    20 N. Wacker Drive
10  Suite 1660
    Chicago, IL 60606
11  312-984-6400
    jaguisinger@ktjlaw.com
12  BY: MR. JASON A. GUISINGER
13      Appeared on behalf of Village of Clarendon Hills,
        the Defendant.
14
15
16
17
        INDEX
18
19  THE WITNESS:            PAGES
    Michael Van Zandt
20
21  Examination by Mr. O'Donnell    3-56
22
23
24

**Page 3**

1              (Witness sworn.)
2
3       MICHAEL VAN ZANDT,
4   the deponent herein, having been first duly
5   sworn, was examined and testified as follows,
6   to-wit:
7
8              EXAMINATION
9          By Mr. O'Donnell:
10
11      MR. O'DONNELL: Let the record show
12  this is the discovery deposition of Michael
13  Van Zandt taken on today's date pursuant to
14  notice and the applicable rules of the
15  Illinois Code of Civil Procedure.
16      Mr. Van Zandt, have you had
17  your deposition taken before?
18      THE WITNESS: Yes.
19      MR. O'DONNELL: And I'll similarly
20  remind if you would answer each question
21  audibly, wait until I finish my question
22  before you begin your answer. Should you
23  inadvertently begin my next question before
24  you've completed your answer, you have the

**Page 4**

1   right to stop me and go ahead and complete
2   your answer and then we'll move on to the knee
3   question. Okay?
4       THE WITNESS: Okay.
5       MR. O'DONNELL: If at any time you
6   want to take a break, feel free to indicate to
7   me that you wish to do so. We'll do so, but
8   I'd ask that you first complete your answer to
9   whatever question may then be pending and
10  we'll break.
11      THE WITNESS: Okay.
12  BY MR. O'DONNELL:
13      Q.  State your full name.
14      A.  John Michael Van Zandt.
15      Q.  Where do you live?
16      A.  351 Harris Avenue, Clarendon Hills.
17      Q.  How long have you lived in
18  Clarendon Hills?
19      A.  36 years.
20      Q.  Are you employed?
21      A.  Yes.
22      Q.  By whom?
23      A.  I'm a broker at NAI Hiffman.
24      Q.  And what type of broker?

1 (Pages 1 to 4)

Michael Van Zan



Page 17

1    Q.  So that I understand it the —
2    other than your own personal analysis of what
3    had been approved for the subject property and
4    then what had been done or not done, you had
5    four sources of information, the owner of a
6    meat market in another municipality, right?
7        A.  Well, I'm not sure I understand
8    you, four sources of information.
9        Q.  Right.
10       A.  I inquired with these people as to
11   their interest in being a retail tenant in a
12   building on that site.
13       Q.  Okay.  So you asked the owner of
14   the meat market in Western Springs I think you
15   said?
16       A.  Mm-hmm.
17       Q.  And that person apparently said
18   they weren't interested?
19       A.  Correct, twice.
20       Q.  Okay.  And you spoke to three other
21   Clarendon Hills business owners to see if they
22   had an interest?
23       A.  Yes.
24       Q.  And at least the English Garden and

Page 18

1    the hardware store are businesses that are
2    currently operating in the village?
3        A.  Yes.
4        Q.  And the owner of the business that
5    used to make the candy pops, are they still in
6    business or not?
7        A.  Yes.
8        Q.  Did you do any sort of or did you
9    obtain any sort of market study as to the
10   feasibility of retail use on the subject
11   property?
12       A.  That was my feasibility study.
13       Q.  So your feasibility study was your
14   looking to see what happened with the prior
15   development and the four potential tenants
16   that you contacted and inquired of their
17   interest?
18       A.  Against what the cost to construct
19   the building and what the rent required to
20   have a return on that retail space and my
21   knowledge of having leased retail and being a
22   developer of 183,000 square foot retail center
23   in Oak Brook in the last six years.
24       Q.  I take it there was no independent

Page 19

1    market study obtained by you, correct?
2        A.  Correct.
3        Q.  Did you ever -- did you obtain
4    financing to purchase the subject property?
5        A.  No.
6        Q.  Are you or have you obtained
7    financing to develop the subject property?
8        A.  I can't obtain financing with the
9    lawsuit pending.
10       Q.  Have you made any inquiry of any
11   lenders in order to secure financing to
12   develop the property as it's been approved at
13   least to date?
14       A.  Yes.
15       Q.  Have you received a commitment for
16   financing?
17       A.  My answer is the same thing as the
18   first one, I can't get a commitment with a
19   lawsuit pending.
20       Q.  Did you approach any lender for
21   financing for a mixed use development of the
22   subject property?
23       A.  Yes.
24       Q.  Who?

Page 20

1        A.  TCF, Pan American Bank, and one
2    other who asked me to not repeat them.  I
3    don't know if I'm obligated to.
4        Q.  Yeah, you are.
5        THE WITNESS:  Jason?
6        MR. GUISINGER:  You can answer.
7    BY THE WITNESS:
8        A.  Wintrust.
9    BY MR. O'DONNELL:
10       Q.  Was their response all the same or
11   was it different?
12       A.  Pretty much all the same.
13       Q.  And what was that?
14       A.  They would love to finance the
15   condominium portion, would not finance the
16   retail.
17       Q.  And when did you — and during what
18   time period did you make those inquiries or
19   receive that response?
20       A.  January and June of 2013.
21       Q.  And if I got Friday dates right
22   that was shortly before or some months after
23   you closed?
24       A.  Yes.

5  (Pages 17 to 20)

# VILLAGE OF CLARENDON HILLS
## ORGANIZATIONAL CHART

**Residents**

**President**
**Board of Trustees**
**Clerk**

**Village Manager**

**Village Attorney**

**ZBA/Plan Commission**

**Police and Fire Commission**

**Standing Committees**

**Administrative Asst.**
**Management Analyst**

**Finance Department**
1 Director/Asst. Village Manager
1 Accountant
1 Fiscal Assistant II
1 Fiscal Assistant I (PT)
½ Fiscal Assistant I

**Community Development**
1 Director
1 Secretary
½ Fiscal Assistant I
Code Enforcement (PT)

**Fire Department**
1 Chief
1 Fire Prevention Officer
44 P.O.C. Firefighters
13 Paramedics

**Police Department**
1 Chief
1 Deputy Chief
3 Sergeants
10 Patrol Officers
1 Clerk
1 Clerk (PT)
1 C.S.O. (PT)

**Public Works**
1 Director
1 Supervisor
1 Water Syst. Coord.
1 Water Syst. Opr.
1 Mechanic
2 Maint. Worker II
1 Maint. Worker I
1 Secretary

- iii -



LINDENGROUP

10100 ORLAND PARKWAY
ORLAND PARK, IL 60467

CERTIFIED MAIL

7010 1060 0000 3231 7942

Stephen Jackson
PO Box 429
Hinsdale, IL 60522

7-0
7-21-16

6052204292929

## GENERAL INFORMATION APPLICATION
For Land Use and
Development in the Village

**Applicant(s)**

Name    Jim Neyer (petitioner/purchaser)
           Al. Neyer LLC

Address  302 West 3rd Street, Suite 800
           Cincinnati, OH 45202

Telephone ( 513) 271 – 6400

Telephone (_____) _____-_____

Fax ()

E-mail _jtneyer@neyer.com

**Property Owner(s)**

Name  WSMC PARNTERS, LLC, a Delaware limited
      liability company – c/o Edward Ross - JL Woode, Ltd
     Address    35 E Wacker Drive, Suite 3300
        Chicago, IL 60601

Telephone ( 312 ) 363 - 6000

Telephone (_____) _____-_____

Fax ( _____ ) _____ - _____

E-mail _eross@jlwoode.com_____

**Agent/ Architect**

Name  Linden Group Inc - Mike Matthys

Address  10100 Orland Parkway

        Orland Park, IL 60467

Telephone (708 )  799 - 4400

Cell     (708) 642- 2255

Fax     (708) 799 - 4434

**Engineer**

Name  Advantage Consulting Engineers
          Bill Zalewski
Address     80 Main St #17

          Lemont, IL 60439

Telephone (847) 260 - 4758

Cell     (630) 520 - 2467

Fax ( _____ ) _____ - _____

If the property is in a trust, provide name, address and number of trust. Also provide name, address and
percentage ownership of trust beneficiaries.

_____

I hereby make application for the following (check as appropriate).

| | | | |
|---|---|---|---|
| Annexation | _____ | Map Amendment | _____ |
| Subdivision | _____ | Resubdivision | _____ |
| Planned Development | _____ | Conditional Use | X |
| Variation(s) | _____ | Outdoor dining | |
| Other | X_____ | | |

Briefly describe your request (or attach a cover letter/narrative):  We are proposing a single story building of approximately 5,000
sq ft to be erected on the site. The exterior of the building will complement the Day Care that shares the parking lot. A privacy
fence will be established where our technicians will walk our patients on a leash. The inside of the building will have 5 exam
rooms and a "comfort suite" for clients to use with their pets for private conversations or euthanasia. There will be 2 surgical
suites, 1 will be used for our Board Certified Surgeon, Dr Andrea Hayes; she has been with Boone for 25 years. The other
surgical suite will be shared by our other staff Veterinarians, doing routine surgeries Monday thru Friday. We will have runs and
cages for dogs and cats. Boone rarely hospitalizes overnight - we do not have overnight staff but, on occasion there might be a
stabilized patient left for the evening. We will not be a boarding facility.



**GENERAL INFORMATION APPLICATION (continued)**

1. Common address or location of subject property:   4700 to 4720 Commonwealth Ave – Western Springs, IL

2. Legal Description (Attach additional sheet if necessary):  Lots 1, 2 and Outlot "A" in Western Springs Medical Center, being a Re-subdivision of Lot 1 in Commonwealth Commercial Center, a Subdivision in the North ½ of Section 7, Township 38 North, Range 12, East of the Third Principal Meridian, as said Western Springs Medical Center is shown on the Final Plat of Subdivision for the Western Springs Medical Center recorded as Document 1225818073, in Cook County, IL.

3. Permanent Index Number: *18-07-104-024; -025 (Lot 2); -026 and -031*
    *18-07-103-001; -006; -007; -008; -009; -012 and -013*

4. Parcel Size (sq. ft. or acres): Western Springs Center subdivision, approximately 3.4 acres; Lot 2: approximately 1.46 acres

5. Applicant is (check one):
    ___ Property Owner  __ Attorney  ___ Contract Purchaser *  X_ Agent  ____ Other (specify)

* Provide one copy of the executed sales contract or written permission from the current owner to petition the Village  (attached)

6. What are the current land uses and zoning on and around the site?

|               | Current Zoning | Land Uses     |
|---------------|----------------|---------------|
| On Site       | C2             | child care    |
| North of Site | R2             | parks         |
| South of Site | A              | single family |
| East of Site  | R2             | single family |
| West of Site  | R2             | vacant        |

7. Describe any existing structures and the site
The site has been improved with 44 parking spaces and infrastructure. There are no building structures.

I hereby certify that all information contained in this application and accompanying documentation is true and correct to the best of my knowledge.
Date 07.06.2016         Signature _____
                                    **(Applicant or Contract Purchaser)**


Date 07.06.2016         Signature _____
                                    **(Property Owner)**

## APPLICATION FOR DEVELOPMENT APPROVAL AND ZONING RELIEF;

### AMENDMENT TO PUD, AND CONDITIONAL USE PERMIT

To:    Patrick R. Higgins
Village Manager
Village of Western Springs
740 Hillgrove Avenue
Western Springs, Illinois 60558

Jim Neyer (Petitioner and Contract Purchaser) submits this Application and its supporting documents to petition the Corporate Authorities for approval of certain zoning relief in order to construct an Animal Hospital/veterinarian Office of 5,000 square feet in size in accordance with a Preliminary Plan (attached hereto) on the below described property ("Property"). Based on the regulations set forth in the Village's Development Control Ordinance ("DCO"), the requested zoning relief will have to be considered by the Plan Commission and the Village Board as noted below.

**Applicant:**            Jim Neyer (Petitioner and Contractor Purchaser)
EVP Real Estate Development
Al. Neyer LLC
302 West 3rd Street, Suite 800
Cincinnati, OH 45202

**Subject Property Address:**    4700 and 4720 Commonwealth Ave

Western Springs, Illinois

**Legal Description:**
Legal Description of the Property: Lots 1, 2 and Outlot "A" in Western Springs Medical Center, being a Resubdivision of Lot 1 in Commonwealth Commercial Center, a Subdivision in the North 1/2 of Section 7, Township 38 North, Range 12, East of the Third Principal Meridian, as said Western Springs Medical Center is shown on the Final Plat of Subdivision for the Western Springs Medical Center recorded as Document Number 1225818073, in Cook County, Illinois.

**P.I.N.:**
*18-07-104-024; -025 (Lot 2); -026 and -031*
*18-07-103-001; -006; -007; -008; -009; -012 and -013*

**Lot Size:**            Approximately 3.4 acres; Lot 2 is approximately 1.46 acres.

**Current Zoning District:**    Planned Unit Development, C-2 Commercial District

**Zoning Relief Requested:**
- Pursuant to Section 10-7-2(B), Section 10-3-14(M) and Section 10-8-5(D)(3) of the DCO, request for approval of a major change to an existing Conditional Use / Planned Development previously approved and

amended by the Village of Western Springs under Ordinance Number 14-2750, Ordinance Number 11-2621, Ordinance Number 08-2497, and Ordinance Number 01-2162 with regard to the Property to allow for the construction of an approximate 4,700 square foot one story, building located on Lot 2 that will house an animal hospital and veterinarian offices.

- Pursuant to Section 10-7-2(B) and Section 10-3-14(M) of the DCO, request for approval of a new conditional use permit for Lot 2, amending the existing Conditional Use / Planned Development for the Property, to construct and operate an animal hospital and veterinarian offices, which are permitted conditional uses under the applicable provisions of the C-2 Community Shopping District.

- Pursuant to Section 10-7-2(B), Section 10-3-14(M) and Section 10-8-5(D)(3) of the DCO, request for approval of amendments to the previously approved Conditions of Final Approval for Conditional Use Permit for a Planned Development of the Property to require such conditions and regulations as are reasonable in regard to the proposed animal hospital use and veterinarian office use.

- Pursuant to the applicable Sections of the DCO, request for approval of such other exceptions from the use, bulk and site design requirements contained in the DCO that are necessary to permit the construction a new building and the operation of an animal hospital and veterinarian offices on Lot 2.

## I.    INTRODUCTION

In addition to the narrative provided for project, per the Village Code we have answered the guidelines relating to all zoning relief required for approval. We believe that the project is worthy of approval and will become an asset to the Village. Included in these responses you will see references to our current business located at 905 55th St., Western Springs, Boone Animal Hospital.

The petitioner Jim Neyer of Al. Neyer, LLC will be the property owner/land developer and will lease to Boone Animal Hospital (Pet Partners, LLC)

Boone Animal Hospital (Pet Partners, LLC) has been a thriving business in Western Springs since 1959. They are currently located at 55th Street and Wolf Road and are hoping to relocate our Veterinary Hospital to a newly built facility at 4702 Commonwealth Avenue, Western Springs. To that end we are requesting approval for a "conditional use" to develop an Animal Hospital / Veterinarian Offices at that address.

Dr. Ernest Boone opened our doors to the community of Western Springs in 1959. He practiced with four exam rooms until the mid-1970's when he sold his practice and the building that housed it to two veterinarians, Dr. James Pass and Dr. Kathy Fauth who continue to own the building at 905 55th Street. In 2006 Dr. Pass and Dr. Fauth sold the practice to Pet Partners,

LLC located in Wilton, New York. Pet Partners, LLC will be the lessee to the Petitioner/Contractor Purchaser Al. Neyer, LLC.

Boone has enjoyed steady growth over the past 10 years. We currently serve almost 2,500 clients with nearly 3,200 pets! We are open Monday, Tuesday and Thursday 8:00 am- 7:00 pm, Wednesday and Friday 8:00 am- 6:00 pm and Saturdays 8:00 am-- noon. We are closed on Sunday. Boone sees on average 100 clients per week for both wellness and illness exams and perform about 20 surgeries in a week's time. Our business has outgrown our current location and the building itself is physically and functionally obsolete for our use.

Although we have enjoyed almost 60 years in our current location, the time has come for us to find a new home. Our clients are primarily residents of the area and it is important to us to stay close to them. 4720 Commonwealth Avenue will allow us to remain close to our clients and patients and enjoy a larger state of the art facility to accommodate our expanding animal care practice. Our hours of operation will remain about the same. We do not intend to extend our hours into the evening or take after hour or night time emergencies.

The inside of the building will have 5 exam rooms and a "comfort suite" for clients to use with their pets for private conversations or euthanasia. There will be 2 surgical suites, 1 will be used for our Board Certified Surgeon, Dr. Andrea Hayes, she has been with Boone for 25 years. The other surgical suite will be shared by our other staff Veterinarians, doing routine surgeries Monday through Friday. We will have runs and cages for dogs and cats. Boone rarely hospitalizes overnight we do not have overnight staff but, on occasion there might be a stabilized patient left for the evening. We will not be a boarding facility or provide dog day care or other kennel service. Boone prides itself on being a good neighbor, we have never had a noise complaint and we currently have a family living on the second floor above us along with adjacent Townhomes. The treatment room will be spacious and updated allowing for better service to our patients. There will also be offices for the doctors and manager. Lastly an outdoor area will be located on the west side of the building facing the conservation area and Flg Creek and will be fenced in with an eight foot solid pvc. When this area is utilized Dogs will always be attended with supervision.

The Petitioner/Applicant, Jim Neyer is the contract purchaser of the property located at 4700 Commonwealth Avenue. The Property is a partially improved lot that is part of a Planned Unit Development known as "Bright Horizons at Western Springs". Mr. Neyer entered into a contract with the property owner in order to submit this petition.

The Property is currently Lot 2 of 2 as part of the Western Springs Medical Center, a planned unit development based off of C-2 Zoning. The PUD includes Bright Horizons Day Care on Lot 1 to the north and it is surrounded by: (a) "Spring Rock Park" to the North, zoned R-2, (b) Single family housing to the east which is zoned R-2, (c) single family housing which is zoned A to the south, and (d) Flag Creek Conservation area to the west.

Mr. Neyer intends to build an animal hospital on the Property that will be architecturally compatible with the adjacent Bright Horizon's child care facility and the surrounding residential neighborhood. The proposed building has been designed to have rooflines, coloring, lighting, exterior building materials, windows and grounds that are compatible with the surrounding land uses. Existing parking is adequate to support the propose Animal Hospital/Veterinary Office use. The previously developed parking lot provides 42 spaces dedicated to our site. Our proposed use only requires 19. The management of stormwater on the property is addressed through the use of underground storm pipes routed to a detention area thus limiting the potential

for negative impacts on adjoining properties. Mr. Neyer is aware that a possible condition of approval could include a revocation of the conditional use permit allowing the Animal Hospital if it should cease to operate. In this case, any future use would be required to petition the Village Board for a new conditional use permit.

## II.    PETITION FOR REQUESTED ZONING RELIEF

The applicant requests that zoning relief be granted for the construction of the Boone Animal Hospital on the Property:

**(1)** for a major change to an existing Conditional Use / Planned Development previously approved and amended by the Village of Western Springs under Ordinance Number 14-2750, Ordinance Number 11-2621, Ordinance Number 08-2497, and Ordinance Number 01-2162 with regard to the property commonly known as 4700 and 4720 Commonwealth Avenue, Western Springs, Illinois, which is more fully described below (the "Property"), to allow for the construction of an approximate 4,700 square foot one story, building located on Lot 2 of the Property that will house an animal hospital and veterinarian offices; **(2)** for a new conditional use permit for Lot 2, amending the existing Conditional Use / Planned Development, to construct and operate an animal hospital and veterinarian offices within the C-2 Community Shopping District, which is a permitted conditional use under Section 10-7-2(B) of the DCO; **(3)** to amend the previously approved Conditions of Final Approval for the existing Conditional Use Permit for a Planned Development of the Property to require such conditions and regulations as are reasonable in regard to the proposed animal hospital use and veterinarian office use; and **(4)** for such other exceptions from the use, bulk and site design requirements contained in the DCO that are necessary to permit the construction a new building and the operation of an animal hospital and veterinarian offices on Lot 2 as raised at the hearing.

The granting of the Conditional Use Permit will further the normal and orderly development of the area. Approval will allow the property to be developed to the benefit of the entire community.

There are adequate existing public utilities and access roads already serving the Property. The proposed development will not adversely affect the property values of the surrounding properties since the new construction will be designed to blend in and complement the surrounding residences and adjacent commercial uses. The proposed animal hospital is intended to provide a benefit to the overall Village by continuing an excellent tradition of animal care, with a long standing Western Spring's business.

The applicant requests that signage as proposed including Monument sign for Bright Horizons and Boone Animal Hospital on 47th Street be part of the approved site development recommendation.

The applicant requests any other exceptions or variations from the other use, bulk and site design requirements contained in the DCO that are necessary to permit the construction of the proposed animal hospital, but does not believe at this time that any such other zoning relief is necessary.

## III.    CONDITIONAL USE PERMIT STANDARDS

Pursuant to Section 10-3-14(G) of the DCO, the following Standards need to be satisfied in order for the Village Board to approve a Conditional Use Permit:

1.      **That the establishment, maintenance, or operation of the conditional use will not be detrimental to, or endanger the public health, safety, morals, comfort, or general welfare.**

The establishment, maintenance, or operation of the proposed Animal Hospital will not be detrimental to, or endanger the public health, safety, morals, comfort, or general welfare. In fact, the proposed animal hospital will offer convenient and essential health services to resident's pets in the community. Boone animal hospital currently operates safely within the Village of Western Springs and has not been a detriment to the neighborhood or community.

2.      **That the conditional use will not be injurious to the uses and enjoyment of other property in the immediate vicinity for the purposes already permitted, nor substantially diminish and impair property values within the neighborhood in which it is to be located.**

The existing operation of Boone Animal Hospital at 905 55th St, Western Springs confirms that the proposed animal hospital will not be injurious to the uses and enjoyment of other property in the immediate vicinity for the purposes already permitted, nor substantially diminish and impair property values within the neighborhood in which it is to be located. Mr. Neyer intends to build an animal hospital on the Property that will be architecturally compatible with the adjacent Bright Horizon's child care facility and the surrounding residential neighborhood. The proposed building has been designed to have rooflines, coloring, lighting, exterior building materials, windows and grounds that are compatible with the surrounding land uses.

3.      **That the establishment of the conditional use will not impede the normal and orderly development and improvement of the surrounding property for uses permitted in the district.**

The establishment of the animal hospital, will not impede the normal and orderly development and improvement of the surrounding property for uses permitted in the district. The adjacent properties are fully developed.

4.      **That adequate public utilities, access roads, drainage and/or necessary facilities have been or will be provided.**

Adequate public utilities, access roads, drainage and/or necessary facilities have been or will be provided to the Property by the applicant as a part of the development. The proposed land use proposes a reduction in impervious area from the 2 story office building that was approved as part of the amended planned unit development with a smaller foot print and less required parking.

5.      **That adequate measures have been or will be taken to provide ingress and egress so designed as to minimize traffic congestion in the public streets.**

The PUD was originally design to sufficiently address ingress and egress. The proposed animal hospital use is appointment driven and does not have dramatic peak traffic times rather a

steady low rate flow. Refer to traffic report for more detail. The proposed land use will generate approximately 5 more trips total (in and out) during the morning peak hour and one more trip total (in and out) during the evening peak hour. Because the vehicle trip generation is nearly identical to that originally project, the impact on the adjacent roadway network will be the same as what was presented in the original traffic study.

6.     **That the proposed conditional use is not contrary to the objectives of the current comprehensive plan for the Village of Western Springs.**

The construction and operation of the proposed Animal Hospital at the Property is not contrary to the objectives of the current comprehensive plan. The amendment is consistent with the Village's DCO - C2 district zoning regulations which include Animal Hospitals as a listed conditional use. Overall the comprehensive plan promotes economic development with new development that provides essential services, jobs,...

7.     **That the conditional use shall, in all other respects, conform to the applicable regulations of the district in which it is located, except as such regulations may, in each instance, be modified pursuant to the recommendations of the plan commission and approved by the village board.**

The construction and operation of the proposed animal hospital will conform to the applicable regulations of the Planned Unit Development and Western Springs DCO, except as such regulations may be modified pursuant to the recommendations of the Plan Commission and approved by the Village Board.

## IV.     PLANNED UNIT DEVELOPMENT GUIDELINES

Pursuant to Section 10-8-3 of the DCO, the following guidelines have been established in order for the Village Board to evaluate the suitability of proposed planned developments:

a.     **The planned development should be compatible with the character of the underlying zoning district in which it is located.**

The amendment is consistent with the Village's DCO - C2 district zoning regulations which include Animal Hospitals as a listed conditional use.

b.     **The planned development should be consistent with the official planning policies and the Official Land Use Plan of the Village.**

The amendment is consistent with the Village's DCO - C2 district zoning regulations which include Animal Hospitals as a listed conditional use.

c.     **The planned development should preserve the value of surrounding residential area.**

The existing operation of Boone Animal Hospital at 905 55th St, Western Springs confirms that the proposed animal hospital will not be injurious to the uses and enjoyment of other property in the immediate vicinity for the purposes already permitted, nor substantially diminish and impair property values within the neighborhood in which it is to be located. Mr. Neyer intends to build an animal hospital on the Property that will be architecturally compatible with the adjacent Bright Horizon's child care facility and the surrounding residential neighborhood. The proposed building has been designed to have rooflines, coloring, lighting, exterior building materials, windows and grounds that are compatible with the surrounding land uses.

      d.    **Any unusual physical, topographical or historical features of the site of the planned development which are of importance to the people of the area or the community should be preserved.**

The proposed use works with-in the previously approved foot print that was established with the medical office use and requires less parking than that plan. The preservation easement boundry is being maintained in this proposal and site work will include prescribed maintenance to those areas as defined by the Village of Western Springs Planning department review.

      e.    **Yards along the periphery of a planned development should be compatible with the yards of adjacent properties.**

The proposed use conforms to previously established and approved reguations for yard requirements. This project seeks no variation from these regulations.

     **V.   CONCLUSION**

Jim Neyer requests that the Corporate Authorities approve the zoning relief requested above so that an Animal Hospital can be constructed on the Property.

By: _____
   Jim Neyer, Al. Neyer, LLC

Date:_____July 8_____, 2016.

## EXHIBITS TO APPLICATION

<u>Exhibits:</u>

<u>Exhibit "1"</u> – Acknowledgement of Fees

<u>Exhibit "2"</u> – General Information Application

<u>Exhibit "3"</u> – Boone Animal/Pet Partners Letter

<u>Exhibit "4"</u> – Property Owner Release

<u>Exhibit "5"</u> – Traffic Report prepared by KLOA

<u>Drawing Exhibits:</u>

<u>Exhibit "A"</u> – Bright Horizons reference site plan dated: 2/14/2014

<u>Exhibit "B"</u> – Planned Development Plan, Western Springs Medical Center

<u>Exhibit "C"</u> – Land Use Plan prepared by Linden Group

<u>Exhibit "D"</u> – Architectural Site Plan prepared by Linden Group

<u>Exhibit "E"</u> - 1st Floor Plan prepared by Linden Group Architects.

<u>Exhibit "F"</u> - Elevations prepared by Linden Group Architects.

<u>Exhibit "G"</u> –Elevations prepared by Linden Group Architects.

<u>Exhibit "H"</u> – 3-D Perspective prepared by Linden Group Architects.

<u>Exhibit "I"</u> – Preliminary Engineering Plan by Advantage Engineering

<u>Exhibit "J"</u> –Landscape Plan prepared by prepared by EEA

<u>Exhibit "K"</u> –Site Lighting Photometric Plan

April 4, 2016

Mr. Martin Scott
Director of Community Development
Village of Western Springs, Illinois 60558

Re: Boone Animal Hospital conditional use/ amendment

Dear Mr. Scott,

Boone Animal Hospital has been a thriving business in Western Springs since 1959. We are currently located on 55th Street and Wolf Road. We are hoping to relocate our Veterinary Hospital to a newly built facility at 4700 Commonwealth Avenue, Western Springs. I am writing to the Village so that we may begin the process of granting Boone a conditional use permit for that address.

Please allow me to tell you a bit about Boone Animal Hospital. Dr. Ernest Boone opened our doors to the community of Western Springs in 1959. He practiced with four exam rooms until the mid-1970's when he sold his practice and the building that housed it to two veterinarians, Dr. James Pass and Dr. Kathy Fauth who continue to own the building at 905 55th Street.

In 2006 Dr. Pass and Dr. Fauth sold the practice to Pet Partners, LLC located in Wilton, New York. Drs. Pass and Fauth remain the building owners and Pet Partners is leasing the 55th St. facility from them. Dr. Pass has retired however, Dr. Fauth still works as a part-time Associate Veterinarian, we anticipate her moving to the new facility with us.

Boone has enjoyed steady growth over the past 10 years. We currently serve almost 2,500 clients with nearly 3,200 pets! We are open Monday, Tuesday and Thursday 8:00 am- 7:00 pm, Wednesday and Friday 8:00 am- 6:00 pm and Saturdays 8:00 am– noon. We are closed on Sunday. Boone sees on average 100 clients per week for both wellness and illness exams and perform about 20 surgeries in a week's time. Our business has outgrown our current location and the building itself is functionally obsolete for our use. Pet Partner's 10 year lease term is up at the end of this year.

Although we have enjoyed almost 60 years in our current location, the time has come for us to find a new home. Our clients are primarily residents of the area and it is important to us to stay close to them. 4700 Commonwealth Avenue will allow us to remain close to our clients and patients and enjoy a larger state of the art facility to accommodate our expanding animal care

practice. Our hours of operation will remain about the same. We do not intend to extend our hours into the evening or take after hour or night time emergencies.

We are proposing a single story building of approximately 5,000 square feet to be erected on the site. It will be built on a slab without a basement. The exterior of the building will complement the Day Care that shares the parking lot. The exterior of the building will closely resemble the original drawing that was approved on the PUD in 2001. A privacy fence will be established where our technicians will walk our patients on a leash. At no time will dogs be left to run or gather in the yard unsupervised, this practice eliminates any barking.

The inside of the building will have 5 exam rooms and a "comfort suite" for clients to use with their pets for private conversations or euthanasia. There will be 2 surgical suites, 1 will be used for our Board Certified Surgeon, Dr. Andrea Hayes, she has been with Boone for 25 years. The other surgical suite will be shared by our other staff Veterinarians, doing routine surgeries Monday through Friday. We will have runs and cages for dogs and cats. Boone rarely hospitalizes overnight we do not have overnight staff but, on occasion there might be a stabilized patient left for the evening. We will not be a boarding facility. Boone prides itself on being a good neighbor, we have never had a noise complaint and we currently have a family living on the second floor above us. The treatment room will be spacious and updated allowing for better service to our patients. There will also be offices for the doctors and manager.

I look forward to growing Boone Animal Hospital and continuing our dedicated service to the clients and pets of Western Springs and the surrounding area. Please let me know what I can to help the process and I welcome your calls to answer any additional questions.

I thank you for your time and look forward to working with you.


Sincerely,


Brenda Smaller
*Practice Manager*

**Boone Animal Hospital**
905 55th Street
Western Springs, IL 60558
708-246-5445



CONCEPTUAL ELEVATION

MEDICAL OFFICE
4700 COMMONWEALTH AVE.
WESTERN SPRINGS, IL 60558

P-3.0



9575 West Higgins Road, Suite 400 · Rosemont, Illinois 60018
p 847-518-9990 f 847-518-9987

MEMORANDUM TO:    Michael Matthys
                             Linden Group Architects

FROM:                Javier Millan
                             Senior Consultant

                             Luay R. Aboona, PE
                             Principal

DATE:                May 10, 2016

SUBJECT:          Trip Generation Comparison Evaluation
                             Boone Veterinary Clinic
                             Western Springs, Illinois

This memorandum summarizes the results of a trip generation comparison evaluation prepared by Kenig, Lindgren, O'Hara, Aboona, Inc. (KLOA, Inc.) for the proposed Boone Veterinary Clinic to occupy Lot 2 of a site located in the southwest quadrant of the intersection of 47th Street and Commonwealth Avenue in Western Springs, Illinois. In 2014, KLOA, Inc. conducted a traffic study for the Bright Horizon daycare center to the north which also included the development of a 6,000 square-foot medical office building. The daycare center is currently operational and the new plan for Lot 2 calls for a 4,694 square-foot veterinary clinic.

The purpose of this memorandum is to identify the change in estimated vehicle trip generation as a result of a change in use and to determine if the findings in the original traffic study remain the same.

**Trip Generation Estimate**

The amount of traffic that will be generated by the proposed veterinary clinic was estimated using trip generation rates (Land Use Code 640) published by the Institute of Transportation Engineers (ITE) in its 9th Edition of the *Trip Generation Manual*. **Table 1** shows a comparison of the previous proposed land use for Lot 2 and the current proposed land use.

**Evaluation**

As shown in Table 1, the proposed land use will generate approximately five more trips total (in and out) during the morning peak hour and one more trip total (in and out) during the evening peak hour. Because the vehicle trip generation is nearly identical to that originally projected, the impact on the adjacent roadway network will be the same as what was presented in the original traffic study, and the findings and conclusions presented in the traffic study stating that the existing roadways will be adequate to accommodate the future traffic volumes are still valid.

Table 1
VEHICLE TRIP GENERATION COMPARISON OF LOT 2 DEVELOPMENT PLAN

| Land Use Plan | ITE Land Use Code | Weekday Morning Peak Hour | | | Weekday Evening Peak Hour | | |
|---|---|---|---|---|---|---|---|
| | | In | Out | Total | In | Out | Total |
| Original Plan (6,000 s.f. Medical Office Building) | 720 | 11 | 3 | 14 | 6 | 15 | 21 |
| Current Plan (4,694 s.f. Veterinary Clinic) | 640 | 14 | 5 | 19 | 9 | 13 | 22 |
| **Difference:** | | **+3** | **+2** | **+5** | **+3** | **-2** | **+1** |

**Affidavit of Kathleen Fauth**



State of Illinois

County of Cook

I, Kathleen Fauth of Western Springs, IL, MAKE OATH AND SAY THAT

1.  I am over the age of 18 and am a resident of the state of Illinois. I have personal knowledge of the facts here in.
2.  I am a licensed veterinarian and former owner of Boone Animal Hospital. The following statements are in regard to the Application for Land Use and Development made by Jim Neyer concerning 4700 to 4720 Commonwealth Ave. Western Springs, IL.
3.  In section I it is stated that Dr. Boone sold the hospital in the mid 1970's. In fact he sold the business in the l980s.
4.  In section I it is stated that the hospital opens at 8:00AM. In fact surgical patients and patients undergoing certain laboratory tests are routinely admitted before 8:00AM. It is also stated that "we do not intend to extend our hours into the evening or take after hour or night time emergencies." Mars, Incorporated, recently acquired Pet Partners LLC. Mars now owns six animal hospitals in the Chicago area. Three of those hospitals, Blue Pearl Veterinary Partners, in Northfield, Skokie and Elk Grove Village, are open twenty-four hours a day seven days a week.
5.  It is also stated in section I that the hospital sees 100 patients for exams and about 20 surgical patients a week. The hospital performs an additional 60-80 transactions a week as pet owners come to buy prescriptions, pet food or supplies, and deliver samples to be submitted to the laboratory.
6.  It is stated that "we have never had a noise complaint." Boone Animal Hospital has received noise complaints from the residents of the second floor apartments.
7.  In section III, item 1 states the conditional use will not be detrimental to public safety, comfort or general welfare. The increased car and truck traffic will increase the likelihood of collisions between vehicles, or between vehicles and pedestrians or bicyclists.
8.  The increased noise created by dogs in the parking area and the outdoor exercise area will impair the ability of nearby homeowners to enjoy outdoor activities.
9.  Section III, item 5 refers to ingress and egress of traffic to avoid congestion and references Exhibit 5, a vehicle trip generation comparison. The comparison is fatally flawed. It states that there will be an ingress of 14 vehicles and an egress of 5 vehicles during a peak weekday morning. In fact on July 21, 2016 the current facility experienced ingress of 20 vehicles and egress of 7 vehicles



between 7:45AM and 8:45AM. The actual traffic exceeded the estimate by 43% for ingress and 40% for egress. Additional truck traffic will also be generated as the facility receives drugs, supplies and pet food. A truck from the pet cemetery will collect the bodies of deceased animals.

Signature of Individual

*Kathlen Fauth*

Date

*7/25/2016*

"OFFICIAL SEAL"
TRACY N. KELLY
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 10/03/2016

Notary Public

*— 7/25/16*

Title and Rank

*Vice President*

Date of Commission Expiration

*10-03-2016*

Dear Neighbor,

I have concerns and comments about the relocation of Boone Animal Hospital from 55th Street to Commonwealth in Western Springs. I believe an animal hospital in that location will be disruptive to the adjacent school and also to the residents of the very nice homes in the immediate area.

This business employs 19-20 people, some of whom are part time. As these employees come and go throughout the day vehicles will pass the school and adjacent homes approximately 40 times. On some occasions people will leave during their break and return creating additional traffic.

The business currently performs about 200 transactions weekly. That means on most week days and Saturdays there will be about 40 cars entering and leaving the parking area and driving through the adjoining neighborhood. (Some clients leave their pets and make a return trip to pick them up and some visits are not included as transactions as they are part of a package.)

If the current hours of operation are maintained Monday, Tuesday and Thursday clients will be in the parking area from 7:30AM until 7:00PM or later. Friday they will be there from 7:30 AM until 6:00PM or later and Saturdays from 7:30 until 12:00PM. Some of these clients will have barking dogs, which may be disruptive to outdoor activities at the adjacent school or nearby homes.

Truck traffic will also increase. The business receives nearly daily deliveries of drugs, other supplies and/or pet food. A truck from the pet crematory will also be driving back and forth to collect the bodies of deceased animals.

In addition to dogs barking in the parking lot there will be an area where animals are walked outside while they are hospitalized. This may create additional disruption.

The business does not generate significant income for the community. Property taxes are paid on the real estate but unlike restaurants or retail establishments, only a very small portion of the revenue is derived from items that require a sales tax. Among current employees only one part time worker is a Western Springs resident

I live in Western Springs and would be very disappointed if the village zoning board allowed this business to relocate to a property across the street from my home. I would not want the additional traffic, noise pollution and congestion in my neighborhood. I believe the homeowners on Commonwealth and nearby likely have similar sentiments

The zoning board will meet on July 27th at 7:00 in the village board room. It is an open meeting and you are very welcome to attend and voice your opinions on this matter. In addition you can email Martin Scott, mscott@wsprings.com , with comments.

Your Western Springs Neighbor,

## OFFICIAL COMMISSION

**STATE OF ILLINOIS**
.........COOK........... COUNTY } ss.

**Village of**
.....WESTERN SPRINGS....

TO ALL TO WHOM THESE PRESENTS SHALL COME, GREETING:
.........MARK HENNING..........

having been duly ..... appointed ..................................... to the office of
.........Member of the Plan Commission.........
for the term from ..... April ... 2001 ... to ... June ..... 2004 .....
is hereby fully authorized and empowered to assume and perform all the duties of
this office according to law, and all persons are required to respect him in the
discharge of his duties.

Given under my hand and Seal of said Village this ... 24th...
day of ...April, 2001...

ATTEST: ...........................

President

**997V** P.F. PETTIBONE & CO. CHICAGO

Clerk



# WINSTON & STRAWN

43 RUE DU RHONE
1204 GENEVA, SWITZERLAND

444 SOUTH FLOWER STREET
LOS ANGELES, CALIFORNIA 90071-2911

200 PARK AVENUE
NEW YORK, NEW YORK 10166-4193

MARK G. HENNING
(312) 558-5793
mhenning@winston.com

35 WEST WACKER DRIVE
CHICAGO, ILLINOIS 60601-9703

(312) 558-5600

FACSIMILE (312) 558-5700

www.winston.com

21 AVENUE VICTOR HUGO
75116 PARIS, FRANCE

1400 L STREET, N.W.
WASHINGTON, D.C. 20005-3502

June 20, 2001

**BY FEDERAL EXPRESS**

Douglas A. Slansky
Brooks, Adams and Tarulis
101 North Washington Street
Naperville, IL 60540

      **Re:**    **Jackson v. Village of Western Springs**
             **No. 01 CH 8730 (Cook County, Ill.)**

Dear Doug:

      We represent Rhoads Development Company and Grosse's Great Outdoors, Inc. (d/b/a Vaughan's Garden Center) in connection with the above-referenced case. As you know, both companies have a substantial interest in the property at issue in the Jackson case, and we have been instructed to vigorously protect their rights.

      We consider the Petition for Injunctive Relief and Declaratory Judgment filed by you in this case to be wholly improper. It is warranted neither by existing law nor by a good-faith argument for the extension, modification, or reversal thereof. The complete factual and legal inadequacy of your petition indicates that it was filed only for improper purposes.

      As such, we request that you withdraw the case. If we do not hear from you that it has been withdrawn on or before June 26, 2001, we will file the attached Petition for Intervention and join in a Motion to Dismiss and for Sanctions anticipated by the Village of Western Springs. Should the case proceed, it is our intent to file a motion for bond in excess of $5,000,000.00 to protect the significant investments and rights of Rhoads and Grosse from the harm caused by this meritless case.

WINSTON & STRAW

Douglas A. Slansky
June 20, 2001
Page 2

We look forward to your prompt response.

Sincerely,

Mak g. Henning

Mark G. Henning

Enclosure

cc by fax:     Gurrie Rhoads
               Scott E. Grosse
               Michael T. Jurusik

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

STEPHEN M. JACKSON, )
)
        Plaintiff, )
)
v. )      No. 01 CH 08730
)      Hon. Richard Billick
VILLAGE OF WESTERN SPRINGS, )
)
        Defendant, )
)
   and )
)
RHOADS DEVELOPMENT COMPANY and )
GROSSE'S GREAT OUTDOORS, INC., )
)
        Defendant-Intervenors )

### PETITION TO INTERVENE

        Rhoads Development Company and Grosse's Great Outdoors, Inc. (collectively, "Defendant-Intervenors"), through their attorneys Winston & Strawn, respectfully petition this Court to intervene as defendants as a matter of right in the above-captioned matter, pursuant to 735 Ill. Comp. Stat. 5/2-408(a)(2). In the alternative, Defendant-Intervenors respectfully request that this Court, in its discretion, permit intervention pursuant to 735 Ill. Comp. Stat. 5/2-408(a)(2). In support of this Petition, Defendant-Intervenors attach their Motion to Dismiss (simply adopting and incorporating the motion to dismiss of Defendant Village of Western Springs) as their proposed initial pleading, and state as follows:

### INTRODUCTION

        1.     Plaintiff Stephen M. Jackson ("Jackson") seeks to have the Court invalidate an ordinance enacted by Defendant Village of Western Springs ("the Village") and, thereby, to prohibit development of certain property by Defendant-Intervenors for use as a combination office building/garden center. Should Jackson's requested injunctive and declaratory

relief be improvidently granted, Defendant-Intervenors would suffer unique and substantial losses of their investments (of time, effort and expense) and business opportunities in operating the office/garden center. Defendant-Intervenors should be permitted to intervene to protect those interests by participating in the instant litigation, including any bond hearing held regarding Jackson's claims for injunctive and declaratory relief.

2. Defendant-Intervenor Rhoads Development Company ("Rhoads") is the contract purchaser and developer of certain property located in the Village of Western Springs ("the Property"). Defendant-Intervenor Grosse's Great Outdoors, Inc. owns and operates Vaughans Garden Center, which has been doing business in the Village for over 100 years; Grosse's Great Outdoors, Inc. will be the owner or lessee of a portion of the Property for use as Vaughans Garden Center. (Grosse's Great Outdoors, Inc. and Vaughans Garden Center will be referred to collectively as "Vaughans.") Defendant-Intervenors have received the approval of the Village to develop the Property as a combination office building/garden center. (See Pet. Inj. Relief & Decl. J.; id. Exs. A, B.)

## DISCUSSION

3. Section 408 of the Illinois Code of Civil Procedure provides that anyone may intervene in an action, as a matter of right, when "the applicant will or may be bound by an order or judgment in the action," and the existing parties may not adequately protect the applicant's interest. See 735 Ill. Comp. Stat. 5/2-408(a)(2). An applicant may intervene where an action threatens an "injury to an enforceable right." See Joyce v. Explosives Tec. Int'l, 253 Ill. App. 3d 613, 625 N.E.2d 446, 449 (3rd Dist. 1993). "Private litigants are not generally permitted to rely upon other litigants to protect their interests...." Citibank Savings of Ill. v. First Chicago Trust Co. of Ill., 269 Ill. App. 3d 293, 299, 645 N.E.2d 1038, 1043 (1st Dist. 1995). The "basic tenet of the intervention statute is that it is remedial and should be liberally construed." Board of

2

Trustees of the Village of Barrington Police Pension Fund v. Illinois Dept. of Ins., 211 Ill. App. 3d 698, 570 N.E.2d 622, 630 (1st Dist. 1992).

     4.    Although Defendant-Intervenors share certain interests with the Village, Defendant-Intervenors have additional unique interests in defending against Jackson's action.

     5.    Specifically, Defendant-Intervenors have a right to develop the Property as an office/garden center. The Property is, and has been for many years, located in the C-2 commercial shopping district under the Development Control Ordinance ("DCO") of the Village. Under the C-2 zoning classification, the property may be used for office buildings and garden centers as a matter of right, and no zoning or land use relief is, or was, necessary to develop the property for the uses proposed by Defendant-Intervenors. Jackson purchased his land, which is adjacent to the Property, long after the Property was zoned under a C-2 classification; Jackson had at least constructive knowledge of the uses for the Property permitted by that classification (e.g., fast food restaurant, convenience store, office building, and garden center). Despite the C-2 classification, at the request of the Village, the Defendant-Intervenors voluntarily agreed to submit the Property to the Planned Unit Development ("PUD") process established under the Village's DCO. The PUD classification for the Property accommodates the unique design of the project and allows for flexibility in the application of some zoning and subdivision regulations. With limited exceptions, however, the Defendant-Intervenors did not request the Village to vary any regulations for the project; rather, Defendant-Intervenors agreed to the PUD process simply to better develop the Property for the permitted uses pursuant to a master plan, rather than in separate phases. (See Pet. Inj. Relief & Decl. J.; id. Exs. A, B.)

     6.    Further, Defendant-Intervenors have already invested substantial time, effort, and expense in planning the office/garden center development. As part of the formal PUD

process, the Defendant-Intervenors met with Village officials on numerous occasions. The Plan Commission of the Village conducted *five* public hearings on the PUD petition. Jackson, either personally or through his attorney, voiced his objections to the PUD petition at one or more of the public hearings. The issues raised by Jackson in this action were properly heard, considered and addressed by the Plan Commission. After considering (1) all the facts, (2) whether the proposed development satisfied each of seven standards for a conditional use set forth in the DCO (even though a conditional use is *not* necessary for the development of the uses proposed by Defendant-Intervenors), and (3) whether the proposed development satisfied each of six guidelines established under the DCO for a PUD, the Plan Commission unanimously recommended that the Village Board of Trustees approve the PUD. The Plan Commission approval was subject to *thirty-four* conditions, many of which were imposed to address issues raised during the public hearings, including: placement of an earthen berm to shield the Property from nearby landowners; restriction of delivery hours; installation of fencing to shield views of parking areas; and the establishment of a fund to reimburse nearby landowners for landscaping work installed by such landowners to shield their property from the Property. After considering the recommendation of the Plan Commission, conducting special meetings of the Planning and Zoning Committee of the Village Board of Trustees, and several additional public hearings at which Jackson had the opportunity to voice his concerns, the Village Board of Trustees unanimously approved the PUD. (See id.)

       7.     In reliance on the Village approval, Defendant-Intervenors have begun preparation for development of the Property. To date, they have invested over $200,000 in preparing and submitting various plans to the Village, preparing and finalizing engineering plans, obtaining Illinois Environmental Protection Agency and Metropolitan Water Reclamation

4

District of Greater Chicago permits, clearing trees from the site, placing contracting work for bid, and preparing and finalizing architectural plans. Anticipating the completion of the office/garden center development, Vaughans has moved from its long-time location to a temporary store-front location, suffering a loss of approximately fifty percent (50%) of its business compared to the previous two selling seasons. Further delay of the office/garden center development compounds these losses of income at a rate of approximately $57,000 per month for Rhoads as developer and at the rate of between $100,000 and $300,000 per month for Vaughans. Defendant-Intervenors' ability to obtain financing is threatened by the very existence of the instant action, creating the distinct possibility that they will not be able to take advantage of current low interest rates. Further, the delay threatens Defendant-Intervenors' ability to close on the purchase of the Property. When completed, the value of the project will be in excess of $5,000,000, with significant development fee income and long-term profit potential to both Rhoads and Vaughans. If the Court grants Jackson's requested relief, it will be prohibiting Defendant-Intervenors from proceeding with their business plans and causing them to abandon their current investments. Thus, Defendant-Intervenors have already suffered substantial economic harm unique to them because of this action, and will suffer even greater economic harm if Jackson's requested relief is granted; as such, they seek to intervene as of right. See generally Adams v. Cook County, 86 Ill. App. 3d 68, 407 N.E.2d 1018 (1st Dist. 1980) (holding that school district could intervene as of right in zoning litigation brought by landowner in opposition to approval of Planned Unit Development where district had interest in protecting safety of its students and restricting overcrowding of schools).

8.      Alternatively, even if the Court determines that Defendant-Intervenors may not intervene as a matter of right, an applicant may also be permitted to intervene, in the

Court's discretion, "when an applicant's claim ... and the main action have a question of law or fact in common." 735 Ill. Comp. Stat. 5/2-408(a)(2). In conjunction with the instant Petition, Defendant-Intervenors' attached proposed Motion to Dismiss demonstrates that the Defendant-Intervenors share many legal and factual issues with the Village. Accordingly, this Court should exercise its discretion and permit Defendant-Intervenors to intervene in this matter pursuant to 735 Ill. Comp. Stat. 5/2-408(a)(2).

        9.    Moreover, permitting intervention here will further the purposes of Section 408, which are "to expedite litigation and to prevent a multiplicity of lawsuits." Padilla v. Norwegian-American Hospital, Inc., 266 Ill. App. 3d 829, 832, 641 N.E.2d 572, 574 (1st Dist. 1994) (citation omitted). If not permitted to intervene in this action, Defendant-Intervenors will be compelled to initiate a separate action seeking a declaratory judgment that they may proceed with the office/garden center development and seeking relief from Jackson's baseless interference with their rights. This duplication of litigation would undermine the goals of judicial economy and efficiency. Intervention will allow the future of the office/garden development to be resolved expeditiously in one case before one court.

## CONCLUSION

For the foregoing reasons, Defendant-Intervenors respectfully request that this

Court grant their Petition to Intervene in this matter.


Dated June ____, 2001

                                    Respectfully submitted,

                                    DEFENDANT-INTERVENORS RHOADS
                                    DEVELOPMENT COMPANY and
                                    GROSSE'S GREAT OUTDOORS, INC.


                                    By:_____
                                          One Of Their Attorneys

Mark G. Henning
David E. Koropp
Anne D. Cartwright
WINSTON & STRAWN
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600
Fax: (312) 558-5700
Firm Id: 90875

### CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that she caused a copy of the attached to be served before the hour of 5:00 p.m. on this _____ day of June, 2001 by Messenger at _____, Chicago, Illinois to:

Douglas A. Slansky
Brooks, Adams and Tarulis
101 North Washington Street
Naperville, IL 60540


                          _____
                          Attorney for Defendant-Intervenors

888845.3

TOTAL P.12

LAW OFFICES

## KLEIN, THORPE AND JENKINS, LTD.

SUITE 1660
20 NORTH WACKER DRIVE
CHICAGO, ILLINOIS 60606-2903

TELEPHONE (312) 984-6400
FACSIMILE (312) 984-6444
FACSIMILE (312) 606-7077

PATRICK A. LUCANSKY
E. KENNETH FRIKER
GERARD E. DEMPSEY
TERRENCE M. BARNICLE
BRUCE A. ZOLNA
JAMES P. BARTLEY
RICHARD T. WIMMER
MICHAEL J. DUGGAN
THOMAS P. BAYER
DENNIS G. WALSH
SCOTT F. UHLER
EVERETTE M. HILL, JR
JANET N. PETSCHE
JAMES V. FEROLO
MICHAEL T. JURUSIK

RINDA Y. ALLISON
THOMAS M. MELODY
LANCE C. MALINA
SIMONE M. BOUTET
DAVID J. PIAY
KATHLEEN T. HENN
JOHN R. WIRTOR
GEORGE A. WAGNER
JAMES G. WARGO

OF COUNSEL
ARTHUR C. THORPE
PHILIPPE R. WEISS

ORLAND PARK OFFICE
15010 S. RAVINIA AVE., SUITE 17
ORLAND PARK, IL 60462-3162
TELEPHONE (708) 349-3888
FACSIMILE (708) 349-1906

WRITER'S DIRECT DIAL
(312) 984-6432

WRITER'S E-MAIL
mtjurusik@ktjnet.com

June 21, 2001

## VIA FACSIMILE (630) 335-7843 AND US MAIL

Douglas A. Slansky
Brooks, Adams and Tarulis
101 North Washington Street
Naperville, Illinois 60540

RE: Jackson v. Village of Western Springs; Case No. 01 CH 8730

Dear Mr. Slansky,

I am the attorney for the Village of Western Springs.

I consider the Petition for Injunctive Relief and Declaratory Judgment filed by you in this case to be in violation of Illinois Supreme Court Rule 137. It is warranted neither by existing law nor by a good-faith argument for the extension, modification, or reversal thereof. Based on your attendance at all of the relevant zoning proceedings and familiarity with zoning matters, there is no excuse for the misstatement of facts or the mischaracterization of Illinois zoning law in the Petition. The complete factual and legal inadequacy of the Petition indicates that it was filed only to harass the Village and to delay the development.

The Village has instructed me to aggressively defend this lawsuit and to seek sanctions against you and Mr. Jackson if the Petition is not voluntarily dismissed. I would urge you to dismiss the Petition or withdraw as counsel for the plaintiff in the case.

As you know by now, Rhoads Development Company and Grosse's Great Outdoors, Inc. have a substantial interest in the property at issue in this case, and they have retained Winston & Strawn to protect their rights. As I am sure you have explained to your client, Mr. Jackson

July 13, 2000

President Milano and Village Trustees
Village of Western Springs
740 Hillgrove Avenue
Western Springs, IL 60558

Subject: Commercial Development of Commonwealth
          Avenue between 47th and 48th Streets

Dear President Milano & Trustees,

With the recent activity and changes taking place at the Garden Market, there has been renewed interest in developing the Commonwealth area between 47th and 48th Streets commercially. As a result of the review process for the RPUD south of 48th Street, there were several documents discouraging commercial development in this area.

In a Village Development Review Team Summary dated May 30, 1991, it is stated that "The portion of the site zoned "C Commercial" for the Commonwealth area is inappropriate for commercial use and should be combined with the southern portion of the site to form one residential site." I am enclosing a copy of this summary for your review. This is also stated in the current Village Land Use Plan and map under Specific Land Use Recommendations. The Policy of the Land Use Plan is "to preserve and maintain the basic high quality single-family residential character of the Village of Western Springs."

With the approval to develop the RPUD by the Commonwealth Avenue Venture, Resolution No. 91-1211 was passed on November 11, 1991. As part of this resolution, the New Commonweath Avenue was relocated to its current location providing the 47th Street entrance into the area. "Old" Commonweath Avenue, located west of "New" Commonwealth Avenue was not vacated by this resolution. Instead condition no. 57 of Exhibit "A" of the Resolution, Conditions of Approval, states that "The Village will consider vacation of Old Commonwealth between 47th Street and 48th Street at such time that a proposal to develop the property consistent with the Land Use Plan is received."

In view of the recent development of single-family residential property on the east side of the New Commonwealth Avenue between 47th and 48th Streets, I believe that it would be appropriate to develop the area to the west according to the current Land Use Plan.

I would appreciate notification of any public meetings to discuss this matter. Thank you for your consideration in this matter.

Sincerely yours,

Robert L. Sherwood
4724 Fair Elms Avenue
Western Springs, IL 60558
708/246-6720

**WARRANTY DEED**
(Illinois)
(Corporation to Trust)

**THE GRANTOR, THE VILLAGE OF WESTERN SPRINGS**

a municipal corporation created and existing under and by virtue of the laws of the State of Illinois and duly authorized to transact business in the State of Illinois, for and in consideration of TEN and No/100 ($10.00) DOLLARS, and other good and valuable consideration in hand paid, and pursuant to authority given by the Board of Directors of said municipal corporation CONVEYS and WARRANTS to

**96659666**

. DEPT-01 RECORDING                    $23.00
. T#0012  TRAN 1855 08/28/96 11:58:00
. #2744 ; CG  *-96-659666
.     COOK COUNTY RECORDER

**THE FIRST NATIONAL BANK OF EVERGREEN PARK, AS TRUSTEE UNDER TRUST AGREEMENT DATED MAY 25, 1995, AND KNOWN AS TRUST NO. 14360**, of Evergreen Park, Illinois,

the following described Real Estate situated in the County of **Cook** in the State of **Illinois**, to wit:

LOTS 1, 2, 3, 4, 5, 7, AND 8 IN WATERFORD RESUBDIVISION OF THAT PART OF BLOCK 2 IN FOREST HILLS COMMERCIAL AND PARK DISTRICT SUBDIVISION OF PART OF SECTION 7, TOWNSHIP 38 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.;

Subject to (a) General Real Estate Taxes not due and payable after date hereof; (b) Special Assessments confirmed after ; (c) Building, building line and use or occupancy restrictions, conditions and covenants of record; (d) Zoning laws and Ordinances; (e) Easements for public utilities; (f) Drainage ditches, feeders, laterals and drain tile, pipe or other conduit; (g) If the property is other than a detached, single-family home, party walls, party wall rights and agreements; terms, provisions, covenants and conditions of the declaration of condominium, if any, and all amendments thereto; any easements established by or implied from the said declaration of condominium or amendments thereto, if any; limitations and conditions imposed by the Illinois Condominium Property Act, and if applicable: installments of assessments due after the date of closing;

Permanent Real Estate Index Number(s):          18-07-200-022-0090          **C.T. & T CO**

Address(es) of Real Estate:          47th Street and Commonwealth Avenue, Western Springs, IL. 60558

In Witness Whereof, said Grantor has caused its corporate seal to be hereto affixed, and has caused its name to be signed to these presents by its President, and attested by its Clerk, this _14_ day of _August_ , 19_96_ .

IMPRESS
CORPORATE SEAL
HERE

**THE VILLAGE OF WESTERN SPRINGS**

BY: _____
                    David W. Lawrence, Village President

ATTEST: _____
                    Jeanine M. Jasica, Village Clerk

Exempt under provisions of Paragraph (b) (1), Section 31-45 of the Property Tax Code.

_8/23/96_          _____
Date          Buyer, Seller, or Representative

**BOX 333-CTI**



EXHIBIT
I

**STATE OF ILLINOIS** )
                     )
**COUNTY OF** Cook )

I, the undersigned, a Notary public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that **DAVID W. LAWRENCE**, personally known to me to be the Village President of the Village of Western Springs municipal corporation, and **JEANINE M. JASICA**, personally known to me to be the Village clerk of the Village of Western Springs municipal corporation and personally known to me to be the same persons whose names are subscribed to the foregoing instrument, appeared before me this day in person, and severally acknowledged that as such Village President and Village Clerk, they signed and delivered the said instrument and caused the corporate seal of said municipal corporation to be affixed thereto, pursuant to authority given by the Trustees of said corporation, as their free and voluntary act, and as the free and voluntary act and deed of said municipal corporation, for the uses and purposes therein set forth.

Given under my hand and official seal, this _1st_ day of _August_, 19 _96_.

> "OFFICIAL SEAL"
> Carolyn E. Sullivan
> Notary Public, State of Illinois
> My Commission Expires 1/25/97

_Carolyn E. Sullivan_
NOTARY PUBLIC

My Commission Expires _1-25-97_

This instrument was prepared by:

**Robert R. Ekroth, Esq., EKROTH & OSBORNE, LTD.**
15 Salt Creek Lane, Suite 122, Hinsdale, Illinois 60521

**MAIL DEED TO:**

Trust Department of the
First National Bank of Evergreen Park
3101 W. 95th Street
Evergreen Park, IL. 60642

**SEND SUBSEQUENT TAX BILLS TO:**

Trust Department of the
First National Bank of Evergreen Park
3101 W. 95th Street
Evergreen Park, IL. 60642

96653666



EXHIBIT
J





Typical GLARE from Headlights / Daytime Running Lights directed at Plaintiff's home after retaining wall height reduced by about half (taken by neighbor)



Industrial Equipment Running 24/7 and Trash Dumpster in front of Building



Refueling truck parked idling outside Plaintiff's home.



5:11 am Diesel Refueling – Re-Zoning App. Sign buried in snow pile

Generator operating 24/7






IMPROPER TRAFFFIC STUDY PHOTOGRAPHS – Manual Traffic Counts flawed by "counter" snoozing and talking with Police. Other Village use PICO meters.





Removal of three (3) trees [required by previous Planned Development Ordinance] using Village of Western Springs equipment (3 trucks and 1 tree chipper); plus four (4) employees from the 4700 Commonwealth Ave. private property on September 16, 2016.
Village of Western Springs cleaning overgrown sidewalks September 12, 2012 (lower right), private property owners' responsibility.



EXHIBIT A

Trulia: 07/03/2015 TRULIA Est. Value $1,000,523.00

Join or Sign In   Mobile Apps   For REALTORS®

| com | Homes | Rentals | Mortgage | Find REALTORS® | Advice beta | Moving | More |

For Sale    Address, City, Zip, or Neight.

# 4705 Commonwealth Ave

Western Springs, IL 60558



Estimated Value **$868,008**

| | |
|---|---|
| Status: | Not For Sale |
| Beds: | 4 Bed |
| Baths: | 3 Bath |
| House Size: | 3,117 Sq Ft |
| Lot Size: | 8,289 Sq Ft Lot |

## Property Details

| | | | |
|---|---|---|---|
| **Beds** | 4 bed | **Baths** | 3 bath |
| **House Size** | 3,117 Sq Ft | **Lot Size** | 8,289 Sq Ft Lot |
| **Estimated Value** | $868,008 | **Value/sqft** | $278 |
| **Property Type** | Single Family Home | **Year Built** | 2000 |
| **Neighborhood** | Not Available | **Style** | Traditional |
| **Stories** | 2 | | |

## Estimated Value

| Last Updated | Estimate |
|---|---|
| December 8, 2012 | $868,008 |

Property values provided are estimates only and are based on available public records data. No warranties or guarantees are made regarding the accuracy of any estimated values, and estimated values should not be relied on or used for appraisal purposes.

## Other Homes on Commonwealth

| 4709 Commonwealth Ave | 4711 Commonwealth Ave | 4701 Commonwealth Ave |
|---|---|---|
| 3 Bath,3522 Sq Ft | 2 Bath,3501 Sq Ft | 4 Bed,3 Bath,3082 Sq Ft |
| | | **For Sale** |
| | | **$835,900** |
| 4715 Commonwealth Ave | 4827 Commonwealth Ave | 4823 Commonwealth Ave |
| 3 Bath,2843 Sq Ft | | |
| 4823 Commonwealth Ave | 4825 Commonwealth Ave | 4825 Commonwealth Ave |

# EXTERNAL OBSOLESCENCE DAMAGE MODEL - MARKET ABSTRACTION - MATCHED PAIR ANALYSES

| | Matched Pair A (Corner Parcels) | | Matched Pair B (Interior Parcels) | | |
| --- | --- | --- | --- | --- | --- |
| | Sale 1 | Sale 2 | Sale 3 | Subject Property | Current Listing |
| Address | 4700 Fair Elms Ave. | 4701 Commonwealth Ave. | 4712 Fair Elms Ave. | 4705 Commonwealth Ave. | 4525 Central Ave. |
| | Western Springs, IL | Western Springs, IL | Western Springs, IL | Western Springs, IL | Western Springs, IL |
| Schools, School Districts, and Distances | Very Similar | Very Similar | Very Similar | Very Similar | Very Similar |
| Home Square Feet (above grade) | 1,872 | 3,082 | 2,060 | 3,117 | 3,648 |
| Date of Listing | 03/13/14 | 04/14/08 | 06/05/15 | On Market as of | On Market as of 07/15/16 |
| Date of Sale | 05/16/14 | 05/08/14 | 08/28/15 | 10/01/16 | On Market |
| Time on Market (Days) | 64 | 2,215 | 84 | | |
| Time on Market (Months) | 2 | 73 | 3 | | |
| **Faces Commercial Property** | No | Yes | No | Yes | No; 4th House from RR Tracks |
| Commercial Property Vacant 2009 - Nov. 2014 | Vacant at Sale | Vacant at Sale | Occupied | Occupied | N/A |
| Year Completed | 1968 | 2003 | 1968 | 2000 | 2016 |
| Age at Sale (years) | 46 | 11 | 47 | 16 | 0 |
| Sale Price (Unadjusted) | $612,000 | $664,200 | $677,500 | Imputed Sale Price $700,000 | $1,699,000 |
| Sale Price per Sq. Ft. (Unadjusted) | $326.92 | $215.51 | $328.88 | $224.57 | $465.73 |
| | 18-07-200-032-0000 | 18-07-200-043-0000 | 18-07-200-034-0000 | 18-07-200-044-0000 | 18-06-415-004-0000 |
| Lot Dimensions (approx.) | 70 X 150 feet | 80 X 110 feet | 63 X 150 feet | 75 X 110 feet | 50 X 134 feet |
| Square Footage (approx.) | 10,500 | 8,800 | 9,450 | 8,250 | 6,700 |
| Bedrooms and Baths | 4 / 2.5 | 4 / 2.5 | 4 / 2.5 | 4 / 2.5 | 4 / 3 |
| Room Count | 8 | 9 | 9 | 10 | 11 |
| Property Rights Conveyed | Fee Simple | Fee Simple | Fee Simple | Fee Simple | Fee Simple |
| Adjusted Price | $612,000 | $664,200 | $677,500 | $700,000 | $1,699,000 |
| Financing Terms | Conventional | Conventional | Conventional | Conventional | Conventional |
| Adjusted Price | $612,000 | $664,200 | $677,500 | $700,000 | $1,699,000 |
| Conditions of Sale | Arms-Length | Arms-Length | Arms-Length | Arms-Length | Arms-Length |
| Adjustment | $0 | $0 | $0 | $0 | $0 |
| Adjusted Price | $612,000 | $664,200 | $677,500 | $700,000 | $1,699,000 |
| Expenditures Immediately After Purchase | Existing Fence | Existing Fence | Fence added by Buyer | Existing Fence | No Fence |
| Adjustment | $0 | $0 | $2,500 | $0 | $2,500 |
| Adjusted Price | $612,000 | $664,200 | $680,000 | $700,000 | $1,701,500 |
| Market Conditions | Same Period | Same Period | Same Period | Same Period | Similar |
| Adjustment | $0 | $0 | $0 | $0 | $0 |
| Adjusted Price | $612,000 | $664,200 | $680,000 | $700,000 | $1,701,500 |
| Location (Excl. Fronting Commercial - see below) | Similar | Similar | Similar | Similar | Similar |
| Adjustment | $0 | $0 | $0 | $0 | $0 |
| Adjusted Price | $612,000 | $664,200 | $680,000 | $700,000 | $1,701,500 |

**Physical Characteristics (see Aggregate Adj.)**

| Exterior Construction | Wood Siding | Face Brick (Red) | Wood Siding (White) | Face Brick (White) | Wood Panel (White) |
|---|---|---|---|---|---|
| Adjustment Wood Siding vs. Brick Exterior | $20,000 | $0 | $20,000 | $0 | $0 |
| | | | | | |
| Zoned Heating and Air Conditioning | No | No | No | Yes | No |
| | $0 | $0 | $0 | $0 | $0 |
| | | | | | |
| Standard 8-foot vs. 9-foot and volume ceilings | +/- 8-foot standard | +/- 8-foot standard | +/- 8-foot standard | 9-foot and volume ceilings | 10-foot and volume ceilings |
| Adjustment | $0 | $0 | $10,000 | $0 | $0 |
| | | | | | |
| Number of Fireplaces | 1 | 1 | 2 | 1 | 1 |
| Adjustment | $0 | $0 | ($2,500) | $0 | $0 |
| | | | | | |
| Skylights | 0 | 2 | 0 | 4 | 0 |
| Adjustment | $1,500 | $0 | $3,000 | $0 | $0 |
| | | | | | |
| Ensuite Master Bath w/ Whirlpool & Double Vanity | No | Yes | No | Yes | Yes |
| Adjustment | $5,000 | $0 | $5,000 | $0 | $0 |
| | | | | | |
| Partial Finished Basement Dimensions | 23 x 19 feet | Unfinished | 23 x 22 feet | Unfinished | Finished / Prtl / Over-Imprvd. |
| Partial Finished Basement Sq. Ft. | 437 | 0 | 506 | 0 | 0 |
| Partial Finished Basement Adjustment | ($10,925) | $0 | ($12,650) | $0 | ($30,000) |
| | | | | | |
| Garage Spaces | 2-Car Detached | 3-Car Attached | 2-Car Detached | 2-Car Attached | 2-Car Attached (Small) |
| Adjustment | $0 | ($5,000) | $0 | $0 | $0 |
| | | | | | |
| Age and Condition (at time of sale) | 46 | 11 | 47 | 15 | 0 |
| Adjustment | $25,000 | $0 | $25,000 | $0 | ($70,000) |
| | | | | | |
| Aggregate Adjustment for Physical Characteristics | $40,575 | ($5,000) | $47,850 | $0 | ($100,000) |
| | | | | | |
| Adjusted Sale Price | $652,575 | $659,200 | $727,850 | $700,000 | $1,601,500 |
| | | | | | |
| Adjusted Price per Square Foot | $348.60 | $213.89 | $353.33 | $224.57 | $439.01 |

| | | |
|---|---|---|
| Estimated External Obsolescence per Sq. Ft. | ($134.71) | ($128.75) |
| | | |
| Multiply by 3,117 square feet of 4705 Commonwealth Ave. | 3,117 | 3,117 |
| | | |
| External Obsolescence Range for Facing Commercial Dev. | ($419,893) | ($401,315) |

External Obsolescence is equal to, or greater than the market value of the site alone.

to

Lot Sale $515,000 + Demolition
on June 26, 2015

**ESTIMATED MARKET VALUE BY SALES COMPARISON APPROACH**

Using Adjacent Properties

| Sq. Ft. | Est. Value per Sq. Ft. | Est. Value Range |
|---|---|---|
| 3,117 | $320.00 | $997,440 |
| to | | |
| 3,117 | $350.00 | $1,090,950 |

**ESTIMATED EXTERNAL OBSOLESCENCE FROM COMMERCIAL PROPERTY**

| Sq. Ft. | Est. Damage per Sq. Ft. | Est. Value Range |
|---|---|---|
| 3,117 | $130.00 | $405,210 |
| Excluding Carry Costs | Rounded | $400,000 |

**ESTIMATED PAID AND ACCRUED**

**HOLDING COST DAMAGES - BASIC DAMAGE MODEL**

| | |
|---|---|
| Loan Interest at 3.99% x $500,000.00 | $19,950 |
| Real Estate Taxes per Year (avg.) | $13,500 |
| Utilities | $1,680 |
| Insurance | $1,440 |
| Multiply by Additional Years Carry Costs | $36,570 |
| 2012, 2013, 2014, 2015, and 2016 | 5.0 |
| | $182,850 |

Damage Analyses Excludes additional 18% interest costs and redemption or real estate tax penalties, and lost profits.

**COST APPROACH - REPLACEMENT COST ESTIMATE**

This is an estimate for a single-family residence built under competitive conditions in Zip area **606-608 Chicago, Illinois** in **July, 2016**. This estimate includes a foundation as required for normal soil conditions, excavation for foundation and piers on a prepared pad, floor, wall, interior and exterior finishes, roof cover, interior partitions, doors, windows, trim, electric wiring and fixtures, rough and finish plumbing, built-in appliances, supervision, design fees, permits, utility hook-ups, the contractors' contingency, overhead and profit. Highly decorative, starkly original or exceptionally well-appointed residences will cost more.

| Item Name | Material | Labor | Equipment | Total |
|---|---|---|---|---|
| Excavation | -- | 9,877.00 | 2,500.00 | 12,377.00 |
| Foundation, Piers, Flatwork | 20,532.00 | 33,469.00 | 5,086.00 | 59,087.00 |
| Rough Hardware | 1,421.00 | 2,320.00 | 355 | 4,096.00 |
| Masonry Frame | 48,524.00 | 69,280.00 | 3,795.00 | 121,599.00 |
| Insulation | 8,812.00 | 6,243.00 | -- | 15,055.00 |
| Exterior Finish | 35,345.00 | 21,875.00 | 2,629.00 | 59,849.00 |
| Exterior Trim | 2,394.00 | 3,906.00 | 596 | 6,896.00 |
| Doors | 4,301.00 | 3,740.00 | -- | 8,041.00 |
| Windows | 7,407.00 | 5,218.00 | -- | 12,625.00 |
| Finish Hardware | 716 | 624 | -- | 1,340.00 |
| Garage Door | 2,030.00 | 858 | -- | 2,888.00 |
| Roofing, Flashing, Fascia | 13,870.00 | 12,057.00 | -- | 25,927.00 |
| Finish Carpentry | 2,611.00 | 13,631.00 | -- | 16,242.00 |
| Interior Wall Finish | 12,534.00 | 20,060.00 | -- | 32,594.00 |
| Painting | 7,489.00 | 18,121.00 | -- | 25,610.00 |
| Wiring | 7,604.00 | 14,878.00 | -- | 22,482.00 |
| Lighting Fixtures | 5,701.00 | 1,858.00 | -- | 7,559.00 |
| Flooring | 5,601.00 | 8,236.00 | -- | 13,837.00 |
| Carpeting | 11,144.00 | 4,120.00 | -- | 15,264.00 |
| Bath Accessories | 2,761.00 | 1,762.00 | -- | 4,523.00 |
| Shower & Tub Enclosure | 1,762.00 | 1,532.00 | -- | 3,294.00 |
| Countertops | 7,520.00 | 6,532.00 | -- | 14,052.00 |
| Cabinets | 24,725.00 | 8,058.00 | -- | 32,783.00 |
| Built In Appliances | 12,030.00 | 1,741.00 | -- | 13,771.00 |
| Plumbing Rough-in and Connection | 6,455.00 | 16,248.00 | 941 | 23,644.00 |
| Plumbing Fixtures | 13,114.00 | 4,306.00 | -- | 17,420.00 |
| Heating and Cooling Systems | 7,609.00 | 11,414.00 | -- | 19,023.00 |
| Unit Heating and Cooling | -- | -- | -- | -- |
| Fireplace and Chimney | 4,844.00 | 7,266.00 | -- | 12,110.00 |
| **Subtotal Direct Job Costs** | **$278,856.00** | **$309,230.00** | **$15,902.00** | **$603,988.00** |
| Final Cleanup | -- | 2,511.00 | -- | 2,511.00 |
| Insurance | 17,576.00 | -- | -- | 17,576.00 |
| Permits & Utilities | 10,671.00 | -- | -- | 10,671.00 |
| Plans & Specs | 2,511.00 | -- | -- | 2,511.00 |
| **Subtotal Indirect Job Costs** | **$30,758.00** | **$2,511.00** | -- | **$33,269.00** |
| Contractor Markup | 78,466.00 | -- | -- | 78,466.00 |
| **Total Cost** | **$388,080.00** | **$311,741.00** | **$15,902.00** | **$715,723.00** |

$229.62

| | | |
|---|---|---|
| Accrued Depreciation - Physical Deterioration | 10.0% | -$71,572.30 |
| Hardscaping: Driveway, Apron, Walks, Stoop/Stairs | | $10,000.00 |
| Site Improvement: Cedar Fence | | $5,000.00 |
| Less: Site Improvements Physical Deterioration | 33.3% | -$5,000.00 |
| Landscaping | | $9,000.00 |
| Site Value Estimate | | $375,000.00 |
| Depreciated Replacement Cost New Subtotal | | $1,038,150.70 |

$333.06

| | | |
|---|---|---|
| Soft Cost: Brokerage Sales Commission | 5.0% | $51,907.54 |
| | | $1,090,058.24 |
| Rounded | | $1,090,000.00 |

## 4525 CENTRAL AVENUE, WESTERN SPRINGS, IL 60558





# Offered for $1,699,000

5 Beds, 4 Full Baths, 1 Half Bath, 3,648 SqFt, Built in 2016







### Mike Lavorato
312.560.4055
mike@daprileproperties.com
www.mikelavorato.com





*Scan QR code for a full Property Report.*



Click for full property report.



# JACK LYNCH:
## Where I Stand on the Issues

**Why are you running for Village President?**

I am committed to making Western Springs' government more responsive to its residents. The Village's decision-making process has been ignoring residents' concerns and it's time for a change. I decided to run after a number of residents voiced their concerns to me that the Village was not listening to them on a variety of issues. They asked me to run to be their advocate, to give them a voice, and that is what I am doing.

**How were you chosen as the Tower Party nominee for Village President?**

I was chosen as the Tower Party nominee by a record number of residents at the All-Village Caucus on January 12th. The 450 residents who attended heard presentations by the nominees and I was selected. I believe these residents — your neighbors — came out because the current administration hasn't been responsive to their concerns. This is the first contested election for Village President in 24 years. My candidacy represents a chance to make village government more responsive and accountable and to fundamentally change the way the Village serves its citizens.

**Why do you say the Village isn't listening to residents?**

There are plenty of examples, but the Timber Trails development is the best current one. Last November, more than 400 residents expressed their concerns to the Village's Board of Trustees and Plan Commission about the density of the proposed Timber Trails development and its impact on our schools and parks. Rather than listen to residents, the Village authorized its Director of Fire and Inspectional Services to rewrite the Western Springs Zoning Code to create two new zoning districts, effectively allowing the developer greater housing density than permitted anywhere else in Western Springs. At public hearings on December 16 and 18, 2004, the Director and Village attorney argued that the proposed zoning districts would apply to all 15-acre parcels in Western Springs, knowing full well that Timber Trails represented the only such parcel in the area. Every resident knew it too. This zoning was single purpose and preferential to the developer. Our own Village attorney even objected to residents' questions. After almost nine hours of hearings and the threat of a residents' lawsuit, the Village was forced to withdraw the petition. Residents rightfully asked, "Why is the Village acting as an advocate for the developer and not for the residents?" I also ask why the Village would advocate a developer's position over the interests of its own residents.



**EXHIBIT**
**L**

**MEMORANDUM OF AGREEMENT**

Doc#: 1120946048 Fee: $38.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 07/28/2011 02:11 PM Pg: 1 of 1

(sic)

WHEREAS, the parties, GURRIE RHODES ("Service Provider") and WSMC PARTNERS, LLC, ("Operator") have entered into a Transition Services Agreement dated as of September 17, 2010; and

WHEREAS, said Transition Services Agreement provides, in part, that the Service Provider may record a Memorandum of Agreement against the property described below ("Property"); and

WHEREAS, the legal description of the Property is:

> Lot 1 in the Plat of Subdivision of Commonwealth Commercial Center being a Subdivision in the North ½ of Section 7, Township 38 North, Range 12, East of the Third Principal Meridian, Recorded as Document 0010894956 and Rerecorded as Document 0011077029 in Cook County Illinois.
> PIN 18-07-104-023-0000

WHEREAS, the Service Provider hereby elects to record this Memorandum of Agreement;

NOW THEREFORE, the world is put on notice that the above Transition Services Agreement exists between the Service Provider and Operator concerning the above described Property that is commonly known as 4700 Commonwealth Ave, Western Springs, IL, and hereby creates a lien on such property.

NOW THEREFORE, the world is put on notice that the Transition Services Agreement provides that the Operator is to pay sums certain to the Service Provider upon the occurrence of certain events described therein.

NOW THEREFORE, the world is put on notice that the Transition Services Agreement provides that this Memorandum of Agreement shall be subordinate to certain mortgages upon certain events described therein.

NOW THEREFORE, the world is put on notice that the Transition Services Agreement provides that upon the occurrence of certain events described therein, this Memorandum of Agreement shall be released.

NOW THEREFORE, the world is put on notice that the Transition Services Agreement may be viewed upon written request to the Service Provider and/or Operator.

This Document prepared by: Kenneth E. Garstka, Esq., 314 N. Catherine, La Grange Park, IL 60526 Ph: 708-352-6465



EXHIBIT
*M*

Purchase Price                                                    $1,725,000.00

Owners Title Policy                                    3,500.00
Survey                                                 1,500.00
50 % of Escrow Fees                                    2,500.00
Legal Fees of Keane & Keane                            9,358.00
Other Legal Fees                                       8,000.00
State and County Transfer Taxes                        2,587.50
Municipal transfer taxes                                   0.00
50% of Commission                                     30,000.00
Unpaid Taxes - 2008 (2nd) - min to tax buyer          49,224.61
Unpaid Taxes - 2009 (1st) - est at 12-1               59,732.43
Unpaid Taxes - 2009 (2nd - prelim est)                10,633.20
Other miscell costs, incl RE tax extras               10,000.00

                                                     187,035.74


Net Amount to Lender                                            $1,537,964.26

SOURCE: THE PRIVATE BANK SHORT SALE FILE

## NEIGHBORHOOD SUMMARY

The Village of Western Springs is a western suburb of the City of Chicago, and is located approximately 20± miles west of the Chicago Central Business District. Western Springs was incorporated in 1886 and is recognized as a community of upscale homes. The village benefits from good transportation alternatives with nearby access to the Tollway (I-294) and Route 83, as well as the Metra rail access to downtown Chicago. Commercial properties are primarily located in the main downtown district although scattered commercial properties are also located along thoroughfares such as Ogden Avenue to the north and 55th Street to the south.

The subject property is located at the southwest corner of 47th Street and Commonwealth Avenue, which is considered to be outside of the primary location of commercial properties in the village. While the more commercial districts at Gilbert Avenue and 47th Street and downtown encompasses a mixture of uses, the immediate area surrounding the subject property contains predominantly residential uses. As a sidenote, the subject property, which was originally developed with Vaughan's Garden & Nursery Center, was previously located along a more commercialized area along 47th Street approximately one mile west at the Gilbert Avenue locale. The original Vaughan's site is now developed with a Walgreens. The Interstate 294/47th Street overpass is located one block west (no access to I-294). The subject is in more of a residential locale as it does not have significant visibility along 47th Street and Commonwealth Avenue is residential in nature.

In summary, the commercial developments in the subject market are primarily located in the downtown area or in higher-profile commercial locales. The overall real estate market has experienced diminishing growth in all sectors during the last two years as the downturns in the housing market and the economy have decreased the demand for commercial, office, and industrial space. This decreasing demand has resulted in fewer newer buildings being started, decreasing occupancy and rental rates in most markets.

14

SOURCE: THE PRIVATE BANK "SHORT SALE" LOAN FILE "THIRD - PARTY" APPRAISAL

OFFICIAL OATH

P.F. PETTIBONE & CO., Hebron, IL. 931

STATE OF ILLINOIS,

COOK .............County, } ss.

I, ......WILLIAM T. RODEGHIER.............

having been *elected
*appointed to the office of .......VILLAGE PRESIDENT..............

in the......VILLAGE........................................ of .............WESTERN SPRINGS........................

in the County of .......COOK...............aforesaid, DO SOLEMNLY SWEAR, (or affirm,) that

I will support the Constitution of the United States and the Constitution of the State of Illinois, and that

MUNICIPAL CODE OF THE VILLAGE OF WESTERN SPRINGS

I will faithfully discharge the duties of the office of............VILLAGE PRESIDENT.....................

.........................according to the best of my ability.

Subscribed and sworn to before me, this.....18th.....

day of.............May...............A.D.2009......

*Carolyn E. Sullivan*
Carolyn E. Sullivan
Deputy Village Clerk

William T. Rodeghier

*Erase one not used.

Chap. 139, Sec. 84 Chap. 24, Sec. 3-14-3



EXHIBIT
N

From: stephenmjackson <stephenmjackson@aol.com>; mrogina <mrogina@atg.state.il.us>; jschmidt
<jschmidt@atg.state.il.us>; paccess <paccess@atg.state.il.us>

To: stephenmjackson <stephenmjackson@aol.com>; mrogina <mrogina@atg.state.il.us>; jschmidt
<jschmidt@atg.state.il.us>; paccess <paccess@atg.state.il.us>

Cc: Michael T. Jurusik <mtjurusik@ktjnet.com>; ehaeske <ehaeske@wsprings.com>; prhiggins
<prhiggins@wsprings.com>

Subject: Re: 4700 Commonwealth Ave - FOIA Compliance & Forcible Removal Demand

Date: Sat, Dec 31, 2011 5:35 pm

December 31, 2011

**stephenmjackson@aol.com**
Mr. Stephen M. Jackson
4705 Commonwealth Avenue
Western Springs, Illinois 60558

> **Re:** **Village of Western Springs**
> **4700 Commonwealth Avenue – FOIA Compliance and Forcible Removal Demand**
> **Dated 12-19-2011**

Dear Mr. Jackson:

I am in receipt of your email dated December 19, 2011 relative to the above-referenced matter as well as other previously sent emails and correspondence directed to the Village Board members and information requests submitted to the Village Clerk's Office pursuant to the Illinois Freedom of Information Act, 5 ILCS 140/1 *et seq.* ("FOIA") related to the 4700 Commonwealth Avenue development site. I have also reviewed the Village's responses to your FOIA requests.

You have directed a number of unsubstantiated allegations of misconduct and wrongdoing at certain Village officials, Village staff and Village consultants relative to the development of the 4700 Commonwealth Avenue site. To date, you have provided no evidence of misconduct or wrongdoing on the part of any of the individuals you have personally attacked. Based on the Village's responses to your FOIA requests, I am not aware of any documents or facts that support your allegations of misconduct or wrongdoing in relation to the initial development of the 4700 Commonwealth Avenue site or the Village's recent zoning approvals for the re-use of the garden center building and the construction of the second office/commercial building on the site.

If you are in possession of some reliable, tangible evidence that supports your allegations of misconduct or wrongdoing, please feel free to send it to me. More important, if you have evidence that a crime has been committed, please contact the appropriate law enforcement agency.

Sincerely,

William T. Rodeghier





**GENERAL GOVERNMENT COMMITTEE**
**MINUTES**
**March 30, 2016**
**Presidents Chambers**

Present
Chair Glowiak, Committee Member Gallagher, Deputy Village Manager Velkme, Director
Pamela Church, Director Matthew Supert, Director Grace Turi, Village Attorney Jurusik,
John Kravcik and David Bennett – St. John of the Cross Parish School

Electronic Attendance at Meeting: None

Chair Glowiak called the General Government Committee meeting to order at 9:00 a.m.

Agenda Items

1. Public Comment

    There were no comments.

2. Approval of Minutes

    Committee Member Gallagher moved, seconded by Chair Glowiak, to approve the
    minutes of March 9, 2016 as read.

3. St. John of the Cross 2016 Family Festival Liquor and Raffle License Request

    John Kravcik and David Bennett were present at the committee meeting. The Class
    "I" special event liquor license, temporary use permit, license indemnification
    agreement and raffle license applications for the 2016 St. John of the Cross Parish
    (SJC) were reviewed in detail. There were no significant changes to the application
    other than the request by St. John's to allow alcohol to be consumed throughout the
    boundaries of the event. The committee had no objection to this request. A change in
    menu to hamburgers necessitates a grill. The committee asked that the Fire
    Department be consulted to make sure they approve of the grill placement. With no
    further concerns, the committee agreed to report in April on the request to the Board
    and recommend approval of the liquor and raffle licenses as well as the license
    indemnification agreement and temporary use permit for the event, which is
    scheduled on June 23 – 26, 2016.

4. Resolution Honoring the Tower Chorale Group on their 30th Anniversary

1

MINUTES OF THE REGULAR BOARD MEETING
OF THE PRESIDENT AND BOARD OF TRUSTEES
Monday, January 27, 2014
7:00 p.m.

President William T. Rodeghier, Presiding
Call to Order, 7:00 p.m.
Jeanine M. Jasica, Village Clerk

Board Members Present
Alice Gallagher
Suzanne Glowiak
Sheila Hansen
James Horvath
Edward Tymick

Absent: Patrick Word

Others Present
Patrick Higgins, Village Manager
Michael Jurusik, Village Attorney
Pamela Church, Director of Law
Enforcement Services
Ingrid Velkme, Director of Admin Services
Grace Turi, Director of Finance
Matthew Supert, Director of
Municipal Services
Patrick Schramm, Director of IT
Martin Scott, Director of Community
Development
Patrick Kenny, Director of Fire & EMS
Jeff Ziegler, Village Engineer

**CALL TO ORDER**

The meeting was called to order at 7:00 p.m.

**PLEDGEOF ALLEGIANCE**

President Rodeghier led the audience in the Pledge of Allegiance.

**ROLL CALL**

As noted above.

Electronic attendance at meeting: None

**CITIZEN COMMENTS**

There were none.

**WEST SUBURBAN PUBLIC SAFETY DISPATCH CONSOLIDATION SURVEY
PRESENTATION BY AECOM**

Manager Higgins introduced Michael Milas, Associate Vice President, and Tony Wheeler,
Project Manager, from AECOM Technical Services, Inc. who were present to provide their

1



**KTJ**

KLEIN, THORPE & JENKINS, LTD.
Attorneys at Law

20 N. Wacker Drive, Ste 1660
Chicago, Illinois 60606-2903
T 312 984 6400  F 312 984 6444

15010 S. Ravinia Avenue, Ste 10
Orland Park, Illinois 60462-5353
T 708 349 3888  F 708 349 1506

www.ktjlaw.com

April 25, 2013

**VIA UNITED STATES MAIL
and VIA EMAIL: stephenmjackson@aol.com**
Mr. Stephen M. Jackson
4705 Commonwealth Avenue
Western Springs, Illinois 60558

     **Re:  Village of Western Springs**

Dear Mr. Jackson:

     The Village of Western Springs is in receipt of your April 11, 2013 letter and several recent emails in regard to certain allegations you maintain concerning the 4700 Commonwealth Avenue development and your request that the Village purchase your 4705 Commonwealth Avenue residence.

     The Village has already responded to your allegations concerning the 4700 Commonwealth Avenue development.

     In response to your request for the Village to purchase your 4705 Commonwealth Avenue residence, the Village of Western Springs, the Village Board members, the Village staff and the Village consultants will not be purchasing the residence. No one from the Village will be appearing at any closing tomorrow or at any time in the future in regard to your purchase request. No real estate contract exists between the Village or anyone associated with the Village and you to purchase your residence. There has been no discussion or verbal agreement by any Village Board members, the Village staff or the Village consultants to purchase your residence.

     On behalf the Village of Western Springs and its officials, staff and consultants, I am requesting that you stop communicating with the Village, its officials, staff and consultants in regard to this matter.

              Sincerely,

              Michael T. Jurusik
              Village Attorney

cc:    Mr. William T. Rodeghier, Village President, and Board of Trustees
       Mr. Patrick R. Higgins, Village Manager

307440_1

July 13, 2000

President Milano and Village Trustees
Village of Western Springs
740 Hillgrove Avenue
Western Springs, IL 60558

Subject: Commercial Development of Commonwealth
Avenue between 47th and 48th Streets

Dear President Milano & Trustees,

With the recent activity and changes taking place at the Garden Market, there has been renewed interest in developing the Commonwealth area between 47th and 48th Streets commercially. As a result of the review process for the RPUD south of 48th Street, there were several documents discouraging commercial development in this area.

In a Village Development Review Team Summary dated May 30, 1991, it is stated that "The portion of the site zoned "C Commercial" for the Commonwealth area is inappropriate for commercial use and should be combined with the southern portion of the site to form one residential site." I am enclosing a copy of this summary for your review. This is also stated in the current Village Land Use Plan and map under Specific Land Use Recommendations. The Policy of the Land Use Plan is "to preserve and maintain the basic high quality single-family residential character of the Village of Western Springs."

With the approval to develop the RPUD by the Commonwealth Avenue Venture, Resolution No. 91-1211 was passed on November 11, 1991. As part of this resolution, the New Commonweath Avenue was relocated to its current location providing the 47th Street entrance into the area. "Old" Commonweath Avenue, located west of "New" Commonwealth Avenue was not vacated by this resolution. Instead condition no. 57 of Exhibit "A" of the Resolution, Conditions of Approval, states that "The Village will consider vacation of Old Commonwealth between 47th Street and 48th Street at such time that a proposal to develop the property consistent with the Land Use Plan is received."

In view of the recent development of single-family residential property on the east side of the New Commonwealth Avenue between 47th and 48th Streets, I believe that it would be appropriate to develop the area to the west according to the current Land Use Plan.

I would appreciate notification of any public meetings to discuss this matter. Thank you for your consideration in this matter.

Sincerely yours,

Robert L. Sherwood
4724 Fair Elms Avenue
Western Springs, IL 60558
708/246-6720



EXHIBIT
N

## DEFENDANT SERVICE LIST

Klein, Thorpe and Jenkins, Ltd. (c/o Thomas P. Bayer) and Michael T. Jurusik
20 N. Wacker Drive
Suite 1660
Chicago, IL 60606

Patrick R; Higgins, Jeanine M. Jasica, William T. Rodeghier, Martin Scott, Suzanne Glowiak, Edward Tymick, Alice Gallagher, James Horvath, Sheila Hansen, Patrick Word, Berry Allen, and the Village of Western Springs
c/o The Village of Western Springs
740 Hillgrove Ave.
Western Springs, IL 60558

Gurrie C. Rhoads
4815 Creek Drive
Western Springs, IL 60558

WSMC Partners, LLC
35 E. Wacker Drive, Suite 3300
Chicago, IL 60601
Attn: Edward W. Ross

AL. Neyer, LLC c/o
KMK Service Corp.
One East Fourth Street, Suite 1400
Cincinnati, OH 45202



EXHIBIT
O