UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHEN JACKSON, <br><br> Plaintiff, <br><br> v. <br><br> KLEIN, THORPE AND JENKINS, LTD., *et al.*, <br><br> Defendants. | No. 16 CV 10499 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Stephen Jackson lives across the street from a property that the Village of Western Springs rezoned from mixed residential use to other, more commercial uses. Jackson has tried to challenge the development of this property for many years, and he now brings this action against the Village of Western Springs, Village staff members (Patrick R. Higgins and Martin Scott), current or former volunteer Village officials (Jeanine M. Jasica, William T. Rodeghier, Suzanne Glowiak, Edward Tymick, Alice Gallagher, James Horvath, Sheila Hansen, Patrick Word, Berry Allen), the current owner of the subject property (WSMC Partners, LLC), the contract purchaser and developer of Lot 2 of the subject property (Al. Neyer, LLC), and the Village's attorney (Klein, Thorpe and Jenkins, LTD, and Michael Jurusik). Count I alleges a civil RICO action under 18 U.S.C. § 1962(c) and (d). Count II alleges violations of the equal protection and due process clauses. Counts III through V allege violations of 42 U.S.C. §§ 1983, 1985(3), and 1986, respectively. The complaint includes a variety of state-law claims. Defendants

move to dismiss the complaint. For the following reasons, those motions to dismiss are granted.

I.  **Legal Standards**

A Rule 12(b)(1) motion challenges jurisdiction in federal court, and the plaintiff bears the burden of establishing the elements necessary for jurisdiction. *Scanlan v. Eisenberg*, 669 F.3d 838, 841–42 (7th Cir. 2012). With a 12(b)(1) motion, a court may look beyond the complaint's allegations and consider any evidence that has been submitted on the issue of jurisdiction. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). By contrast, a Rule 12(b)(6) motion "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). The complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A court may consider only allegations in the complaint, documents attached to the complaint, documents that are both referred to in the complaint and central to its claims, and matters of public record. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). When analyzing a motion under Rule 12(b)(1) or Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in favor of the plaintiff. *Scanlan*, 669 F.3d at 841. The court does not accept legal conclusions or conclusory allegations, however. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

II. **Background**

Two years ago, Jackson filed a lawsuit in federal court against eighteen defendants—seven of which are also defendants in this case. *See Jackson v. Vill. of*

*W. Springs*, No. 14 C 3414, 2014 WL 5543844 (N.D. Ill. Nov. 3, 2014) *aff'd* 612 Fed. App'x. 842 (7th Cir. 2015). The defendants in that earlier federal lawsuit moved to dismiss Jackson's complaint and Judge Leinenweber granted their motion. [43-3] at 2.[1] The Seventh Circuit affirmed the decision. [43-4] at 3. The complaint from that lawsuit was similar to the complaint in this action—the claims stemmed from the decisions to rezone the property across the street from Jackson's house, and they included violations of equal protection, procedural and substantive due process under § 1983, the Illinois Open Meetings Act, the Freedom of Information Act, common law conspiracy, and common law torts.[2]

In this action, Jackson continues to argue that the rezoning of the subject property has devalued his property and that he has suffered consequential damages; but, he also makes a new argument that defendants engaged in a "pay to play" scheme in which they conspired to deprive him of his constitutional rights and liberties. [1] at ¶ 36. The "pay to play" scheme seems to be about the link provided by certain KTJ attorneys between property developers and the Village. *See*, *e.g.*, *id.*

---

[1] Bracketed numbers refer to entries on the district court docket.

[2] Jackson purchased a home in February 2000. At that time, the property across the street from his home was zoned for "mixed residential" use and he believed it would be developed into a townhome. In March 2001, the Board of Trustees for the Village approved a conditional-use permit for a retail center on the subject property. He attended public meetings and hired counsel to oppose the development. When that was unsuccessful, he sued the Village in the Circuit Court of Cook County in March 2001. Counsel for the developers wrote Jackson to say they would move for sanctions against Jackson and ask the state judge to require him to post a $5 million bond to protect their investment because they thought he brought the lawsuit in bad faith. Jackson subsequently dismissed the state action. During the thirteen years that followed, Village officials made other zoning decisions about the subject property, including amending the Village's Land Use Plan to authorize commercial use of the subject property. Commercial use of the subject property increased the traffic and noise on Jackson's street and reduced his privacy and safety.

¶ 41 ("Village Defendants sanctioned, approved, and ratified KTJ's enterprise and pay-to-play scheme when granting KTJ a franchise allowing the improper 'sale' of re-zoning relief, and Plaintiff's constitutional rights and statutory protections, by allowing the Village to serve as KTJ's 'bagman' to assist in the enforcement and collection KTJ's monies and to provide a veil of legitimacy for the enterprise."); *id.* ¶ 46.

Jackson's theory is that the Village "used, or caused to be used, or acted with the reckless indifference to allow the use of" municipal monies and credit, as well as public resources and employees, for non-public purposes. *Id.* ¶¶ 37–39. He says that KTJ, Jurusik, Rhoads, WSMC, and Neyer were recipients of the municipal monies and credit, *id.* ¶¶ 40, 42, and that KTJ represented private developers in the 2011 and 2014 rezoning of the subject property, while at the same time posing as the Village's attorney. *Id.* ¶¶ 46, 49, 212–213. Jackson says KTJ ensured that the developers' applications would be accepted by providing "material misstatements of fact," as well as "contrived expert opinions and biased legal conclusion[s]." *Id.* ¶¶ 46–47, *see also id.* ¶ 103. These actions circumvented local procedures, thereby preventing Jackson and other stakeholders from reviewing competent analysis and testimony regarding the subject property. *Id.* ¶¶ 46–47, 103. "Plan Commission Members" rubber-stamped the applications and did not consider the applications' compliance with the "Illinois statute and Village Code." *Id.* ¶ 48. According to Jackson, defendants "manufactured facts and advanced the logical fallacies to enact the preferential re-zoning legislations," before they brought the issues to the public,

4

as required by law, thereby "barr[ing], or effectively barr[ing], Plaintiff his rights as a U.S. citizen in favor of private developers where Jurusik, KTJ, and its attorneys and others benefitted for 16 years at the direct cost to and peril to Plaintiff and his family." *Id.* ¶ 54.

Additionally, defendants allegedly used their association with the Village to engage in a pattern of racketeering activities to advance their enterprise and to further their fraudulent scheme against Jackson under a "veil of legitimacy." *Id.* ¶¶ 123, 125. Defendants created a sixteen-year "turf war" amongst themselves, with Jackson "trapped" in the middle—they "improperly overturn[ed] the then existing codified Official Land Use Plan and repeatedly eviscerate[ed] Village Code for the benefit of Defendant Developers, Village Defendants, KTJ, and Jurusik from 2000 to 2016." *Id.* ¶ 61; *see also id.* ¶ 131. WSMC and Neyer joined the battle in 2011 and 2016, respectively. *Id.* ¶¶ 62–65. Jackson also says that "[d]efendants acted in concert" to retaliate against him by bribing Mark Henning, Esq., a Village Plan Commissioner, to send Jackson a letter notifying Jackson that his petition for injunctive relief and declaratory judgment in the previous state court action was not filed in good faith and that the defendants in that action would move the court to sanction Jackson if he did not withdraw the lawsuit. *Id.* ¶ 52; *see also id.* ¶ 136.

For a time during the rezoning decisions, the subject property was vacant and it attracted "criminal elements" into the neighborhood, such as drugs, graffiti, and break-ins. *Id.* ¶¶ 69–70. The rezoning decisions harmed Jackson in other ways, too:

> (1) elevated high-intensity parking field lighting shining into Plaintiff's home and bedrooms day and night; (2) vehicle

5

> headlights shining directly into Plaintiff's home; (3) high volume commercial auto, truck, and daycare bus traffic generation along the codified residential street; (4) elevated noise levels; (5) frequent auto alarms and car horns; (6) illuminated commercial signage directed at Plaintiff's home; (7) loss of privacy and invasion of Plaintiff's privacy; (8) numerous periods of construction, demolition, reconstruction, flood plain earthwork, and deforestation totaling about (5) years; (9) overall commercial blight; and (10) public nuisance.

*Id.* ¶ 79. As a result, Jackson suffered from chronic sleep deprivation for years. *Id.* ¶ 120. In response, Jackson had to spend thousands of hours defending his property, business, and civil rights; and he was forced to study state and federal law. *Id.* Despite Jackson's efforts to sell his home, real estate brokers avoided showing prospective buyers his home and Jackson never succeeded in making a sale. *Id.* ¶ 88. As a result, Jackson had to withdraw from Harvard University, "where he was to expand his business platform, procure investors/partners, and hire contractors." *Id.* ¶ 89. The negative impacts of the rezoning also injured Jackson "in his role as a *qui tam* relator prosecuting recovery of monies on behalf of government and government pension plan agencies which also effects interstate commerce." *Id.* ¶ 90.

## III. Analysis

### A. Collateral Estoppel

The Village moves to dismiss Jackson's claims concerning the zoning decisions in part because those issues are collaterally estopped by Judge Leinenweber's decision, which the Seventh Circuit affirmed. "Collateral estoppel [. . .] has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy

by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). The doctrine applies only when (1) the issues raised in both proceedings are identical; (2) the issues were actually litigated; (3) the determination of the issues were essential to a final judgment in the first action; and (4) the party against whom estoppel is invoked had a full and fair opportunity to litigate the issues in the first action. *Washington Grp. Int'l, Inc. v. Bell, Boyd & Lloyd LLC*, 383 F.3d 633, 636 (7th Cir. 2004) (citation omitted).

In the earlier federal case, which involved several of the same defendants in this case, Judge Leinenweber held that the court had no jurisdiction over Jackson's equal protection or due process claims because Jackson did not satisfy the "special ripeness doctrine." [43-3] at 5–6. This doctrine applies to constitutional property rights claims and it precludes federal courts from adjudicating such land use disputes until: "(1) the regulatory agency has had an opportunity to make a considered definitive decision, and (2) the property owner exhausts available state remedies for compensation." *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000) (citing *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 193–94 (1985)). Judge Leinenweber concluded that Jackson's due process claims were subject to *Williamson* because "a property owner may not avoid *Williamson* by applying the label 'substantive due process' to the claim. So too with the label 'procedural due process.'" [43-3] at 7 (citing *Forseth*, 199 F.3d at 368). In reaching a similar conclusion regarding Jackson's equal protection claims, Judge Leinenweber explained:

7

> The equal protection allegations are that Defendants received large sums of money and favorable zoning decisions while violating various Illinois laws in zoning and rezoning the nearby property. There are no allegations to support Jackson's conclusory statement that the zoning decisions were in some way done out of spite specifically directed toward him. To the contrary, the Complaint shows that all surrounding property owners were damaged in the exact same way as him — that is, Jackson alleges that all the homes along his street were devalued in the exact same amount by the most recent zoning decision.[3]

*Id.* at 9. Judge Leinenweber rejected Jackson's attempt to label the takings claims as equal protection claims and dismissed those claims for Jackson's failure to exhaust. *Id.* at 7, 10 (citing *Forseth*, 199 F.3d at 371). Judge Leinenweber concluded that the complaint failed to state a claim under the First Amendment, *id.* at 10–13; and he declined to exercise supplemental jurisdiction over the state-law claims, *id.* at 13–15.

Jackson appealed, arguing that Judge Leinenweber's decision mischaracterized his claims as takings claims, when he was actually alleging that he was denied procedural due process because the Village disregarded local procedures and engaged in delay tactics. The Seventh Circuit affirmed the judgment because "applying the label 'procedural due process' does not absolve a litigant's obligation to first seek compensation in state court before turning to federal court." [43-4] at 5 (citing *Forseth*, 199 F.3d at 368; *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 167 (7th Cir. 1994)). Since Jackson's claim about the Village's

---

[3] Independent equal protection claims do exist in the land use context, but they typically involve regulations or zoning decisions that target or affect only the plaintiff's land, which was not the case in Jackson's situation. *See Forseth*, 199 F.3d at 371.

8

unfair processes in making zoning decisions was "merely ancillary to, and not independent of" his takings claim, the court reasoned that *Williamson* applied to his due process claim and that exhaustion was required. [43-4] at 5. Likewise, *Williamson* applied to Jackson's equal protection claim because his claims boiled down to "an accusation that a government entity greatly diminished the value of his property" out of spite,[4] which is, in essence, a takings claim. *Id.* at 6. The Seventh Circuit also concluded that Jackson's First Amendment rights were not violated, that Jackson failed to state a claim under § 1985 because he did not allege a racial or class-based animus, and that Judge Leinenweber did not abuse his discretion in declining to exercise jurisdiction for the state-law claims. *Id.* at 7.

The Seventh Circuit's opinion outlined Jackson's flawed approach and referenced what he would need to do in order to bring a federal case in the future:

> Because Jackson did not appeal the Board's decisions to the zoning board of appeals, *see* 65 ILCS 5/11-13-12, and then to the state courts on administrative review, *see* 65 ILCS 5/11-13-13, or pursue other remedies that Illinois has provided for property owners challenging excessive zoning regulation, *see Peters v. Vill. of Clifton*, 498 F.3d 727, 733–34 (7th Cir. 2007), we agree with the district court that Jackson's claim of a violation of procedural due process is unripe and subject to dismissal.

---

[4] The Seventh Circuit also agreed with Judge Leinenweber on the point that Jackson pleaded himself out of court with respect to his allegation that the Village acted out of spite and targeted him. [43-4] at 6. First, Jackson's complaint admitted that his neighbors also suffered from the development and that their properties were also devalued. *Id.* Second, Jackson's complaint acknowledged that the Village had a rational basis for its decisions: the owners of the subject property had financial incentives to develop their property for commercial use. *Id.* (citing *Miller v. City of Monona*, 784 F.3d 1113, 1121 (7th Cir. 2015)). Third, the complaint stated that negotiations between the Village and developers were underway before Jackson bought his house, thereby making it impossible for Jackson to be their target. *Id.*

9

[43-4] at 5. Instead of pursuing administrative or state-court remedies, Jackson brought this lawsuit involving the same underlying factual circumstances, many of the same defendants, and which is not based on an allegation that Jackson has, in the meantime, exhausted his administrative remedies.[5]

Jackson already had a full and fair opportunity to litigate the issue of whether exhaustion was required for claims that were ancillary to his takings claim and whether he appropriately exhausted administrative remedies before bringing a federal action. After concluding that exhaustion was required and that Jackson failed to exhaust, Judge Leinenweber dismissed Jackson's claims, and the Seventh Circuit affirmed both of those conclusions. Thus, those issues were essential to the final judgment in Jackson's first federal action. Jackson's strategy of adding claims under RICO, §§ 1983, 1985, and 1986 does not cure this action from the same jurisdictional defect of his last action. Consequently, Jackson is collaterally estopped from bringing due process and equal protection claims against the Village, KTJ, Jurusik, Higgins, Jasica, Rodeghier, Scott, and Rhoads. Count II is dismissed as to those defendants.[6]

---

[5] In his response brief, Jackson asserts that he "attempted to resolve the matter with the Village several times since 2000, and often without any feedback whatsoever [. . .], as well as [with] the Illinois Attorney General's Office when appealing the Village's denials of Plaintiff's FOIA requests and by seeking AG Office intervention regarding his *Writ of Quo Warranto*." [68] at 15. Those actions, however, do not constitute exhausting administrative remedies, as a matter of law. *See Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).

[6] Although WSMC joined the Village's motion and Neyer incorporated by reference the Village's arguments about collateral estoppel, neither WSMC nor Neyer were parties to or privies with any of the parties to Jackson's first federal action. Accordingly, Jackson is not collaterally estopped from bringing Count II against WSMC or Neyer.

## B. Special Ripeness Doctrine

Article III of the Constitution limits federal court jurisdiction to "cases" and "controversies." U.S. Const., Art. III, § 2. One important element of the "cases" or "controversies" requirement is satisfying the ripeness doctrine, which determines when a party may go to court. *Sprint Spectrum L.P. v. City of Carmel, Indiana*, 361 F.3d 998, 1002 (7th Cir. 2004) (internal citation omitted). The ripeness doctrine seeks to prevent the court from "abstract disagreements over administrative polices." *Id.* A special ripeness doctrine operates in the context of a constitutional challenge to a local land use regulation. *Id.* In *Williamson*, the Supreme Court held that before a plaintiff may challenge a local land use regulation in federal court, he must demonstrate that he has received a "final decision regarding the application of the [challenged] regulations to the property at issue" from "the government entity charged with implementing the regulations," and has sought "compensation through the procedures the State has provided for doing so." 473 U.S. 172, 186, 194 (1985); *see also Forseth*, 199 F.3d at 372. The *Williamson* exhaustion requirement applies in suits challenging local land regulation regardless of whether the plaintiff titles his claims an uncompensated taking, an inverse condemnation, or a due process violation. *Hager v. City of W. Peoria*, 84 F.3d 865, 869 (7th Cir. 1996); *River Park*, 23 F.3d at 167.

All defendants move to dismiss the complaint for lack of subject-matter jurisdiction on account of Jackson's failure to exhaust administrative remedies. In Illinois, any "person" who is "aggrieved" by a local zoning decision may appeal to a zoning board of appeals, *see* 65 ILCS 5/11-13-12, and judicial review of a decision

from the zoning board of appeals is available, *see* 65 ILCS 5/11-13-13. There are no allegations in the complaint about Jackson exhausting administrative remedies or attempting to challenge the rezoning decisions before a zoning board of appeals, and no other evidence of exhaustion of administrative remedies exists in the record.

Like Judge Leinenweber, I find that Counts II through V are subject to *Williamson* exhaustion because they stem from a dispute about a land use control. Although Counts II through V are not labeled as takings claims, they claim injuries from rezoning decisions or the repercussions from those decisions. Since "[f]ederal courts are not boards of zoning appeals," it follows that "[l]itigants who neglect or disdain their state remedies are out of [federal] court, period." *River Park*, 23 F.3d at 165. This court does not have subject-matter jurisdiction over any of Jackson's claims that are ancillary to what would be a takings claim. Counts II through V are dismissed as to all defendants.

### C. RICO Claim

The civil RICO statute provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue [. . .] in any appropriate United States district court." 18 U.S.C. § 1964(c). The Seventh Circuit interprets the "injured in his business or property" and the "by reason of" phrases as requirements to have standing to sue. *Evans v. City of Chicago*, 434 F.3d 916, 924 (7th Cir. 2006) *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). Although the RICO statute must be construed broadly, the Seventh Circuit has upheld the limitation of cognizable injuries under the statute to those involving the plaintiff's business or property. *Id.* at 926. For example, personal

12

injuries and pecuniary losses that flow from personal injuries do not suffice. *Id*. The Seventh Circuit also requires that damages under § 1964(c) be "clear and definite" in order to confer standing. *Id.* at 932.

Jackson complains of a host of injuries, but most of his injuries are not injuries to his business or property. His sleep deprivation, loss of time from studying the law and preparing to defend his rights and property, light and noise disturbances, and loss of privacy constitute personal injuries and or pecuniary losses flowing from those personal injuries. As such, they do not confer standing under § 1964(c). The remaining injuries that Jackson alleges—devalued property, inability to sell his home, lost opportunity to expand his business platform at Harvard University, and hindered role as a *qui tam* realtor—may constitute injuries to his business or property, but they are not clear or definite. Since Jackson does not allege that he sold his house, his calculation of its decreased value remains speculative and subject to change. Similarly, his allegations about lost business opportunities caused by his withdrawal from Harvard University lack specificity and are speculative. Finally, the injuries to his career as a *qui tam* realtor are not currently ascertainable. Since Jackson did not suffer the requisite injury to have standing, his RICO claim, Count I, is dismissed as to all defendants.[7]

---

[7] Unlike KTJ and Neyer, the Village did not address Jackson's RICO violations specifically. Nevertheless, I dismiss Jackson's claim against the Village under § 1962(c) and (d) *sua sponte* for the same reasons I dismiss that claim against KTJ and Neyer. *See Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) (citing Fed. R. Civ. P. 12(b)(6)). Moreover, even if Jackson had standing to bring a RICO claim, his claim would still fail because he has not made the required allegation that each defendant "conducts" a criminal RICO enterprise. He needed to allege that each defendant "participated in the operation or management of the [RICO] enterprise itself" and that each defendant "played 'some part in directing the

**D. State-Law Claims**

Since Jackson's federal claims have been dismissed, this court no longer has original jurisdiction over any claim in this lawsuit. *See* 28 U.S.C. § 1367(c); *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1250 (7th Cir. 1994). "[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Id.* at 1251. This lawsuit is in the early stages of litigation, and state courts are typically in the best position to decide cases that present only questions of state law. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law" in state court). Thus, I decline to exercise supplemental

---

enterprise's affairs.'" *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998) *holding modified by Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961 (7th Cir. 2000) (citation omitted). The complaint does not contain those necessary allegations. To state a conspiracy claim under RICO, a plaintiff must allege: "(1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998) *holding modified by Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961 (7th Cir. 2000) (citation omitted). Jackson pleads the existence of a conspiracy by reference to the elements of the violation, *see, e.g.*, [1] ¶ 133 ("Each Defendant agreed to join the conspiracy and to commit predicate acts with the knowledge that such acts were part of a pattern of racketeering activity."), but these conclusory allegations are insufficient to state a claim for relief. Absent allegations that a defendant reached an agreement to maintain any interest in or any control of the alleged criminal enterprise, and that each defendant agreed that someone would commit a predicate act (let alone two predicate acts) in furtherance of those aims, the complaint does not state a RICO conspiracy claim. Finally, I note that Jackson's complaint establishes that he was aware of injuries caused by the alleged RICO enterprise and pattern of activity well over four years before he filed this complaint. He would be barred from pursuing a lawsuit for any such injuries. *See McCool v. Strata Oil Co.*, 972 F.2d 1452, 1465–66 (7th Cir. 1992), *as amended on reh'g in part* (Oct. 26, 1992); *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 801–02 (7th Cir. 2008).

jurisdiction over Jackson's remaining state-law claims. Counts VI through IX are dismissed without prejudice as to all defendants.

## IV. Conclusion

Defendants' motions to dismiss, [43], [45], [51], and [57], are granted. The complaint is dismissed. Enter judgment and terminate civil case.

ENTER:

Manish S. Shah
United States District Judge

Date: August 1, 2017